**SPINELLI, DONALD & NOTT**
A Professional Corporation
J. Scott Donald (SBN: 158338)
Elise D. Rice (SBN: 343219)
300 University Avenue, Suite 100
Sacramento, CA 95825
Telephone: (916) 448-7888
Facsimile: (916) 448-6888
Email: scottd@sdnlaw.com
Email: eliser@sdnlaw.com

**LAW OFFICE OF**
**MATHENY SEARS LINKERT & JAIME LLP**
Richard S. Linkert (SBN: 88756)
Madison M. Simmons (SBN: 29285)
3638 American River Drive
Sacramento, CA 95864
Telephone: (916) 978-3434
Facsimile: (916) 978-3430
Email: rlinkert@mathenysears.com
Email: msimmons@mathenysears.com

Attorneys for Defendants
COUNTY OF SISKIYOU and JEREMIAH LARUE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| GER CHONG ZE CHANG, MAI NOU VANG, RUSSELL MATHIS, YING SUSANNA VA, and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>COUNTY OF SISKIYOU and JEREMIAH LARUE, in his official capacity as Sheriff,<br><br>        Defendants. | Case No.: 2:22-cv-01378-KJM-AC<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF TO ADDRESS COURT ORDER GRANTING IN PART, A PRELIMINARY INJUNCTION**<br><br>**[Fees Exempt Pursuant to Government Code Section 6103]** |

## I. INTRODUCTION

The County of Siskiyou and Jeremiah LaRue (County) respectfully submit this supplemental brief as ordered by the Court in its October 24, 2024, Order, which granted, in part, a preliminary injunction, but which left open the scope of a potential preliminary injunction. The following points and authorities and supporting evidence address the Court's requests regarding its five tentative conclusions about the scope of an appropriate preliminary injunction in this matter. *See* Order, ECF Doc. 100, pp. 26:12-28:32. Additionally, as instructed, objections to the tentative preliminary injunction are included, along with the evidentiary support for a bond and its amount under Rule 65(c). *See* Order, ECF 100, p. 29:3-6.

## II. POINTS AND AUTHORITIES

### A. Response to the Court's Tentative Conclusions

#### 1. This is not a Case in Which a Mandatory Injunction Should Issue to Ensure People have Water for Basic Needs Because Plaintiffs have Never had Such Access to Water

Mandatory preliminary injunctions that would otherwise alter the status quo by commanding positive action are subject to "heightened scrutiny," and should not be issued unless the facts and law clearly favor the moving party. *Dahl v. HEM Pharmaceuticals Corp.,* 7 F.3d 1399, 1403 (9th Cir. 1993); *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015). Mandatory injunctive relief is "particularly disfavored" and will not be granted unless extreme or very serious harm will result absent an injunction, and harm cannot be compensated in damages. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 879.

This Court has tentatively concluded that a mandatory injunction is necessary to ensure that people have water for their "basic needs," but has invited further briefing. Dkt. 100, p. 26:15-17. The County respectfully submits that the tentative conclusion is not correct, and that a mandatory injunction should not issue, as it would be unworkable and illegal for the County to provide water to Plaintiffs to meet their basic needs. This is so for two reasons: (1) Plaintiffs have never before had access to legal, safe and reliable drinking water, and thus they have never had a water source that meets their "basic needs", and (2) the County is not a licensed water purveyor within the state of California, and thus it does not have a water source or treatment facility that can be used to supply water to Plaintiffs (or anyone else) for their

1   "basic needs."[1]

2       While the Court does not define what it means by "basic needs" in its Order, it suggests in the

3   proposed injunction that "basic needs" includes water for drinking, cooking and bathing. See Dkt. 100, p.

4   28, para. 2(a). As a matter of state law, such water must be potable, i.e treated. "Potable water" is defined

5   in state law as "water that is suitable for human consumption." Cal. Water Code §10608.12(x). "Human

6   Consumption" is defined as the use of water for drinking, bathing or showering, hand washing, oral

7   hygiene, or cooking, including, but not limited to, preparing food and washing dishes." Cal. Health &

8   Safety Code §116275(e). In other words, under the most fundamental of health and safety laws of this

9   State, one may only use potable (i.e. treated) water to meet his/her "basic needs" of human existence, i.e.

10  drinking, cooking and bathing.

11      Herein lies the problem with any argument for a mandatory injunction. Plaintiffs, and those

12  individuals living in the Mount Shasta Vista ("MSV") area of the County have never had access to treated

13  potable water, and thus have never had access to water that meet their "basic needs". The only alleged

14  "state action" targeted by the proposed injunction relates to non-potable water, which is what Plaintiffs

15  had been trucking to the MSV area, and which was the subject of the County's enforcement under Title

16  X, Chapter 6 of the County Code. The Court recognizes that the issue here is non-potable water, which

17  Plaintiffs even concede. *See Reporter's Transcript of Proceedings,* pp. 9:22-10:24. If that is the case, the

18  Court cannot find that the County has deprived Plaintiffs of water that meets their "basic needs," nor can

19  it impose upon the County a mandatory affirmative obligation to do so, because Plaintiffs never had such

20  water in the first place. *See Murguia v. Langdon,* 61 F.4th 1096, 1110-11 (9th Cir. 2023) ["[T]he [state-

21  created danger] exception applies only where there is affirmative conduct on the part of the state in placing

22  the plaintiff in danger."] Stated another way, Plaintiffs' lack of access to potable water for their basic

23  needs is not a situation that the County caused, and the County should not be forced to remedy it.

24      Moreover, under California Law, any single-family home, as that term is defined, is required to

25  have a permanent, potable water source that meets State drinking water standards. *Dean Decl.,*¶3. Cal.

26

27  _____

    [1]  The provision and regulation of water supply in an area such MSV is extraordinarily complex and involves complex

28  regulatory provisions and overlapping jurisdiction of multiple entities such as Siskiyou County Flood and Water Conservation
    District through its Sustainable Groundwater Management Act authority, the California State Water Resources Control Board
    (SWRCB).  None of these agencies are a party to this litigation.

2

Water Code section 106.4(b) provides: "A city, including a charter city, or a county, shall not issue a building permit for the construction of a new residential development where a source of water supply is water transported by a water hauler, bottled water, a water-vending machine, or a retail water facility." Plaintiffs concede, drinking water must be potable. To the extent non-potable water is being used for other uses such cooking, bathing, and washing clothes, those uses are associated with living on and occupying the property. State law specifically requires that in order to have a lawful structure on a property, there must be a permanent potable water source.  Off-site water sources do not qualify as a "permanent potable water source." *See* Order, ECF 100, p.1:22-23. Thus, not only have Plaintiffs never had lawful access to potable water, but under state law they are not even residing in legal structures on the MSV properties. As such, there is no possible way for the Court to impose a mandatory injunction. The Court acknowledged its intent to limit the injunction to only provide "water for lawful uses." *See Reporter's Transcript,* p. 9:1-5. This is reflected in the Court's Order as it notes **"Plaintiffs have not justified a class wide injunction barring the County from keeping ground water away from illicit cannabis operations, no matter where they might be found within the County."** *See* Order, ECF 100, p.19:9-11.

Also, a mandatory injunction would be completely unworkable because the County cannot legally supply water to Plaintiffs, potable or otherwise. The County cannot divert or pump groundwater for plaintiffs' use without a corresponding water right, which the County does not have. "No right to appropriate or use water subject to appropriation shall be initiated or acquired except upon compliance with the provisions of this division." Cal. Water Code, § 1225. Surface water appropriations after 1914 are subject to extensive permitting requirements by the State Water Resources Control Board, among other natural resource agencies, and the County has no such permits. Cal. Wat. Code, § 1250 et seq. [application to appropriate water requirements];Cal. Water Code, § 1375 et seq. [permitting requirements]; Cal. Fish & Wildlife Code, § 1602 [California Department of Fish & Wildlife requirements for diversions].)

Groundwater may only be pumped and used on properties that do not overlie the groundwater source if the groundwater is surplus to overlying uses. *City of Santa Maria v. Adam*, 211 Cal.App.4th 266, 279 (2012). But the County does not own or operate groundwater wells that could supply surplus water for plaintiffs' use and does not have groundwater pumping rights. The County has only a limited riparian right to divert surface water for irrigating pastureland in the Scott Valley. This is not a water supply that

can be used to supply water to Plaintiffs in MSV. Dean Decl., ¶4. Also, the County does not own a treatment facility, and thus has no way of supplying Plaintiffs with treated water to meet their "basic needs". *See id.*

The County did not request, invite, or otherwise compel Plaintiffs or anyone else living in MSV to acquire interests in lots without adequate water sources, and where building permits could not be obtained. If Plaintiffs wish to have potable water delivered to their properties, they can do so on their own, without County assistance, provided they retain a licensed potable water hauler. Cal. Health & Saf. Code, § 111070, subd. (e). Yet, the Court's proposed (and tentative) mandatory injunction would require the County to provide water guarantees and services it does not provide for anyone else, nor can it legally provide to Plaintiffs. The Court should not impose any mandatory injunctive relief, and if the Court truly wants only legal uses of water, then, as is discussed herein, any injunction must be narrow in scope.

### 2. The Court Should not Issue an Injunction that Broadly Covers all Persons in MSV; Any Injunction Must be Narrowly Tailored to Provide for only Lawful Uses of Water Based on Competent Evidence

A preliminary injunction should not issue unless there is clear evidence of irreparable injury, and speculative losses are insufficient to justify injunctive relief. *Goldie's Bookstore, Inc. v. Sup. Ct.,* 739 F.2d 466, 472 (9th Cir. 1984); *Big County Floods, Inc. v. Board of Ed. of Anchorage School Dist.,* 868 F.2d 1085, 1088 (9th Cir. 1989). This Court has tentatively concluded that a broad injunction covering non-parties in the MSV area should issue in order to avoid irreparable harm but has invited this further briefing on the issue. Dkt. 100, p. 26:18-27. The County respectfully submits that any injunction issued by the Court should be narrow in scope, and, as the Court has suggested, should be limited to what Plaintiffs can show is needed for lawful use of their properties. Id.

As the Court recognized, the majority of Plaintiffs and declarants cited in Plaintiffs moving papers, reside in and about MSV. This Court has seen uncontradicted evidence that since the passage of **Proposition 64,** which legalized the use of cannabis in the State of California, illegal cannabis cultivation has exploded in a number of remote areas in the County, including within MSV. As reflected in the declarations of Rick Dean, Sheriff Jeremiah LaRue and the images attached, MSV is an illegal cannabis growing center of an industrial scale.

As demonstrated to the Court in *Lo*, MSV was originally established decades before and was

4

described in 1979 by the Record Searchlight as a waterless 4,090-acre 1,630 lot subdivision at the foot of Mount Shasta. It has never been a secret that a large percentage of properties in MSV are without a reliable or viable source of water for typical residential use. *Dean Decl. ¶18.* At present there are only 84 lots in MSV with permitted structures, meaning there are 84 lots with wells sufficient for residential use.[2] *See* Dean Decl., ¶18. For decades, the number of developed lots has remained virtually unchanged.[3]

Despite the scarcity of water for residential use, in recent years, the interest in purchasing or acquiring interests in waterless land in MSV has exploded. LaRue Decl. ¶3. It just so happens that the interest in land in MSV has been found among illegal cannabis cultivators. LaRue Decl. ¶6; Dean Decl. ¶12; Kuklo Decl. ¶11. Google Earth imaging reflects that virtually every single one of the MSV lots contain one to four greenhouses located in areas that were always dry, have been cleared, and are devoted to cannabis cultivation. Dean Decl. ¶12; Konicke Decl. ¶6; Kuklo Decl. ¶12. Due to the nature of the terrain, cannabis cultivators rely exclusively on the transportation of water pumped out of the ground from nearby sources including Griset and Spencer. LaRue Decl. ¶11.

While this Court has indicated that some form of injunction should issue so that Plaintiffs have access to water, the Court has been careful to note that water should only be used for legal purposes, and that the County should still maintain all of its law enforcement capabilities and police powers. See Dkt. 100, p. 24:3-13. The scope of any injunction must be so limited, and the Court cannot enjoin the County to the extent it would lead to illegal uses.

This raises a practical question, what should be the scope (or limits) of the preliminary injunction be? As is set forth in the Court's Order, Plaintiffs (and others in the MSV) cannot legally use water to cultivate marijuana, and as shown above, Plaintiffs cannot use this non-potable water source for domestic consumption, i.e. for drinking, cooking and bathing. The Court identified additional potential uses of non-potable water, e.g. caring for pets, raising domestic animals and lawful gardening. See Dkt. 100 p. 28, para 2(a). Based on the evidence presented to date, Plaintiffs and others in the MSV are not using non-potable water for any of those identified uses. Nevertheless, if the Court is inclined to grant any kind of

---

[2]  Wells also need to be permitted to be lawful. Use of an unpermitted well is equally unlawful, and it puts local groundwater supplies at risk of contamination or depletion.

[3]  Plaintiffs cannot claim to be camping fulltime since camping on private property without a lawful residence and which is outside designated campgrounds is limited to no more than thirty (30) days per year and requires obtaining a permit. Siskiyou County Code § 3-17.01. There is also no duty to provide campers with potable water.

DEFENDANTS' SUPPLEMENTAL BRIEF TO ADDRESS COURT ORDER SUSTAINING IN PART PRELIMINARY INJUNCTION

prohibitory injunction, it should be limited to the non-enforcement of the County Ordinance that will only allow for enough water to sustain those limited allowable uses, which Plaintiffs should have to prove with competent evidence, and which the County should then have an opportunity to rebut. The details of an injunction should be left to the Magistrate Judge to decide, following a showing from the parties. And if the Court wishes to apply the prohibitory injunction to persons in MSV beyond Plaintiffs, it should require a case-by-case showing of each person's needs for such water. *See Adams v. Freedom Forge Corp.,* 204 F.3d 475, 485, 487. (3rd Cir. 2000).

### 3. The Court Should not Provide Injunctive Relief for Fire Protection or Gardening

The Court recognizes it has not been provided sufficient evidence to meet Plaintiff's burden of showing that extreme or very serious damage will occur if an injunction is not granted requiring a water allotment for fire suppression or gardening. There is no evidence that lay people using water trucks to fight fires is a safe and reasonable option. Lauderdale Decl., ¶6-9. There is also no evidence of what amount of water is used or is needed for lawful gardening purposes.

Plaintiffs simply do not demonstrate they meet their burden supporting an injunction allowing a water allotment for fire suppression purposes or gardening. As discussed above, based on the evidence presented to date, Plaintiffs and others in the MSV are not using non-potable water for any of those identified uses . Nevertheless, if the Court is inclined to grant any kind of prohibitory injunction, it should be limited to the non-enforcement of the County Ordinance that will only allow for enough water to sustain those limited allowable uses, which Plaintiffs should have to prove with competent evidence, and which the County should then have an opportunity to rebut. Once again, the details of an injunction should be left to the Magistrate Judge to decide, following a showing from the parties. And if the Court wishes to apply the prohibitory injunction to persons in MSV beyond Plaintiffs, it should require a case-by-case showing of each person's needs for such water. *Adams v. Freedom Forge Corp.,* 204 F.3d 475, 485, 487 (3rd Dist. 2000).

### 4. Defendants Request a Substantial Bond Issues Given The Real Environmental and Human Concerns at Issue.

A district court retains discretion "as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) The court may dispense with the filing of a bond if "there

DEFENDANTS' SUPPLEMENTAL BRIEF TO ADDRESS COURT ORDER SUSTAINING IN PART PRELIMINARY INJUNCTION

1  is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v.*

2  *Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). The bond's purpose is to safeguard a defendant if the court

3  later determines a defendant has been wrongfully enjoined. *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444

4  F. Supp. 3d 1198, 1210–11 (E.D. Cal. 2020).

5        Here, the proposed injunction may cause significant damage since it would allow continuation of

6  illegal cannabis cultivation. A high concentration of cultivation is occurring in MSV and has only

7  proliferated during this and related litigation. There are also many unpermitted structures.  These unlawful

8  activities include use of illegal pesticides, improper human waste and garbage disposal, use of illegal and

9  unpermitted structures[4] with faulty and dangerous electricity access. Kuklo Decl. Exh. E.  The issue is not

10  only unlawful cannabis cultivation, but how it is being illegally cultivated using scarce groundwater

11  resources in an environment that gives no concern for standards of living, the environment, the

12  surrounding areas, the roads, animals, or any concern for compliance with the law in any manner.

13        The cost to the County for these continued activities is incalculable.  A crude method to estimate

14  remediation costs is to estimate an average acreage cleanup cost of $29,000 for the estimated 1,205 parcels

15  with illegal grow houses located on them.  Using that estimate, remediation costs would be approximately

16  $20,000,000.00 if it is assumed that only 25% of parcel cleanup takes place. Dean Decl., ¶18. This estimate

17  does not account for the damage to the groundwater basins, should the environmental mess that is

18  occurring reaches them, the illegal nature of the activity, nor the possible lawsuits that will follow by other

19  citizens and environmental groups for the County no longer enforcing its zoning ordinances in MSV

20  against all of those similarly situated throughout the County.

21        For these reasons, the County asks that a bond be set for a minimum of $20,000,000.00.

22   **B.     Objection to Preliminary Injunction**

23        **1.     The Injunction Will Not Achieve Its Intended Objectives.**

24        The Court's Order prohibits the County from enforcing any law or regulation including Title 10,

25  Chapter 6 of the Siskiyou County Code to prevent the transfer of water for the purposes it has enumerated

---

[4]  By definition, an unpermitted structure is unsafe.  2022 California Residential Code, Title 24, Part 2.5, §1.1.2; see also Section 115.1 of the Uniform Building Code.

DEFENDANTS' SUPPLEMENTAL BRIEF TO ADDRESS COURT ORDER SUSTAINING IN PART
PRELIMINARY INJUNCTION

1    to residents of parcels in the MSV subdivision that lack a residential well or a municipal water source. *See*

2    Order, ECF 100, p. 28:4-11. Importantly, the Court's Order and statements during the hearing show that

3    the Court did not intend to fashion an injunction that would "undercut the County's ability, as provided

4    by state law, to regulate cannabis grows." *See Reporters Transcript 9/13/2024,* p.7:13-15; p. 10:10-12.

5    The Court's Order provides that the Court "will not bar the County from using the legitimate tools at its

6    disposal to **keep groundwater** from being used for illicit cannabis operations, or from enforcing the law

7    in other parts of its territory." *See* Order, ECF 100, p.26:23-25. An overall theme of the Court's Order is

8    to limit water use to **lawful** water use.

9           As currently conceived, the Court's tentative injunction will, in all practical effect, facilitate illegal

10   cannabis cultivation and other unlawful uses, unless the injunction is narrowly framed, as discussed above.

11   "Injunctive relief, like declaratory relief, must serve a useful purpose." *In re Hawaiian Airlines, Inc.,* 386

12   B.R. 251, 259 (D. Haw. 2008), *aff'd sub nom. Konop v. Hawaiian Airlines, Inc.*, 401 F. App'x 260 (9th

13   Cir. 2010) (citing *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 693 (1st Cir.1994) ("Rather

14   than asking, negatively, whether denying relief would impose hardship, courts will do well to ask, in a

15   more positive vein, whether granting relief would serve a useful purpose, or, **put another way, whether**

16   **the sought-after declaration would be of practical assistance** , and in **setting the underlying**

17   **controversy to rest**.").

18          The injunction would only serve to provide non-potable water to the residents of MSV which is

19   only suitable for certain very limited applications such as crops, construction, or dust control.[5] The use of

20   hauled, non-potable water for essential needs such as drinking, bathing and cooking is directly contrary to

21   California Law.  Thus, if the Court's intent is to provide water for essential needs for "human consumption,

22   cooking, and sanitary purposes," this injunction will not solve that problem. In furtherance of a limited

23   injunction, the Court should consider: 1) the ability of persons in the MSV to purchase non-potable water

24   from legitimate, regional bulk water purveyors; 2) the rights of other citizens to the benefits of a lawfully

25   adopted zoning code and the impact of allowing any landowner in any zoning district (from single family

26   to heavy industrial) to operate a bulk water fill station without any environmental review or any

27

28
---
[5]While non-potable, irrigation water is relied upon for herds of cattle, it can contain viruses and bacteria that make it unsafe drinking water for smaller, domestic pets (dogs, cats, etc.).

DEFENDANTS' SUPPLEMENTAL BRIEF TO ADDRESS COURT ORDER SUSTAINING IN PART
PRELIMINARY INJUNCTION

operational conditions so long as their sales are to persons in the MSV; 3) any attempt to guarantee, allocate, or prioritize appropriative groundwater pumping for MSV gardening needs in relation to other beneficial uses in the Shasta Valley basin may require the involvement of other agencies that share jurisdiction over resources in the Shasta River watershed; and (4) the practical difficulties of enforcing the Court's order when the County is not the water supplier.

## 2. The County Did Not Create the Danger for Which Plaintiffs Seek the Court's Intervention

In reaching its conclusion that Plaintiffs would likely succeed on a claim for a violation of the Due Process Clause of the Fourteenth Amendment, the Court relied on the "state-created-danger-doctrine" *See* Order, ECF 100, p. 21:4-28. Under this state-created-danger-doctrine, Plaintiffs must prove that affirmative conduct on the part of the State exposed them to an actual, particularized danger they would not otherwise have faced. *Polanco v. Diaz*, 76 F.4th 918, 926 (9th Cir. 2023). According to the Court's Order, the affirmative action taken by the County which exposed Plaintiffs to a danger they would not otherwise have faced was "enforcing its zoning ordinances against well owners who have sold or donated pumped well water to people on other properties." *See* Order, ECF 100, p.22:11-13. In support of this conclusion, the Court cites to actions taken against Steven Griset and Shannon Spencer. *See* Order, ECF 100, p.6:1-23.

As previously described, the County did not institute civil actions against Spencer and Griset. Those actions were initiated by the District Attorney's Office on behalf of the People of the State of California. RJN, Exhs A&B. In both instances, the District Attorney filed actions for permanent injunctions and civil penalties on behalf of the people of the State of California for violations of the Business and Professional Code §§ 17203, 17204, and 17206; Code of Civil Procedure § 731; and Siskiyou County Code § 1-5.08.[6] *Id.* The stipulated judgment and remedies referenced by The Court were part of the District Attorney's action on behalf of the People not an action by the County. (RJN, Exhs. A & B.)

---

[6] The Unlawful Business Practices Act, Bus. & Prof. Code §17200 et seq., borrows violations of other laws and treats them as independently actionable. *Brewer v. Indymac Bank* (E.D. Cal. 2009) 609 F.Supp.2d 1104, 1123. Importantly, the Unlawful Business Practices Act also is premised on the unlawful operation of a business or commercial enterprise.

Further, the same pumpers have been subject to State Water Resources Control Board emergency regulation curtailments since Governor Newsom continued the State of Emergency on May 10, 2021. The Emergency Regulation § 875.5(b)(1) has been consistently renewed for each subsequent water year since 2021. In Order WR 2021-0082-DWR, the Water Board issued its first list of curtailed parties in Shasta Valley; included were Stephen Davis Griset, Darrell Sousa, Moua Dean Murphy et al, among many others. The Water Board required the listed "water rights holder in the Shasta River watershed to stop diverting under their water rights until water supply conditions improve in the watershed and there is no longer a risk to minimum flow requirements…" The Water Board explained in the Order that "because the surface water and groundwater are interconnected in the Shasta River watershed, the regulation includes water rights for diversions of surface water as well as appropriative and overlying groundwater diversions, in order of priority."

The current curtailment orders against water providers such as Griset cannot be lifted by the County of Siskiyou because they were not put in place by the County. The State of California, the Siskiyou County Flood Control and Water Conservation District, and the other water providers and agencies with possible regulatory authority, are not parties to this action. Thus, the very harm that the Court recognizes was not caused by County action and therefore any injunction that may issue will not remedy the alleged harms. "Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury is *likely* in the absence of an injunction.'" *Timbisha Shoshone Tribe v. Kennedy*, 687 F. Supp. 2d 1171, 1188 (E.D. Cal. 2009).

Dated: November 22, 2024                    SPINELLI, DONALD & NOTT


                                            By: ___/s/_____
                                                 J. SCOTT DONALD
                                                 Attorneys for Defendants
                                                 COUNTY OF SISKIYOU AND
                                                 JEREMIAH LARUE

DEFENDANTS' SUPPLEMENTAL BRIEF TO ADDRESS COURT ORDER SUSTAINING IN PART PRELIMINARY INJUNCTION