| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA**<br>JOHN THOMAS H. DO (SBN 285075)<br>jdo@aclunc.org<br>EMI YOUNG (SBN 311238)<br>eyoung@aclunc.org<br>GRAYCE ZELPHIN (SBN 279112)<br>gzelphin@aclunc.org<br>39 Drumm Street<br>San Francisco, CA 94111<br>Telephone: (415) 293-6333<br>Facsimile: (415) 255-8437<br><br>**ASIAN LAW CAUCUS**<br>CARL TAKEI (SBN 256229)<br>carlt@asianlawcaucus.org<br>MEGAN VEES (SBN 325184)<br>meganv@asianlawcaucus.org<br>55 Columbus Avenue<br>San Francisco, CA 94111<br>Telephone: (415) 896-1701<br>Facsimile: (415) 896-1702<br><br>*Counsel for Plaintiffs Chang, et al.* | **COVINGTON & BURLING LLP**<br>STANLEY YOUNG (SBN 121180)<br>syoung@cov.com<br>SAMANTHA FLATTERY (SBN 342420)<br>sflattery@cov.com<br>3000 El Camino Real<br>5 Palo Alto Square, 10th Floor<br>Palo Alto, CA 94306-2112<br>Telephone: (650) 632-4700<br>Facsimile: (650) 632-4800<br><br>MICHAEL PLIMACK (SBN 133869)<br>mplimack@cov.com<br>ALISON WALL (SBN 319562)<br>awall@cov.com<br>ELLEN CHOI (SBN 326291)<br>echoi@cov.com<br>DANIEL ESSES (SBN 340193)<br>desses@cov.com<br>Salesforce Tower<br>415 Mission St., Suite 5400<br>San Francisco, CA 94105-2533<br>Telephone: (415) 591-6000<br>Facsimile: (415) 591-6091 |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GER CHONG ZE CHANG, MAI NOU VANG, RUSSELL MATHIS, YING SUSANNA VA,** and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**COUNTY OF SISKIYOU** and **JEREMIAH LARUE**, in his official capacity as Sheriff,<br><br>Defendants. | CASE NO.: 2:22-cv-01378-KJM-AC<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION** |

Plaintiffs submit this supplemental brief pursuant to the Court's October 25, 2024, Order requesting further briefing on specific issues. The Court should disregard any late attempt by Defendants to relitigate issues not identified by the Court; Plaintiffs would otherwise be unfairly prejudiced by not being able to respond while additional briefing would cause further delay and irreparable harm.

## I. The Proposed Injunction Is Prohibitory, But the Findings Also Support Mandatory Relief.

The Court's proposed injunction is "a classic form of prohibitory injunction," as it seeks to "prevent future constitutional violations" by enjoining Defendants from enforcing a policy that is causing harm, rather than imposing an affirmative obligation to provide water. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Nevertheless, should the Court determine otherwise, Plaintiffs satisfy the heightened standard for mandatory relief.

"A mandatory injunction orders a responsible party to take action, while [a] prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Ariz. Dream Act. Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014). The status quo is "the legally relevant relationship between the parties before the controversy arose." *Id.* at 1061. In a case challenging an allegedly unconstitutional policy or practice, the status quo is not measured by when litigation commenced. *Fellowship of Christian Athletes v. San Jose Unif. Sch. Dist. Bd. of Ed.*, 82 F.4th 664, 684 (9th Cir. 2023). Rather, the challenged policy or interpretation thereof is the "controversy," and the status quo is the state of affairs preceding its adoption. *Brewer*, 757 F.3d at 1061 (status quo was before revised licensing policy was adopted); *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 732, n.13 (9th Cir. 1999) (status quo was before challenged ordinance's enactment).

The Court's tentative preliminary injunction is prohibitory: it enjoins Defendants from, in relevant part, "enforcing Title 10, Chapter 6 of the Siskiyou County Code and any other law or regulation to prevent the transfer of water." ECF 100 at 28. By prohibiting enforcement, it preserves the relationship between the Parties that existed before the County adopted the challenged interpretation of its ordinances. This prohibition is the *only* obligation the proposed order imposes upon Defendants; no contempt follows from their failure to undertake the other actions identified in part 2(a) of the text. Accordingly, while part 2(a) contemplates that Defendants *may* in the future demonstrate "adequate interim source[s]" of water to seek relief from the injunction, it does not order Defendants to take action. *Brewer*, 757 F.3d at 1060.

Conceptually, this is no different than an order providing Defendants with notice of what changed factual circumstances would justify dissolution of the injunction. *See Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019). The proposed injunction is therefore properly treated as a prohibitory injunction.

Even if the Court determines otherwise, Plaintiffs satisfy the standard for a mandatory injunction. "Mandatory injunctions, while subject to a higher standard than prohibitory injunctions, are permissible when extreme or very serious damage will result that is not capable of compensation in damages, and the merits of the case are not doubtful." *Hernandez*, 872 F.3d at 999 (internal citation omitted). Plaintiffs have demonstrated a likelihood of very serious, irreparable harm, as they are at risk of lacking water required for basic use and subsistence. ECF 100 at 24. The state-funded non-profit charged with finding short- and long-term water solutions supports this conclusion and has expressed alarm over the County's water restrictions. ECF 83-11 ¶ 13 ("[M]any community members may have to leave the County or instead rely on even more dangerous, non-treated water.").[1] Defendants have not previously disputed these harms. ECF 100 at 24. Nor have they attempted to contest the other aspects of Plaintiffs' substantive due process claim, *i.e.*, that the County's zoning enforcement has subjected Plaintiffs "to dangers they would not otherwise have faced." *Id*. at 20; *see generally* ECF 88 at 12–24. Because the Court rightly found a likelihood of success on the merits and Defendants have not offered *any* contrary evidence, the merits of the claim are "not doubtful" and could support mandatory injunctive relief. *Hernandez*, 872 F.3d at 999.

## II.   The Breadth of the Proposed Injunction Is Necessary and Appropriate.

The proposed injunction is appropriately tailored to the evidence supporting its issuance, and broad relief is necessary to prevent irreparable harm pending trial. An injunction that extends benefits to persons other than the named plaintiffs is not overbroad "if such breadth is necessary to give prevailing parties the relief to which they are entitled."[2] *Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987) (emphasis

---

[1] While the State Water Board's curtailment orders impact some water sources, they also maintain exceptions for minimum health and safety uses. It is Defendants' regulation of *all* water transfers that has caused the scarcity of water at issue. *See* ECF 83-11 ¶ 3; ECF 90 at fn. 3.

[2] Although the Court declined to rule on Plaintiffs' equal protection claims based on racial animus, Plaintiffs' statutory Gov. Code section 11135 claim requires no showing of racial animus. *See* ECF 83-1 at 21. Defendants did not dispute, and the Court's tentative findings are consistent with, a showing of disparate impact on Asian Americans and a violation of § 11135, which would support enjoining the zoning policy *in full*.

omitted); *see also Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996). In *Bresgal*, individual agricultural workers obtained a nationwide injunction requiring the Secretary of Labor to enforce the Farm Labor Contractor Registration Act. *Id*. at 1165. The Ninth Circuit affirmed the "class-wide" scope of relief, reasoning that in light of uncertainty about who would employ plaintiffs in the future, limiting enforcement to an identified third-party labor contractor was impracticable and risked rendering inadequate relief. *Id*.

Here, like in *Bresgal*, the nature of the market for water makes any attempt to limit the scope of an injunction to single well owners impracticable. As Plaintiff Mathis's declaration demonstrates, there is not a single, consolidated source of water for residents of Shasta Vista. Instead, since 2020, Plaintiff Mathis has been forced to call on various neighbors and contacts every time he needs water. ECF 83-9 ¶¶ 11–12, 16–17, 19–20. Moreover, because Plaintiff Mathis and others in Shasta Vista often turn to water haulers or others who are able to deliver water, water recipients may not know from which well the water originates.[3] *Id*. (describing calling water truck drivers and neighbors for water); *see also*, *e.g.*, ECF 83-18 ¶ 7 (calling water haulers to purchase water); ECF 83-15 ¶ 6 (same). In these circumstances, an order attempting to limit the injunction to specific water sources is neither administrable nor adequate.

The same facts show the inaptness of restricting transfers of water by quantity. Preliminarily, quantity limits are unnecessary to address wrongful water use, as the terms of the Court's proposed injunction do not permit *any* provision of water for cannabis cultivation, instead setting forth specific permissible uses. The County retains other means to regulate unlawful use, including Siskiyou County Code § 3-13.702, which prohibits the knowing extraction or discharge of water for cannabis cultivation, and enhanced prosecutions under Health and Safety Code section 11358(d)(3). *See* ECF 90 at 13. Further, the Court has already considered and rejected schemes that would place an affirmative, discriminatory requirement that shifts the burden to water users to demonstrate lawful water usage, *see* ECF 57-1 (*Lo*

---

[3] Use of water trucks and haulers is not unique to Asian American residents of Shasta Vista, but also occurs amongst the non-Asian population of the County, *see, e.g.*, ECF 83-13, Exs. C and D (including thousands of gallons for fire protection), and has been recognized as an appropriate water source during times of drought. *See* Executive Order N-7-22, *available at* https://www.gov.ca.gov/wp-content/uploads/2022/03/March-2022-Drought-EO.pdf.

Order granting preliminary injunction). The Court should refrain from legislating such an administratively difficult requirement.

Moreover, the realities of water transfers in Siskiyou mean that residents generally rely on bulk transfers by water haulers, whether such deliveries are split between residents or delivered to a storage tank like that maintained by Plaintiff Mathis. ECF 83-9 ¶ 20. The California Water Boards estimate that in 2024, daily residential water use averaged 104 gallons per capita[4]; adopting these figures as an example, a family of two would require a delivery of over six-thousand gallons of water—an amount exceeding the capacity of standard water trucks[5]—to sustain themselves for a single month. Domestic water usage includes bathing, cooking, fire prevention, and gardening, none of which requires the use of potable water and all of which members of the Shasta Vista community use hauled water for. *See generally* ECF 83-1 Section III.B. Plainly, in light of the prevailing mechanism of water transfers and the quantities required for residential use, attempting to facially limit transfers of water by a precise amount is impracticable. Nor can the Court trust the County to choose or administer a narrower restriction, particularly given evidence of racial animus in the use of water restrictions and Defendants' poor track record of compliance with Court orders. *See* ECF 83-1 at 8, 14-16 (describing discriminatory enforcement of water restrictions and general expressions of animus); ECF 56 at 22-23 (identifying prior violations of preliminary injunction).

Finally, although the Court denied provisional class certification without prejudice due to the perceived overbreadth of the class definition, ECF 100 at 17–18, the Court may modify the definition to cure such deficiencies and issue class-wide relief. *See*, *e.g.*, *Snipes v. Dollar Tree Distrib., Inc*., 2019 WL 5830052, at *5 (E.D. Cal. 2019) ("The Court may properly . . . cure any defect contained within a class definition."); *Victorino v. FCA US LLC,* 326 F.R.D. 282, 301–02 (S.D. Cal. 2018) ("[D]istrict courts have the inherent power to modify overbroad class definitions.") (collecting cases); *Wolph v. Acer Am. Corp*., 272 F.R.D. 477, 483 (N.D. Cal. 2011). The Court found Plaintiffs' proposed class definition overbroad in two respects: (1) geographic scope, as there was insufficient evidence of zoning enforcement outside of

---

[4] State Water Resources Control Board, "Water Conservation and Production Reports," available at https://www.waterboards.ca.gov/water_issues/programs/conservation_portal/conservation_reporting.html (last accessed Nov. 1, 2024). Plaintiffs cite this figure for a general estimate, while recognizing that actual water needs may vary depending on numerous factors and rural residents may require far more water than urban ones.

[5] *See* ECF 88-11 at 5 (County alleges typical water trucks range in size from 2000-4000 gallons).

Shasta Vista subdivision or that Plaintiff Mathis could adequately represent persons living elsewhere; and (2) intended water use, as the Court questioned whether Plaintiff Mathis could adequately represent, and shared common claims and defenses with, persons who obtain water for illegal cannabis cultivation. ECF 100 at 17–18. Both concerns could be resolved by provisionally certifying a narrower class of "all Asian Americans who reside or will reside in the Mount Shasta Vista Subdivision and rely on off-parcel water for lawful use."[6] There is no prejudice to Defendants in doing so, as they did not dispute that Plaintiffs satisfied Rule 23's requirements even under the original class definition. *See* ECF 86 at 2–4.

### III. Relief Is Necessary to Prevent Irreparable Harm Related to Fire Protection & Gardening.

Fire Protection & Firefighting. In its Order, the Court tentatively declined to grant injunctive relief "related to fire protection and firefighting," finding that Plaintiffs had not demonstrated that they would face irreparable harm absent injunctive relief. ECF 100 at 27. However, there is unrebutted evidence that the Shasta Vista community has already suffered irreparable harm with respect to fire protection and is likely to continue suffering similar harms absent injunctive relief.

First, the lack of available water as a result of Defendants' unlawful zoning policy has already resulted in irreparable harm—at least one irreplaceable Hmong community space has been destroyed. ECF 83-16 ¶ 20. This is an example of the severe harm that can occur before CalFire arrives and the important role that water haulers play in preventing such harm. Fitz Ya, an Asian-American and member of the Juniper Flat Fire Safety Counsel[7] explains that when the Hmong community can access water, water trucks "often put out [] fires before [CalFire] or other professional firefighters [] arrive;" however, he has recently had difficulty finding stocked water trucks because drivers cannot access well water, which led to the destruction of the community space. ECF 83-16 ¶ 20.

---

[6] Plaintiffs reserve the right to seek certification of a broader class upon filing for formal class certification, as "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Emami v. Mayorkas*, --- F.Supp.3d ---, 2024 WL 1298062, at *7 (N.D. Cal. 2024) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1112 (9th Cir. 2010)). The fact that a class representative may have a *stronger* claim to relief than absent class members does not render them atypical. *See, e.g.*, *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th Cir. 2010). Limiting the class to a defined neighborhood, for example, risks enabling Defendants to take the same action in other neighborhoods.

[7] The Juniper Flat Fire Safety Counsel is a non-profit based in Northern California that works with, and receives funding from, public organizations to educate residents on fire prevention. *See* https://staging.cafiresafecouncil.org/.

Second, the evidence shows that governmental fire protection services generally require thirty minutes to reach Shasta Vista, *see e.g.* ECF 83-5 ¶ 18, and that water haulers prevent or reduce irreparable harm during this time. ECF 83-16 ¶ 18 (in 2024, Hmong community members put out or contained several fires before CalFire could respond); ECF 83-7 ¶¶ 7–8 (water hauler put out fire prior to professional firefighters arriving and stating that, without help from water haulers, "fires would grow a lot larger" before professional firefighters arrived). Marjorie King, the founder of the Juniper Flat Fire Safe Council, states that water from water trucks is "key" to the safety of Shasta Vista residents, including to "prevent fires from becoming catastrophic and deadly in the time it takes for CalFire and the volunteer fire companies to arrive." ECF 83-5 ¶ 24; *see also* ECF 83-4 ¶¶ 10–15 (providing numerous examples of the Shasta Vista Hmong fire prevention team putting out or containing fires prior to CalFire responding). Phillip Anzo, the former Unit Chief of CalFire Siskiyou, has recognized that reducing water access to Shasta Vista "may have impact on fires in [Pleasant Valley and Shasta Vista]" because community members "have been known to extinguish fires." ECF 83-13 Ex. P.

Further, there have been instances where the Shasta Vista community was left to fight fires entirely by themselves. *See* ECF 83-4 ¶ 5 (Shasta Vista fire prevention team created after the community saw CalFire and County firefighters "[stand] by and watch[] the Lava Fire cut through Shasta Vista."); ECF 83-9 ¶ 14 (Mathis returned to defend his house, using nearly all of the water he had, from the Lava Fire after seeing CalFire leaving the areas). CalFire may also prioritize other tasks, such as preventing significant expansion, over protecting residents' homes—Vang Khang, a Shasta Vista resident, was told by a firefighter during the Lava Fire that "they were only working on preventing the [fire] from jumping [the highway]." ECF 83-4 ¶ 5; *see also* ECF 83-16 ¶ 9 (Shasta Vista resident was told by CalFire firefighters that they had received orders not to go into Shasta Vista to fight the Lava Fire).

Third, a thirty-minute response time is significantly longer than the four-minute response time recommended by the National Fire Protection Association ("NFPA"),[8] a non-profit dedicated to reducing

---

[8] For more information on the NFPA, see https://www.nfpa.org/en. The NFPA's standards are cited by governments and non-profits. *See e.g.*, City of Fresno Fire Department Standards of Cover, https://documents.fresno.gov/WebLink/DocView.aspx?id=16736049; the District of Columbia Fire and EMS Department, https://fems.dc.gov/page/fire-response-time; California Professional Firefighters, https://legacy.cpf.org/go/cpf/working-for-you/nfpa-1710-resources/index.html.

harm as a result of fires. *See* Wall Decl. Ex. 1. Wildfires can spread incredibly quickly, meaning it is crucial to fight fires as quickly as possible in order to minimize damage. *See* ECF 83-5 ¶ 23, Ex. F (Western Fire Chiefs Association Page, describing how quickly wildfires can spread—over 14 miles per hour). Even in rural and mountainous topography (where response times may take longer), a ten-minute response time is needed to prevent irreparable harm. *See* Wall Decl. Ex. 2 at 101 (2023 San Diego County Consolidated Fire Code, describing their rural and mountainous topography and noting that "[a] ten-minute response time . . . represents the time beyond which serious injury or death is expected to occur.").

Fourth, fire prevention guidance from government entities highlights the importance of homeowners securing water sources to curb or prevent fire damage, particularly in rural areas. For example, the San Diego County 2023 Consolidated Fire Code notes that residential water access "would control and extinguish many fires before they spread from building to wildland." *See* Wall Decl. Ex. 2 at 100–01; *see also id.* Ex. 3 (CalFire Homeowner's Checklist noting the importance of keeping a minimum emergency water supply of 2,500 gallons in case of a fire); *id.* Ex. 4 (guidance from an official website of the U.S. Department of Homeland Security recommending people "connect garden hoses," "fill garbage cans, tubs, or other large containers with water," and "fill sink and tubs with water" to be prepared for and/or combat fires). Perhaps most tellingly, Siskiyou County's Emergency Preparedness Guide sets forth a list of actions County residents can take to "prepare" for and to "stay safe" when a "wildfire threatens," including instructing residents to "[f]ind an outdoor water source with a hose that can reach any area of your property." *Id.* Ex. 5.

Finally, that CalFire or other professional firefighters may respond to a fire—particularly where the response takes over ten, and typically thirty, minutes—does not negate the critical role that the Hmong community has in preventing the spread of fires and, in turn, irreparable harm to the community.

Gardening. It is common for Shasta Vista community members, many of whom are low-income, to use personal gardens as a food source. *See e.g.*, ECF 83-18 ¶ 11 (has a vegetable garden, which died in 2021 due to lack of water); ECF 83-12 ¶ 9 (uses hauled water to care for vegetable garden). The lack of water to sustain these gardens and food sources could thus cause irreparable harm. Moreover, without water, plants are likely to dry up and increase fire risk. Wall Decl. Ex. 3 (CalFire Homeowner's Checklist, recommending people "[m]aintain all plants with regular water" and remove dead leaves and needles).

## IV. The Injunction Should Allow the Transfer of Water for Fire Protection and Firefighting

Generally, Plaintiffs do not object to the scope of the proposed injunction. However, to the extent that the injunction is intended to limit water transfer for firefighting to instances where such transfer is "ordered by local fire officials," ECF 100 at 28, this limitation is impractical and unduly narrow. It is unclear under what circumstances, if any, local fire officials would "order" residents to assist with firefighting efforts. But even more permissive language, such as "as supported" or "as permitted" by local fire officials, is likely to prevent Shasta Vista residents from effectively fighting fires prior to the arrival of CalFire. Such a bureaucratic requirement would be incredibly difficult to implement,[9] is certain to create significant delay in residents' ability to fight fires, and may not be administered fairly, particularly in light of the professional firefighter's previous neglect of the Shasta Vista community, *see supra* Section III, and the County's willingness to allow water transfer for white, but not Asian, community members (including for fire protection), *see* ECF 90 at 8. With respect to the delay required to secure an order from fire officials: as discussed above, time is of the essence when fighting fires—the recommended fire response time is four minutes, Wall Decl. Ex. 1, and even in other California rural areas, fire departments require a response time of ten minutes, *id*. Ex. 2. "Rapid response is crucial because wildfire can spread rapidly." ECF 83-5 ¶ 22. The time it will take to receive an order from local fire officials, procure water, and drive to the site of the fire, is certainly in many (if not all) cases longer than five or even ten minutes, during which irreparable harm will likely occur.

Likewise, the proposed injunction does not address water for fire prevention. Water access is critical to fire protection *before* a fire has started, as demonstrated by Siskiyou County's own Preparedness Guide. Wall Decl. Ex. 5 (instructing residents to find water access to prepare for fires). The requirement to wait to transfer water until ordered by local officers would thus severely hamper the Shasta Vista community's ability to engage in such preparation and, in turn, likely lead to irreparable harm. Plaintiffs thus request the language be changed to allow the transfer of water for "fire protection and firefighting."

---

[9] For example, how would local officials determine help was needed (especially if they are not at the site of the fire for at least thirty minutes)? Who within the local department has authority to approve water transfer for firefighting? This provision requires significant cooperation and formal processes from local authorities, which is not guaranteed.

## V. Bond Should be Waived.

Fed. R. Civ. P. 65(c) allows the Court to issue a preliminary injunction if the movant gives security "in an amount that the court considers proper" to cover damages sustained by the enjoined party if it is found to have been wrongfully enjoined. However, "[t]he district court retains discretion as to the amount of security required, *if any.*" *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) (internal quotation marks omitted). The court may dispense with the security requirement altogether. *See, e.g., Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005).

Here, the Court should waive bond because (1) a significant public interest underlies this action, (2) Plaintiff Russell Mathis is indigent, and (3) Defendants cannot show a likelihood of harm resulting from the injunction. This public interest action aims to preserve rural residents' access to water for basic needs and prevent the violation of their constitutional rights. As such, no bond should be required. *See E. Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 868 (N.D. Cal. 2018) (waiving bond in part because of "significant public interest underlying this action"), *aff'd*, 950 F.3d 1242 (9th Cir. 2020); *see also Dr. John's, Inc. v. City of Sioux City, Iowa*, 305 F. Supp. 2d 1022, 1043–44 (N.D. Iowa 2004) ("[T]he rights potentially impinged by the governmental entity's actions are of such gravity that *protection of those rights should not be contingent upon an ability to pay*.") (emphasis added).

The Court should also waive bond because Plaintiffs have presented undisputed evidence that Plaintiff Mathis is indigent.[10] *See* ECF 83.9 ¶¶ 5, 6, 13 (Mathis is disabled, has limited income through Social Security, was previously homeless, and cannot afford to drill a well on his property). Because Mathis cannot afford to pay a bond, requiring one "would effectively deny access to judicial review." *Save Strawberry Canyon v. Dep't of Energy*, 613 F. Supp. 2d 1177, 1190–91 (N.D. Cal. 2009); *see also Dominguez v. Schwarzenegger*, 2010 WL 2673715, at *6 (N.D. Cal. 2010) (waiving bond requirement because many of the plaintiffs were indigent and "to ensure their ability to access the courts").

---

[10] If the Court decides to certify a modified provisional class, *see supra* Section II, it may also consider the indigency of the class as a whole. *See Walker v. Pierce*, 665 F. Supp. 831, 844 (N.D. Cal. 1987) ("Because this case is brought by indigent class representatives on behalf of mostly indigent tenants, the court in its discretion waives the requirement of security."); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 385 n. 42 (C.D. Cal. 1982) ("Where, as here, the action is brought by an impecunious class of plaintiffs, preliminary injunctive relief may be granted without any security whatsoever"). Here, the proposed narrowed class is low income. *See* ECF 83-11 ¶ 6 (vast majority of residents of Shasta Vista are low-income Asian Americans who do not have wells on their properties).

Finally, the Court should waive bond because Defendants cannot show that the injunction will cause damages. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). "Because the purpose of a bond is to cover any costs or damages suffered by the party sought to be enjoined, arising from a wrongful injunction, the party affected by the injunction bears the obligation of presenting evidence that a bond is needed." *Zest Anchors, LLC v. Geryon Ventures, LLC*, 2022 WL 16838806, at *4 (S.D. Cal. 2022). Damages must be "directly attributable to the improvidently issued injunction," *Colonial Life & Accident Ins. Co. v. Stentorians-L.A. Cnty. Black Fire Fighters*, 2014 WL 12629695, at *3 (C.D. Cal. 2014) (internal quotation marks omitted), and may not be speculative, *Extreme Reach, Inc. v. Spotgenie Partners, LLC*, 2013 WL 12081182, at *10 (C.D. Cal. 2013).

Defendants may present evidence of harms associated with large-scale commercial cannabis cultivation. But they cannot show that the proposed injunction, which enjoins Defendants from preventing the transfer of water only for *lawful* uses, will cause an increase in those harms. Defendants can continue to use multiple other options for combatting cannabis cultivation and protecting the environment, including Siskiyou County Code § 3-13.702, which specifically penalizes the extraction of groundwater for use in unlawful cannabis cultivation.[11] *See* ECF 90 at 13 (listing other tools available to address illicit cannabis and associated harms). Defendants have presented no evidence showing that their current, indiscriminate restrictions are necessary to deter large-scale cannabis cultivation in light of many more targeted enforcement tools at Defendants' disposal. Indeed, Defendants have presented no evidence that preventing water transfers has any effect on the number or size of illegal cannabis operations. Therefore, even if Defendants were enjoined from preventing all water transfers, they could not show more than speculative harms attributable to the injunction.

*   *   *   *   *

For the foregoing reasons, Plaintiffs respectfully request that the Court issue the tentative injunction with modifications to protect the transfer of water for fire protection and prevention, and waive the bond requirement.

---

[11] Though Plaintiffs argue that Siskiyou County Code § 3-13.702 was passed with racial animus, it is not the subject of the preliminary injunction request and remains available to combat cannabis cultivation.

| | |
|---|---|
| DATED: November 22, 2024 | Respectfully submitted, |

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA**

By: */s/ Emi Young* (authorized on 11/22/2024)

JOHN THOMAS H. DO
EMI YOUNG
GRAYCE ZELPHIN

**ASIAN LAW CAUCUS**

By: */s/ Megan Vees* (authorized on 11/22/2024)

MEGAN VEES
CARL TAKEI

**COVINGTON & BURLING LLP**

By: */s/ Alison Wall*

ALISON WALL
STANLEY YOUNG
MIKE PLIMACK
ELLEN CHOI

*Counsel for Chang, et al. Plaintiff*