UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ger Chong Ze Chang, et al., | No. 2:22-cv-01378-KJM-AC |
| Plaintiffs, | ORDER |
| v. | |
| County of Siskiyou, et al., | |
| Defendants. | |

The court previously granted the plaintiffs' motion for a preliminary injunction, reached tentative conclusions about the scope and terms of the preliminary injunction and permitted the parties to submit supplemental briefs. Prev. Order (Oct. 25, 2024), ECF No. 100. The parties have now submitted their supplemental briefs. *See generally* Defs.' Suppl. Br., ECF No. 109; Pls.' Suppl. Br., ECF No. 110. Having reviewed those briefs and the attached evidence, the court orders as follows.

**A.  Arguments Seeking Reconsideration**

At several points, the arguments and evidence in defendants' supplemental brief amount to an improper request for reconsideration of this court's findings about plaintiffs' likely success on the merits, the likely irreparable harms, the balance of equities, and the public interest. The court will not consider these arguments or the supporting evidence now. Specifically, the court will not now consider defendants' belated arguments or evidence offered to show (1) people in

1

the Mount Shasta Vista Subdivision "have never before had access to legal, safe, and reliable drinking water," Defs.' Suppl. Br. at 1; (2) plaintiffs "have never had a water source that meets their 'basic needs,'" *id.*; (3) there has been no relevant "state action," *id.* at 2; (4) "Plaintiffs lack of access to potable water for their basic needs is not a situation that the County caused, and the County should not be forced to remedy it," *id.*; or (5) "[t]he County did not request, invite, or otherwise compel Plaintiffs or anyone else . . . to acquire interests in lots without adequate water sources," *id.* at 4.  Defendants could have presented these arguments and the related evidence in opposition to plaintiffs' motion.  They have not explained why they did not.  If the court were to consider their evidence now, it would unfairly delay the resolution of plaintiffs' motion and deprive them of an opportunity to respond.  The court thus sustains plaintiffs' objections (ECF No. 111) in part to this extent.

To avoid any potential confusion, neither this order nor the court's previous orders in this case finally resolves the five arguments listed above.  As is true in any case, defendants may move to modify or dissolve the preliminary injunction based on a "significant change in facts or law" that shows plaintiffs could no longer satisfy the four-part test set out in *Winter*.  *See Karnoski v. Trump*, 926 F.3d 1180, 1198 & n.14 (9th Cir. 2019) (per curiam) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) and citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)); *Lo v. County of Siskiyou*, No. 21-999, 2022 WL 1505909, at *5 (E.D. Cal. May 12, 2022).  Defendants may also seek to demonstrate to the Magistrate Judge, acting as special master under the terms of the injunction below, that plaintiffs and others in the Mount Shasta Vista Subdivision will have adequate and reliable access to potable water to meet their basic needs even if off-parcel transfers by water truck are prohibited.

        **B.**       **Whether to Impose Mandatory Injunction**

The court previously concluded on a tentative basis that this is a case of likely extreme and very serious harms in which a mandatory injunction would be appropriate.  *See* Prev. Order at 26; *Doe v. Snyder*, 28 F.4th 103, 111–12 (9th Cir. 2022).  The court need not decide at this juncture whether to adopt that tentative conclusion, as the court finds it is not necessary to order defendants to take affirmative action to provide plaintiffs or others with water.  This is not to say

defendants are barred from taking affirmative action under the terms of the injunction below. They may elect to take affirmative action to prevent irreparable harm, and this order does not bar plaintiffs from seeking that relief in the future. But this order does not impose any "mandatory" or affirmative requirement on the County or Sheriff to provide water to any specific person.

### C.     Scope of Relief and Non-Parties

The court does adopt its preliminary finding that a broad preliminary injunction benefitting persons other than plaintiffs is necessary to avoid the irreparable harms identified in the court's previous order. *See* Prev. Order at 26. An injunction limited to the named plaintiffs only would likely be neither equitable nor workable. *See id.*; *see also* Pls.' Suppl. Br. at 3–4 (citing evidence to show an order limited to particular water sources or well owners would not be workable). Similarly, the record does not permit the court at this point to conclude that any particular quantity of water will suffice to prevent irreparable harms. But as explained below, the assigned Magistrate Judge is appointed as special master, and this order does not preclude the parties from proposing—or the Magistrate Judge from finding—specific quantity limits as an appropriate or workable method for avoiding irreparable harm.

### D.     Firefighting

The court also adopts its tentative decision not to grant broad injunctive relief related to fire protection and firefighting; the court instead will limit relief to that necessary under the direction of fire officials responsible for the Mount Shasta Vista Subdivision. Plaintiffs have not shown a broader injunction would be equitable.

Plaintiffs have offered evidence to show they and others have relied on trucked water to fight fires in the past. *See* Pls.' Suppl. Br. at 5. They also have offered evidence to show their community firefighting efforts have been speedier than governmental firefighting services and may give priority to their community's interests. *See id.* at 5–7. They also have offered evidence to show some government entities, including Siskiyou County, advise that residents keep a private supply of water at hand in the event of a wildfire. *See id.* at 7.

For its part, the County has offered a declaration from an experienced local firefighting professional. *See generally* Lauderdale Decl., ECF No. 109-3. He agrees "a 30–40 minute

3

response time is not optimal," but he believes it is a "reasonable" time and "not uncommon for similarly situated remote communities." *Id.* ¶ 4. He also reports that governmental firefighting services have contacted residents of the Mount Shasta Vista Subdivision to discuss the ongoing maintenance of a "fire protection district with appropriate equipment and responders" but residents have declined to support such a district. *See id.* ¶ 5. Finally, he believes "non-trained individuals with water trucks" would be in "significant danger" in the event of an active wildfire and should evacuate, not stay, and not fight the wildfire. *See id.* ¶ 9. If untrained volunteers stay, first responders' attention could be diverted, causing more harm than benefit. *See id.*

On balance, this evidence does not show an injunction would fall short of preventing irreparable harm if limited to what is necessary for compliance with the directives of municipal or state firefighting authorities. In other words, plaintiffs have not shown they will likely suffer irreparable harm unless they are permitted to maintain an ad hoc community firefighting service that goes beyond the instructions of the relevant firefighting authorities and does not comply with local and state regulations.

**E.     Gardening**

The court found in its previous order that it "lacks evidence to conclude whether injunctive relief related to gardening is necessary to avoid irreparable harm." Prev. Order at 27. The court indicated "more evidence" would be necessary for the court to enter a "preliminary injunction related to gardening." *Id.* In their supplemental brief, plaintiffs again cite the declarations they previously submitted, without offering more evidence. *See* Pls.' Suppl. Br. at 7 (citing Va Xiong Thao Decl., ECF No. 83-12, and Yiping Yang Decl., ECF No. 83-18). These declarations show only that some people in the Mount Shasta Vista Subdivision grow vegetable or herb gardens. *See* Va Xiong Thao Decl. ¶ 9; Yiping Yang Decl. ¶ 11; *see also* Meng Lee Decl. ¶ 4, ECF No. 83-8; Ntsaiab Kz Xiong Decl. ¶ 5, ECF No. 83-15. They do not show people will suffer irreparable harm without their gardens, for example because they rely on their gardens for sustenance. Plaintiffs also argue dried-up gardens could increase fire risk. *See* Pls.' Suppl. Br. at 7. They do not offer evidence, however, to show their gardens will likely present a fire risk if

1  water is not more freely available.  The court therefore declines to grant preliminary injunctive
2  relief related to gardening.

3        **F.**      **Security**

4        The Federal Rules permit a court to issue a preliminary injunction "only if the movant
5  gives security in an amount the court considers proper to pay the costs and damages sustained by
6  any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).
7  Defendants propose a $20 million bond.  *See* Defs.' Suppl. Br. at 7.  They argue a preliminary
8  injunction "would allow continuation of illegal cannabis consumption," and they contend $20
9  million or more will be necessary to remediate the harm of illegal cannabis cultivation.  *See id.*

10        To support its proposal, defendants first cite a declaration by a law clerk who works for
11  one of the firms representing defendants in his matter.  *See id.* (citing Kuklo Decl., ECF No. 109-
12  6).  The law clerk "became familiar with distinguishing between cannabis grow sheds and other
13  structures from an ariel [sic] perspective after viewing approximately 10 hours of the Siskiyou
14  County's drone footage of illegal cannabis grow sites in Siskiyou County."  Kuklo Decl. ¶ 4.  She
15  then used maps, information provided by the County, "Geographic Information Systems
16  overlays" and Google Earth to identify grow sheds within the Mount Shasta Vista Subdivision.
17  *See id.* ¶¶ 3–13.  She found "approximately 2,410 . . . grow sheds surrounding the named
18  plaintiffs and declarants."  *Id.* ¶ 12.

19        Defendants also rely on a declaration by the Siskiyou County Development Director.  *See*
20  Defs.' Suppl. Br. at 7 (citing Dean Decl. ¶ 18, ECF No. 109-2).  He explains that in October
21  2024, the County removed debris from eight local parcels after a fire.  Dean Decl. ¶ 17.  Those
22  cleanup efforts cost about $27,000 per acre.  *Id.*  He estimates that slightly more expensive
23  remediation efforts ($29,000 per acre) will be necessary on cannabis grow sites covering more
24  than 2,800 acres in the Mount Shasta Vista Subdivision.  *See id.* ¶ 18 & Ex. F at 90.[1]
25  Remediating 2,800 acres at a cost of $29,000 per acre would cost more than $80 million in total.
26  The County requests a bond of roughly a quarter of that total, $20 million, based on its

---

[1] Page numbers cited here are those applied to the filed document by the CM/ECF system.

1    assumption that remediation will be necessary on one quarter of the parcels in question.  See
2    Defs.' Suppl. Br. at 7.

3          This evidence does not show a bond of $20 million is an accurate estimate of the County's
4    likely damages if it is wrongly enjoined from enforcing its water ordinance while this lawsuit is
5    pending.  Defendants' arguments rest on at least four faulty assumptions.

6          First, the County's estimate assumes the cost of removing debris after a fire is comparable
7    to the cost of remediating land used for illegal cannabis cultivation.  It offers no reasons or
8    evidence to conclude that assumption is accurate.

9          Second, the court has made clear it "will not bar the county from using the legitimate tools
10   at its disposal to keep groundwater from being used for illicit cannabis operations, or from
11   enforcing the law in other parts of its territory."  Prev. Order at 26.  Nor do the terms of the
12   court's tentative injunction demand the county tolerate cannabis cultivation, nor that it ensure
13   plaintiffs—or anyone—has enough water to cultivate cannabis.  *See id.* at 28.  To the contrary,
14   the injunction would not make water available for illegal cannabis cultivation.  Defendants'
15   estimates do not account for this limitation on the injunctive relief the court will order.

16         Third, defendants incorrectly equate the present need for remediation of past harm with
17   the damage future cannabis cultivation might cause.  Their estimates are based on the costs of
18   remediating existing damage.  The security required by Rule 65, by contrast, is the amount that
19   would be necessary to pay for harms or damages to a wrongly enjoined party.  *See* Fed. R. Civ. P.
20   65(c).  The County is not currently enjoined, so any damages that already have occurred are not
21   damages covered by the security requirement in Rule 65.  In other words, $20 million is an
22   estimate of how much the County says it would cost to remediate past harms that would remain in
23   the absence of an injunction, not an estimate of the costs or damages defendants are likely to
24   incur in the future if certain of their activities are enjoined while this action is pending.

25         Fourth, the court sustains plaintiffs' objection to the law clerk's declaration about the
26   locations of illegal marijuana grow sites.  *See* Pls.' Objections Suppl. Evid. at 4–5.  Although the
27   Federal Rules of Evidence do not apply strictly to motions for preliminary injunctions, *see* Prev.
28   Order at 3, defendants have not shown it is possible to form a reliable lay opinion about the

1 locations of illegal marijuana grow operations, *see* Fed. R. Evid. 701, and they have not shown
2 the law clerk, however diligent, has the necessary expertise or qualifications to offer such an
3 opinion, *see* Fed. R. Evid. 702(a).  In addition, as plaintiffs correctly point out, it is unclear what
4 methods or principles the law clerk used.  For example, it is unclear what principles or methods
5 she used to compare video recorded from a drone with still images captured by a satellite.  *See*
6 Pls.' Objections Suppl. Evid. at 4; *see also* Fed. R. Evid. 702(b)–(d).

By contrast, plaintiffs ask the court to waive the bond requirement entirely.  *See* Suppl. Br. at 9–10.  They offer three reasons: "(1) a significant public interest underlies this action, (2) Plaintiff Russell Mathis is indigent, and (3) Defendants cannot show a likelihood of harm resulting from the injunction."  Pls.' Suppl. Br. at 9.  These arguments do not show the bond requirement should be waived entirely, but they do show security in the full amount associated with likely harms would be excessive, despite defendants' failure to establish the likely value of that harm.

By the terms of Rule 65, quoted above, a bond or security is limited to the amount the court believes is "proper" to pay any "costs and damages sustained" by a party who is "wrongfully enjoined."  Fed. R. Civ. P. 65(c).  If that party will not suffer any costs or damages, or if it does not argue or show it will suffer any costs or damages, then the "proper" amount "may be zero."  *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003); *see also Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999), *supplemented on other grounds*, 236 F.3d 1115 (9th Cir. 2001).  For the reasons above, defendants have not shown the likely costs or harms are $20 million.  But the court cannot conclude on this record that defendants will most likely incur no costs and no damages if they cannot enforce the disputed zoning ordinances.  The record does show at least some costs or harms are likely.  For example, defendants have offered the uncontradicted account of the Siskiyou County Sheriff, who claims to have personally observed illegal marijuana grow operations and their effects—illegal fertilizers, chemicals, fuel, pesticides, sewage and other waste—in and around the Mount Shasta Vista Subdivision.  *See generally* LaRue Decl., ECF No. 109-1.  In addition, in the related *Lo* action, the County offered evidence showing it had spent more than $100,000 investigating and stopping

7

1    illegal marijuana cultivation in 2020 alone. *See Lo v. Siskiyou County*, 558 F. Supp. 3d 850, 855
2    (E.D. Cal. 2021). If these harms occurred in the past, when the County was actively enforcing its
3    zoning ordinances to prevent off-parcel water transfers, then it is likely some similar harms will
4    reoccur, likely on a smaller scale, if the County cannot enforce zoning ordinances that restrict
5    those transfers temporarily, even if the terms of the preliminary injunction limit water supplies to
6    legal uses.

7    In some cases, the "proper" amount of security might be lower than would be necessary to
8    put an enjoined party in the same position it would have occupied if an injunction had never
9    issued. A district court "has discretion to dispense with the security requirement, or to request
10   mere nominal security, where requiring security would effectively deny access to judicial
11   review." *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d
12   1319, 1325 (9th Cir.), *amended on other grounds*, 775 F.2d 998 (9th Cir. 1985). A denial of
13   review might result, for example, if the party requesting an injunction shows "it is unable to post
14   a substantial bond." *Id.* It might also be true that a substantial bond is appropriate to balance the
15   likely harms in a particular case, but not a bond in the full value of the harm the enjoined litigant
16   ultimately will suffer. *See, e.g.*, *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th
17   Cir. 2005). In these cases, "[s]o long as a district court does not set such a high bond that it
18   serves to thwart citizen actions, it does not abuse its discretion." *Id.* A plaintiff's limited
19   financial means might in fact make any security requirement a prohibitive bar, and in this way
20   could demonstrate that the "proper" security is zero. *See, e.g.*, *Barahona-Gomez*, 167 F.3d
21   at 1237 (affirming waiver of bond for proposed class of people who were, on the whole, "very
22   poor"); *Booth v. McManaman*, 830 F. Supp. 2d 1037, 1045 (D. Haw. 2011) (waiving bond
23   requirement for disabled plaintiff seeking federal food stamp benefits).

24   For example, in *Save Our Sonoran*—another case about water and the environment—a
25   nonprofit environmental organization sued to stop the development of a residential development
26   project in Arizona. *See* 408 F.3d at 1118. The district court found there were "serious questions
27   on the merits" and issued a preliminary injunction. *See id.* at 1119. But it required the nonprofit
28   plaintiff to pay a $50,000 security to compensate the enjoined developer for the financial harm it

was likely to suffer as a result of construction delays. *See id.* at 1125; *see also* 227 F. Supp. 2d 1111, 1115 (D. Ariz. 2002) (district court's reasoning). Both the developer and the nonprofit organization argued on appeal that the district court had abused its discretion. The developer argued the security amount was much lower than the actual damages it was likely to suffer. *See* 408 F. 3d at 1126. The nonprofit organization argued the district court should have imposed a much lower, "nominal bond." *Id.* The circuit affirmed the district court's order. *See id.* The district court was within its discretion to impose a bond below the value of the developer's likely damages given the balance of harms, including the significant public interests at stake. *See id.* The court also appropriately imposed more than a nominal bond, as the nonprofit organization had not demonstrated any larger bond would effectively thwart its action. *See id.*

Returning, then, to this case, plaintiffs have not shown that anything more than a nominal bond would effectively deny them relief. They offered evidence that only one of the four plaintiffs, Russell Mathis, is indigent. *See* Pls.' Suppl. Br. at 9 (citing Mathis Decl. ¶¶ 5, 6, 13, ECF No. 83-9). They have not argued or offered evidence about the financial circumstances of any other plaintiffs, nor of the proposed class, except that Asian-Americans in Siskiyou County are "generally low-income." *See* Reynolds Decl. ¶ 6, ECF No. 83-11. The court therefore cannot find that something more than no bond would thwart relief to plaintiffs or any proposed class. But as discussed in this court's previous order, plaintiffs have shown the broader public interest and the balance of harms favor a limited preliminary injunction. This case is, for that reason, an example of the type of "public interest litigation" in which the Ninth Circuit has long held a reduced bond can be appropriate. *Sonoran*, 408 F.3d at 1126; *Tahoe Reg'l Planning Agency*, 766 F.2d at 1325.

In sum, as the court previously concluded, an injunction is necessary to ensure plaintiffs have water for their basic needs while this action is pending. But on the other hand, if the effect of the injunction is that the County cannot combat illegal marijuana cultivation using its zoning ordinances, then illegal cultivation is likely to continue, along with the harms it causes and the costs it imposes. Balancing the facts that defendants have not offered reliable estimates of the total dollar cost of these harms and neither have plaintiffs demonstrated anything more than a

9

nominal bond would be cost prohibitive, the court imposes a security requirement of $20.00 for each of the 2,815 acres within the Mount Shasta Vista Subdivision that lacks an on-site well, in total $56,300. *See* Dean Decl. Ex. F.

### G. Conclusion

For the reasons above, the court imposes the following preliminary injunction, which largely conforms to the tentative injunction in this court's previous order:[2]

1. Siskiyou County and its agents, employees, representatives, successors, assigns, and anyone or entity that acts on its behalf is enjoined from enforcing Title 10, Chapter 6 of the Siskiyou County Code and any other law or regulation to prevent the transfer of water, for the purposes in paragraph 2(a) below, to residents of parcels in the Mount Shasta Vista Subdivision that lack a residential well or a municipal water source, i.e., the "Injunction Parcels."

2. The injunction in paragraph 1 above will remain in place until any of the following events occurs, whichever is first:

    (a) Defendants demonstrate by a preponderance of evidence, in a motion noticed in compliance with Local Rule 230 before the assigned Magistrate Judge, acting as Special Master under paragraph 3 below: (i) residents of the Injunction Parcels have an adequate interim source or sources of water for drinking, cooking, bathing, caring for pets, raising domestic animals, firefighting as ordered by local fire officials and other similar day-to-day personal necessities and (ii) the interim source or sources will remain available while this action is pending; or

    (b) Judgment is entered in defendants' favor on plaintiffs' claim of a "state-created danger" under the Due Process Clause of the Fourteenth Amendment; or

    (c) This court otherwise lifts or modifies the injunction in paragraph 1.

---

[2] The differences between the tentative injunction in the court's previous order and the injunction below reflect the findings and conclusions in this order and make the injunction more clear for the Magistrate Judge and this court to administer.

3. The assigned Magistrate Judge is appointed to act as a Special Master with authority under Federal Rule of Civil Procedure 53(a)(1) to determine whether residents of the Injunction Parcels have an adequate interim source or sources of water for drinking, cooking, bathing, caring for pets, raising domestic animals, firefighting as ordered by local fire officials and other similar day-to-day personal necessities under paragraph 2(a) above. This court will not reconsider the Magistrate Judge's determination absent a showing of clear error. In acting as Special Master, the Magistrate Judge will have authority to receive evidence, hold hearings, make factual findings, hear and resolve motions and issue all necessary orders.

4. Within fourteen days after the date this order is filed, plaintiffs must post security under Federal Rule of Civil Procedure 65(c) by way of bond or cash in the amount of $56,300.

IT IS SO ORDERED.

DATED: December 17, 2024.

_____
SENIOR UNITED STATES DISTRICT JUDGE