1  JEFFREY V. DUNN, Bar No. 131926
   jeffrey.dunn@bbklaw.com
2  CHRISTOPHER M. PISANO, Bar No. 192831
   christopher.pisano@bbklaw.com
3  MARCO ORNELAS-LOPEZ, Bar No. 343187
   marco.ornelaslopez@bbklaw.com
4  BEST BEST & KRIEGER LLP
   500 Capitol Mall, Ste. 2500
5  Sacramento, CA 95814
   Telephone:    (916) 325-400
6  Facsimile:    (916) 325-4010

7

8  J. SCOTT DONALD, Bar No. 158338
   scottd@sdnlaw.com
9  SPINELLI, DONALD & NOTT, P.C.
   300 University Ave., Ste. 100
10 Sacramento, CA 95825
   Telephone:    (916) 448-7888

11

12 Attorneys for Defendants
   County of Siskiyou and Jeremiah LaRue, in his official
13 capacity as Sheriff

14                 UNITED STATES DISTRICT COURT

15              EASTERN DISTRICT OF CALIFORNIA

16                   SACRAMENTO DIVISION

17

18 RUSSELL MATHIS; JORDAN CHONG          Case No. 2:22-cv-01378-KJM-AC
   MOUA; MAI NOU VANG; YING SUSANNA
19 VA; and all other similarly situated,  **DEFENDANTS' NOTICE OF MOTION
                                          AND MOTION FOR SUMMARY
20            Plaintiffs,                  ADJUDICATION; MEMORANDUM
                                          OF POINTS AND AUTHORITIES IN
21    v.                                   SUPPORT THEREOF**

22 COUNTY OF SISKIYOU; and JEREMIAH       Date:      August 28, 2025
   LARUE, in his official capacity as Sheriff,  Time:      10:00 a.m.
23                                        Dept:      3
             Defendants.                  Judge:     Kimberly J. Mueller
24

25

26

27

28

BEST BEST & KRIEGER LLP

- 1 -

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................ 6

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 8

I.   INTRODUCTION ................................................................................................ 8

II.  FACTUAL BACKGROUND .............................................................................. 9

    A.   The Shasta Vista Subdivision and Occupancy Regulations.................... 9

    B.   The Zoning Ordinance and Enforcement History ................................. 10

    C.   Plaintiffs Have Access to Water ........................................................... 12

    D.   The County's Enactment and Repeal of Water Ordinances.................... 13

III. RELEVANT PROCEDURAL HISTORY .......................................................... 15

IV.  STANDARD OF REVIEW ON SUMMARY ADJUDICATION ..................... 15

V.   LEGAL ARGUMENT ....................................................................................... 16

    A.   The State-Created Danger Doctrine and Plaintiffs' Claims.................... 16

        1.   Plaintiffs Cannot Establish That Defendants Took Affirmative Actions That Created or Exacerbated a Known Danger ........................ 18

        2.   Plaintiffs Cannot Show a Particularized Danger..................... 20

        3.   Plaintiffs Cannot Establish That Defendants Acted with Deliberate Indifference ........................................................................ 23

    B.   Plaintiffs' Claims Based on the Water Truck, Water Extraction, and Water Nuisance Ordinances Are Moot ................................................ 25

VI.  CONCLUSION .................................................................................................. 26

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

2:22-CV-01378-KJM-AC
DEFENDANTS' MOTION FOR SUMMARY
ADJUDICATION

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Yesue v. City of Sebastopol*
  2024 WL 4876953 (N.D. Cal. Nov. 22, 2024)..................................................... 21, 22

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) .......................................................................................... 16

*Berkeley Homeless Union v. City of Berkeley*
  2025 WL 1755446 (N.D. Cal. June 25, 2025) ..................................................... 24

*Brach v. Newsom*
  38 F.4th 6 (9th Cir. 2022)................................................................................... 26

*Bracken v. Okura*
  869 F.3d 771 (9th Cir. 2017).............................................................................. 23

*British Airways Bd. v. Boeing Co.*
  585 F.2d 946 (9th Cir. 1978) ............................................................................. 16

*Bryan Cnty. v. Brown*
  520 U.S. 397 (1997) ...................................................................................... 16, 23

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986) .......................................................................................... 16

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*
  489 U.S. 189 (1989) ...................................................................................... 18, 23

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998)............................................................................ 22

*Hernandez v. City of San Jose*
  897 F.3d 1125 (9th Cir. 2018)....................................................................... 22, 23

*Herrera v. L.A. Unified Sch. Dist.*
  18 F.4th 1156 (9th Cir. 2021)............................................................................. 23

*Johnson v. City of Seattle*
  474 F.3d 634 (9th Cir. 2007)......................................................................... 18, 20

*Kennedy v. City of Ridgefield*
  439 F.3d 1055 (9th Cir. 2006)....................................................................... 22, 23

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

2:22-CV-01378-KJM-AC
DEFENDANTS' MOTION FOR SUMMARY
ADJUDICATION

# TABLE OF AUTHORITIES
### (continued)

**Page**

*L.W. v. Grubbs*
    974 F.2d 119 (9th Cir. 1992)...................................................................... 23

*Langley v. City of San Luis Obispo*
    25 2022 WL 18585987 (C.D. Cal. Feb. 7, 2022)...................................... 17

*Martinez v. City of Clovis*
    943 F.3d 1260 (9th Cir. 2019)............................................................ 18, 20

*Martinez v. Newsom*
    46 F.4th 965 (9th Cir. 2022)..................................................................... 25

*Maxwell v. Cty. of San Diego*
    708 F.3d 1075 (9th Cir. 2013).................................................................. 23

*Munger v. City of Glasgow*
    227 F.3d 1082 (9th Cir. 2000).................................................................. 22

*Patel v. Kent Sch. Dist.*
    648 F.3d 965 (9th Cir. 2011).................................................................... 16

*Pauluk v. Savage*
    836 F.3d 1117 (9th Cir. 2016).................................................................. 23

*Penilla v. City of Huntington Park*
    115 F.3d 707 (9th Cir. 1997).................................................................... 23

*Roe v. City and County of San Francisco*
    2024 WL 4505475 (N.D. Cal. Oct. 15, 2024).......................................... 23

*Rogan v. City of Boston*
    267 F.3d 24 (1st Cir. 2001) ..................................................................... 16

*Sacramento Homeless Union v. City of Sacramento*
    115 F.4th 1149 (9th Cir. 2024)................................................................. 21

*San Francisco Taxi Coal. v. City & Cty. of San Francisco*
    979 F.3d 1220 (9th Cir. 2020).................................................................. 16

*Santa Cruz Homeless Union v. Bernal*
    514 F. Supp. 3d 1136 (N.D. Cal. 2021) ................................................... 17

*Sinclair v. City of Seattle*
    61 F.4th 674 (9th Cir. 2023)................................................... 16, 20, 21, 23

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Triton Energy Corp. v. Square D Co.*
    68 F.3d 1216 (9th Cir. 1995) .................................................................................. 16

*Where Do We Go Berkeley v. Caltrans*
    2021 WL 5964594 (N.D. Cal. Dec. 16, 2021) ................................................. 17, 25

*Wills v. City of Monterey*
    617 F. Supp. 3d 1107 (N.D. Cal. 2022) ................................................................. 16

*Wood v. Ostrander*
    879 F.2d 583 (9th Cir. 1989) .................................................................................. 22

**Federal Statutes**

42 U.S.C. § 1983 ............................................................................................................ 15

**Federal Rules**

Fed. R. Civ. P. 56(c) ..................................................................................................... 16

Fed. R. Civ. P. 56(e) ..................................................................................................... 16

**Constitutional Provisions**

Cal. Const., art. I, § 7(a) ............................................................................................ 15, 16

U.S. Const. amend. XIV ............................................................................................ 15, 16

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

2:22-CV-01378-KJM-AC
DEFENDANTS' MOTION FOR SUMMARY
ADJUDICATION

1    <u>**NOTICE OF MOTION**</u>

2         TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3         PLEASE TAKE NOTICE that on August 28, 2025, at 10:00 a.m., or as soon thereafter as

4    the matter may be heard in Courtroom 3 of the Eastern District of California Sacramento

5    Courthouse, located at 501 I St. #4200, Sacramento, California, Defendants County of Siskiyou

6    and Sheriff Jeremiah LaRue (collectively "Defendants") will move, and hereby do move, for an

7    order granting summary adjudication in their favor on certain counts in the operative Second

8    Amended Complaint ("SAC") as against Plaintiffs Jordan Chong Moua, Mai Nou Vang, Russell

9    Mathis, and Ying Susanna Va (collectively, "Plaintiffs"), along with and on behalf of all similarly

10   situated individuals.  Defendants bring this motion as to four counts in the SAC, and do so

11   pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 260 of the United

12   States District Court for the Eastern District of California.

13        Defendants bring this motion for summary adjudication as to the following four counts in

14   the SAC: (1) Count Eight – State-Created Danger; (2) Count Nine – State-Created Danger;

15   (3) Count Fifteen – State-Created Danger Zoning ; and (4) Count Sixteen – State-Created Danger

16   Zoning.  These counts are collectively referred to as the "state-created danger claims," however,

17   Defendants bring this motion as to each of these four counts on the following bases for summary

18   adjudication.

19        Defendants will and hereby do move the Court for an order granting summary

20   adjudication of Claim Eight and Claim Nine on the grounds that these claims, premised on now

21   repealed or amended ordinances, have not been enforced in over a year, and are now moot.

22   Additionally, Defendants move the Court for an order granting summary adjudication of all state-

23   created danger claims on the grounds that there is no evidence that Defendants took any

24   affirmative actions that placed Plaintiff Mathis or members of the Water Class in danger that

25   would give rise to a state or federal constitutional violation.  Second, Defendants move for an

26   order granting summary adjudication of all state-created danger claims on the ground that there is

27   no evidence that Defendants created an actual or particularized danger.  Finally, Defendants move

28   for an order granting summary adjudication of all state-created danger claims on the ground that

BEST BEST & KRIEGER LLP

1   there is no evidence that Defendants acted with deliberate indifference to an obvious or known

2   danger to Plaintiff Mathis or any member of the Water Class. For the foregoing reasons,

3   Defendants are entitled to judgment as a matter of law for all state-created danger claims.

4       This motion is brought pursuant to Rule 56 of the Federal Rules of Civil Procedure, as

5   well as Eastern District Local Rule 260, and is based on the ground that there is no genuine issue

6   of material fact regarding the state-created danger claims asserted by Plaintiff Mathis or the

7   Water Class he purports to represent, and that Defendants are therefore entitled to a judgment as a

8   matter of law for said claims.

9       Defendants and Plaintiffs' counsel met and conferred to discuss the filing of this motion.

10  (Declaration of Christopher M. Pisano [Pisano Decl.], ¶ 2.) Defendants raised the several points

11  contained in this motion, as well as the case law in support of the motion and specific deficiencies

12  in the record to support Plaintiff's state-created danger claims. The meet and confer efforts were

13  not successful.

14      The motion is based on this notice, the accompanying memorandum of points and

15  authorities, the concurrently filed separate Statement of Undisputed Material Facts ("UMF"), the

16  Request for Judicial Notice, the Declarations of Rick Dean, Gregory Roath, and Christopher M.

17  Pisano, and exhibits filed herein, the pleadings and records on file in this action, and on such

18  additional argument as may be presented at the hearing on this motion.

19  Dated: July 16, 2025                    BEST BEST & KRIEGER LLP

20                                          By:/s/ Christopher M. Pisano
21                                             JEFFREY V. DUNN
                                               CHRISTOPHER M. PISANO
22                                             MARCO ORNELAS-LOPEZ

23                                          Attorneys for Defendants
                                            County of Siskiyou and Jeremiah LaRue, in his
24                                          official capacity as Sheriff

25

26

27

28

BEST BEST & KRIEGER LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants County of Siskiyou and Sheriff Jeremiah LaRue (collectively, "Defendants") move for summary adjudication of all state-created danger claims asserted by Plaintiff Russell Mathis, and the water class he purports to represent (collectively, "Plaintiffs").  Plaintiffs contend that the County affirmatively created or increased a danger to their health and safety by enforcing land use and water-related regulations, which they allege has deprived them of access to water. The theory is legally and factually unsupported, and the Court should grant summary adjudication on multiple grounds.

First, Plaintiffs cannot establish that the County undertook any affirmative act that created or exacerbated a particularized danger.  Plaintiffs knowingly moved to undeveloped rural parcels in a remote part of the County that does not have on-site water infrastructure.  They declined to seek permits, apply for relief, or pursue available legal sources of water on their parcels—choices that were entirely voluntary.  Plaintiffs willingly put themselves in a position of not having a reliable source of water for daily living.  The County's Zoning Ordinance, which pre-dates Plaintiffs' arrival to the Shasta Vista Subdivision, does not restrict Plaintiffs from accessing legal sources of water, such as licensed bottled water distributors that are in close proximity to where they reside, or doing what is needed to develop a legal on-site water source.  The Zoning Ordinance merely defines how property in specific zones can be used, thus separating different types of land uses to protect public health, welfare and safety.  Its enforcement does not create a particularized danger here.

Second, the County's enforcement of its Zoning Ordinance did not leave Plaintiffs in a worse position than they would have been had the County taken no action.  Again, permitted water services have remained available throughout the relevant period, and Plaintiffs were not prohibited from obtaining or purchasing water from lawful sources.

Third, Plaintiffs have not shown that the County acted with deliberate indifference.  The County's Zoning Ordinance enforcement is facially neutral and uniformly applied.  Enforcement efforts were paused following court orders.  And to the extent any harm occurred, it was caused

BEST BEST & KRIEGER LLP

1    by Plaintiffs' reliance on illegal water vendors operating in violation of zoning laws in the first

2    place.  Thus, any harm caused was not foreseeable to County actors, and there is no evidence to

3    meet the high bar of showing that County actor(s) acted with deliberate indifference.

4        Finally, to the extent Plaintiffs' claims are based on the County's former Water Truck

5    Ordinance, Water Extraction Ordinance, and Water Nuisance Ordinance, those claims are moot.

6    The County **repealed** the first two ordinances and **significantly limited** the third illicit cannabis-

7    related water ordinance by adding a *mens rea* element, which was done as part of a settlement in

8    litigation that preceded this case.  The County has not enforced any of these ordinances since May

9    2024, and there is no credible risk that enforcement of repealed ordinances will resume.

10       Although the Court previously issued a preliminary injunction based on a limited factual

11   record and unrebutted assertions, discovery and further investigation have now clarified the actual

12   landscape.  Plaintiffs cannot meet the strict requirements of the state-created danger doctrine.

13   Their claims rest not on any affirmative County action, but on their own decisions to (1) reside on

14   undeveloped land without permits or infrastructure, and (2) avail themselves of water obtained

15   illegally and in violation of local laws, while ignoring multiple avenues for procuring legal

16   sources of water.  Given the undisputed facts, summary adjudication is warranted.

17   **II.    FACTUAL BACKGROUND**

18       **A.    The Shasta Vista Subdivision and Occupancy Regulations**

19       The Shasta Vista Subdivision is located in a remote area of central Siskiyou County, and

20   the subdivision was created in the 1960s.  (UMF No. 22.)  It contains 1,680 legal parcels, each

21   approximately 2.5 acres in size, zoned Rural Residential Agricultural (R-R) under the County's

22   Zoning Ordinance.  (UMF Nos. 22-23.)  The R-R zoning district permits single-family dwellings

23   and small-scale agricultural uses.  (UMF No. 23.)

24       The Shasta Vista Subdivision lacks certain public infrastructure, including municipal

25   water service and a public sewer system.  (UMF No. 25.)  As such, any legal residential

26   development in the Shasta Vista Subdivision requires the drilling of an on-site well, or lawful

27   connection to an existing permitted well, the installation of a permitted septic system, and an

28   approved potable water treatment system.  (UMF Nos. 26-30, 32-33.)  These requirements ensure

BEST BEST & KRIEGER LLP

1    that any structure intended for habitation complies with state and local health and safety

2    regulations.  (UMF Nos. 35-36.)

3         Out of the 1,680 parcels in the Shasta Vista Subdivision, only 79 are legally developed

4    with permits and certificates of occupancy issued by the County.  (UMF No. 37.)  The vast

5    majority of parcels remain undeveloped due to the cost and technical difficulty of drilling wells

6    and siting septic systems in this geologically challenging area.  (UMF Nos. 38-41.)

7         Occupancy of undeveloped land in the County is controlled by the County's Camping

8    Ordinance, which is codified in Chapter 17 of the Siskiyou County Code.  (UMF No. 2.)  The

9    Camping Ordinance prohibits camping or squatting on private property that lacks a legally

10   established residence, unless the occupant obtains a short-term administrative permit.  (UMF

11   No. 3.)  Even with a permit, camping is limited to 15 consecutive days and 30 total days per

12   calendar year.  (UMF No. 4.)  The purpose of the Camping Ordinance is to protect public health

13   and prevent environmental degradation, which often occurs when long-term campers leave waste

14   and refuse on site.  (UMF No. 2.)

15        Plaintiff Mathis owns property in the Shasta Vista Subdivision, where he has lived since

16   2013.  (UMF No. 45.)  There are no development permits for the property that Mr. Mathis owns.

17   There is no on-site water source, and no permitted septic system for wastewater removal.  (UMF

18   No. 46.)  There is a structure on this property, which was built without building permits, and there

19   is no certificate of occupancy.  (UMF No. 46.)  Mr. Mathis used to get his water from the City of

20   Yreka, but after the City stopped selling water to people who did not live in the City, he now gets

21   his water from friends and neighbors, who obtain the water from Stephen Griset and other

22   agricultural landowners.  (UMF No. 45.)  These agricultural landowners are discussed herein.

23   Mr. Mathis purports to represent a class of similarly situated persons who rely on off parcel water

24   for basic daily living.  However, this class does not include users of water for cannabis

25   cultivation.  (UMF Nos. 51, 84.)

26        **B.**    **The Zoning Ordinance and Enforcement History**

27        The County first adopted its Zoning Ordinance in 1953 to, among other things, regulate

28   land use and development throughout its unincorporated areas.  (UMF No. 9.)  The Zoning

BEST BEST & KRIEGER LLP

2:22-CV-01378-KJM-AC
DEFENDANTS' MOTION FOR SUMMARY
ADJUDICATION

1    Ordinance, codified in Title 10, Chapter 6 of the Siskiyou County Code, establishes several

2    zoning districts, including the Prime Agricultural (AG-1), Non-Prime Agricultural (AG-2), Rural

3    Residential Agricultural (R-R), Light Industrial (M-M), and Heavy Industrial (M-H) zones.

4    (UMF No. 11.)  The Ordinance is permissive in nature, meaning uses not expressly listed as

5    permitted or conditionally permitted in a given zoning district are prohibited.  (UMF No. 14.)

6        In the AG-1, AG-2, and R-R districts, permitted uses are generally limited to agriculture,

7    single-family dwellings, and related accessory uses.  (UMF Nos. 12-13.)  The Zoning Ordinance

8    does not allow for commercial water bottling, bulk water extraction, or off-parcel distribution of

9    groundwater in these districts.  Those kinds of uses are permitted in the industrial M-M and M-H

10   zoning districts, where "bottling works" and similar facilities are expressly listed as uses that are

11   allowable by right.  (UMF No. 13.)

12       The Zoning Ordinance provides mechanisms for landowners to seek regulatory relief or

13   clarification.  A landowner may apply for a Planning Director determination under Section 10-

14   6.303 to determine whether a proposed use is allowed within the general category of permitted

15   uses for a zoning district.  (UMF No. 15.)  Alternatively, a landowner may seek a conditional use

16   permit, to conduct activity not permitted by right but which is allowed with a conditional use

17   permit, which is evaluated by the County Planning Commission and may be appealed to the

18   Board of Supervisors.  (UMF No. 16.)  A landowner may also apply for a zone change, which

19   requires review under the County's General Plan and compliance with the California

20   Environmental Quality Act ("CEQA"), followed by public hearings before the Planning

21   Commission and Board of Supervisors.  (UMF Nos. 17-18.)

22       Despite these avenues for lawful approval, neither Plaintiff Mr. Mathis or the class he

23   purports to represent, or their water suppliers, have ever sought zoning relief to authorize their

24   water-related activities.  Nor have Plaintiffs or their water haulers submitted an application for a

25   Planning Director determination, use permit, or zone change.  (UMF No. 78.)

26       The Second Amended Complaint identifies five properties as alleged sources of water for

27   Mr. Mathis and the class he purports to represent: parcels owned by Stephen Griset, Ellison

28   Ranch, Bill Yang, Neng Vue, and Vue Moua.  (UMF No. 63.)  **All** of these properties are located

BEST BEST & KRIEGER LLP

1    in AG-2 or R-R zoning districts, where bulk water extraction and distribution is not an allowable

2    use.  (UMF Nos. 63-64.)  The County's Code Enforcement Division issued citations to each of

3    these property owners for violating the Zoning Ordinance.  (UMF Nos. 63, 67-76.)

4        In the case of Stephen Griset and Ellison Ranch, the Siskiyou County District Attorney on

5    behalf of the People of the State of California, not the County, filed a civil enforcement action

6    based on zoning and groundwater violations.  (UMF No. 65.)  The Ellison case was resolved by

7    settlement in late 2023, while the Griset case appears to be ongoing, and these property owners

8    seemed to have ceased their water distribution operations.  (UMF No. 66.)

9        Bill Yang was cited in December 2023 for operating a groundwater distribution enterprise

10   in the AG-2 zoning district, storing water in an unpermitted pool, and accumulating trash and

11   debris on his property.  (UMF Nos. 68-69.)  Despite being notified of the violations, Mr. Yang

12   did not seek a zoning determination, use permit, or zone change, and did not appeal his citation.

13   (UMF Nos. 70-71.)  He was also cited in May 2024 in connection with a separate cannabis

14   cultivation operation on a different parcel in the Shasta Vista Subdivision.  (UMF No. 72.)

15       Similarly, Code Enforcement issued notices and citations to Neng Vue and Vue Moua for

16   operating water distribution enterprises on parcels in the R-R and AG-2 zones, respectively.

17   (UMF Nos. 73, 75)  Neither individual applied for a use permit, zoning determination, or zone

18   change, and neither appealed the citations issued.  (UMF Nos. 74, 76.)

19       Each of these enforcement actions was based on what Code Enforcement officers deemed

20   to be violations of the Zoning Ordinance.  All parties had access to administrative procedures to

21   contest or cure the violations, including the right to appeal to a neutral hearing officer.  (UMF

22   No. 20.) None exercised those rights.  (UMF Nos. 70, 74, 76.)  After the Court issued a

23   preliminary injunction in this case on October 25, 2024, the County suspended enforcement of the

24   Zoning Ordinance as to these parties and any other landowners in R-R, AG-1 or AG-2 zones who

25   is engaged in a bulk groundwater distribution enterprise.

26       **C.    Plaintiffs Have Access to Water**

27       Potable water is lawfully and readily available throughout Siskiyou County from multiple

28   sources.  Permitted water haulers and distributors offer both wholesale and residential water

BEST BEST & KRIEGER LLP

2:22-CV-01378-KJM-AC
DEFENDANTS' MOTION FOR SUMMARY
ADJUDICATION

1    service, and potable bottled water is sold at retail stores, supermarkets, gas stations, and through

2    online delivery platforms.  (UMF Nos. 79, 82.)

3         One of the largest permitted distributors operating in the County is Primo Water/Sierra

4    Springs ("Primo Water"), which runs a bottling and distribution facility located in an M-M

5    industrial zoning district.  (UMF No. 80.)  The County of Siskiyou receives regular bottled water

6    deliveries from Primo Water at its own offices in Yreka—approximately once per month—

7    consisting of thirteen 5-gallon jugs per shipment at a cost of $6.40 per bottle, with a delivery fee

8    of $13.99.  (UMF No. 80.)  Primo Water delivers throughout the County and advertises its

9    services to any customer willing to pay.  (UMF No. 80.)  The company's delivery range includes

10   the Shasta Vista Subdivision, which lies just twenty miles from its distribution center; much

11   closer than the County's Yreka office, which is thirty five miles away.  (UMF No. 80.)

12        Another active distributor in the County is Siskiyou Distributing, which wholesales

13   potable water to local restaurants.  (UMF No. 81.)  In addition to these commercial services,

14   potable bottled water is available for purchase over the counter at retail outlets across the County,

15   and can be ordered for home delivery through services such as Amazon.com.  (UMF No. 82.)

16        There is also water infrastructure available for fire suppression.  There is a fire station in

17   the Shasta Vista Subdivision with a 10,000-gallon water tank.  (UMF No. 85.)  However, the tank

18   remains unused at present because no local resident has agreed to become a volunteer firefighter,

19   and undertake the responsibility of learning fire suppression techniques to assist Cal Fire in its

20   fire suppression efforts.  (UMF No. 87.)  If a local resident signed up to be a volunteer firefighter,

21   he/she would receive training from Cal Fire, and would have access to PPE and other equipment

22   at the station, as well as the water tank for fighting fires.  (UMF No. 89.)  Despite community

23   outreach efforts, no local resident in Shasta Vista has agreed to volunteer.  (UMF Nos. 88-89.)

24        **D.    The County's Enactment and Repeal of Water Ordinances**

25        Although Plaintiffs attempt to frame their claims around the County's former Water

26   Ordinances, the actual regulatory basis for enforcement against water distribution activity in the

27   Shasta Vista area has always been the County's Zoning Ordinance.  (UMF Nos. 9-14, 63.)  The

28   Water Ordinances were measures that were ultimately temporary and adopted to supplement

BEST BEST & KRIEGER LLP

2:22-CV-01378-KJM-AC
DEFENDANTS' MOTION FOR SUMMARY
ADJUDICATION

1    zoning enforcement in response to the proliferation of illegal cannabis cultivation in the County.

2    (UMF Nos. 55-61, 90.)

3        In 2020, the County adopted the Water Nuisance Ordinance through Urgency Ordinance

4    No. 20-13 and Ordinance No. 20-15, later codified at Siskiyou County Code section 3-13-702.

5    (UMF Nos. 55-56.)  This ordinance declared groundwater extraction and discharge for illegal

6    cannabis cultivation to be a public nuisance, subject to enforcement through administrative and

7    civil penalties.  (UMF No. 56.)  The County subsequently adopted the Water Extraction

8    Ordinance in 2021, through Urgency Ordinance No. 21-07 and Ordinance No. 21-13, later

9    codified at Siskiyou County Code section 3.5-13.101.  (UMF No. 57.)  That ordinance required

10   permits for transporting water off the parcel from which it was extracted, and established an

11   inspection and compliance process with other applicable County codes.  (UMF No. 58.)

12       That same year, the County enacted the Water Truck Ordinance through Urgency

13   Ordinance No. 21-08 and Ordinance No. 21-14, codified at Siskiyou County Code section 3-

14   4.1501, which prohibited hauling more than 100 gallons of water on designated County roads

15   without a permit.  (UMF No. 60.)  These three ordinances, collectively referred to as the "Water

16   Ordinances", were designed to restrict the unlawful diversion and commercial distribution of

17   groundwater to unpermitted and illegal cannabis grows.  (UMF No. 61.)

18       The Water Ordinances were enforced through administrative inspections and citations

19   issued to unpermitted water suppliers and haulers servicing Shasta Vista and adjacent regions.

20   (UMF No. 62.)  However, after the District Court issued a preliminary injunction in *Lo v. County*

21   *of Siskiyou*, Case No. 2:21-cv-00999-KJM-AC, the Board of Supervisors undertook legislative

22   revisions to conform with the terms of the injunction and subsequent settlement.  (UMF No. 90.)

23   In response, the Board of Supervisors repealed both Water Extraction Ordinance and the Water

24   Truck Ordinance, and amended the Water Nuisance Ordinance to include a *mens rea* component

25   for the extraction of groundwater for use for illicit cannabis cultivation.  (UMF No. 90.)  These

26   changes were implemented in consultation with Plaintiffs' counsel in the *Lo* case.

27       The Water Extraction and Water Truck Ordinances have not been enforced by the County

28   since May 2024.  (UMF No. 91.)  There is no current County policy or practice to enforce the

BEST BEST & KRIEGER LLP

2:22-CV-01378-KJM-AC
DEFENDANTS' MOTION FOR SUMMARY
ADJUDICATION

Water Extraction or Water Truck Ordinance, and both are no longer part of the Siskiyou County Code. (UMF Nos. 90-92.) The Water Nuisance Ordinance only applies to prohibit knowingly extracting and using groundwater for illegal cannabis cultivation. (UMF No. 93.)

## III.    RELEVANT PROCEDURAL HISTORY

Plaintiffs filed the operative Second Amended Complaint ("SAC") on February 28, 2025. It includes four state-created danger claims. Dkt. 140. These four claims that County Defendants now seek to summarily adjudicate are as follows:

- **Claim Eight and Claim Nine**: State-Created Danger - Generally (Plaintiff Mathis and the Water Class against both Defendants) – In these counts, brought under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and article I, section 7(a) of the California Constitution, Plaintiffs allege that the enforcement of the **Water Ordinances** affirmatively and intentionally placed Plaintiff Mathis and the Water Class in physical danger by depriving them of essential water. Dkt. 140 at 53-54.

- **Claim Fifteen and Claim Sixteen**: State-Created Danger - Zoning (Plaintiff Mathis and the Water Class against both Defendants) – In these counts, brought under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and article I, section 7(a) of the California Constitution, Plaintiffs allege that the County's enforcement of **Zoning Ordinances**, alongside the **Water Ordinances**, has affirmatively placed Plaintiff Mathis and the Water Class in harms' way by depriving them of water necessary for health and safety. Dkt. 140 at 60-61.

On December 18, 2024, the Court granted Plaintiffs' motion for a preliminary injunction, finding they had shown a likelihood of success on their state-created danger claims. Dkt. 100. The ruling was based largely on uncontradicted assertions that zoning enforcement allegedly cut off water deliveries to Shasta Vista and reflected deliberate indifference by the County. Dkt. 100. That procedural posture, however, does not preclude a different outcome on the merits, now that the parties have had the opportunity to develop a more complete evidentiary record.

## IV.    STANDARD OF REVIEW ON SUMMARY ADJUDICATION

A party seeking summary adjudication must show the absence of a genuine dispute as to

BEST BEST & KRIEGER LLP

2:22-CV-01378-KJM-AC
DEFENDANTS' MOTION FOR SUMMARY
ADJUDICATION

1  any material fact.  Fed. R. Civ. P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951

2  (9th Cir. 1978).  Where the non-moving party bears the burden of proof at trial, the movant need

3  not disprove the claim—it need only show a lack of evidence to support it.  *Celotex Corp. v.*

4  *Catrett*, 477 U.S. 317, 323 (1986).  Once that showing is made, the burden shifts to the non-

5  moving party to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R.

6  Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 252 (1986).  A mere

7  "scintilla" of evidence is insufficient; there must be evidence on which a reasonable jury could

8  find for the non-moving party.  *Id.*  The opposing party must present specific, probative facts—

9  not conclusory allegations or speculation.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,

10  1221 (9th Cir. 1995); *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001).

11  **V.     LEGAL ARGUMENT**

12      **A.     The State-Created Danger Doctrine and Plaintiffs' Claims**

13      The Due Process Clause of the Fourteenth Amendment and article I, section 7(a) of the

14  California Constitution do not confer an affirmative right to government aid or protection from

15  third-party harm.  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972 (9th Cir. 2011); *San Francisco Taxi*

16  *Coal. v. City & Cty. of San Francisco*, 979 F.3d 1220, 1224 (9th Cir. 2020) (noting that federal

17  and California due process standards are functionally identical).  There are two narrow

18  exceptions: (1) the special relationship doctrine, and (2) the state-created danger exception, which

19  applies only where (a) the state affirmatively creates or exposes the plaintiff to a particularized

20  danger he/she would not otherwise face, and (b) does so with deliberate indifference to that

21  known or obvious danger.  *Wills v. City of Monterey*, 617 F. Supp. 3d 1107, 1122–23 (N.D. Cal.

22  2022); *Sinclair v. City of Seattle*, 61 F.4th 674, 681 (9th Cir. 2023).  As the Supreme Court

23  emphasized, deliberate indifference is a "stringent standard of fault," requiring proof that a state

24  actor consciously disregarded a known or obvious consequence.  *Bryan Cnty. v. Brown*, 520 U.S.

25  397, 410 (1997).

26      Although certain courts have allowed state-created danger claims to proceed in the context

27  of unhoused persons in recent years, those cases have involved extreme facts: government sweeps

28  that destroyed shelters, hygiene supplies, and medical access—leaving unsheltered individuals

BEST BEST & KRIEGER LLP

BEST BEST & KRIEGER LLP

1   exposed to life-threatening conditions **with no safe alternatives**.  For example, in *Langley v. City*

2   *of San Luis Obispo*, the court credited allegations that the City forcibly cleared encampments,

3   knowing the individuals had **no other shelter**, and left them exposed to the elements, without

4   protection from cold, wind, and rain.  *Langley v. City of San Luis Obispo,* 25 2022 WL 18585987,

5   at *5 (C.D. Cal. Feb. 7, 2022).  Similarly, in *Santa Cruz Homeless Union v. Bernal*, plaintiffs

6   alleged that encampment closures destroyed tents and tarps, disrupted medical care from onsite

7   nurses, and displaced individuals with **no access** to shelter due to overcapacity in the referral

8   system.  *Santa Cruz Homeless Union v. Bernal,* 514 F. Supp. 3d 1136, 1143 (N.D. Cal. 2021); see

9   also *Where Do We Go Berkeley v. Caltrans*, 2021 WL 5964594, at *13 (N.D. Cal. Dec. 16, 2021)

10   (state-created danger claim plausible where the government moved forward with encampment

11   closures despite lacking viable **alternative** housing options).

12        This case is categorically different.  Plaintiffs are not unhoused nor are they involuntarily

13   displaced—rather they are landowners who chose to reside in unpermitted structures on

14   undeveloped parcels, in violation of longstanding state and local health and safety regulations.

15   (UMF Nos. 22–30, 35–37, 45–46, 52.)  Unlike encampment cases, the County has not removed

16   Plaintiffs from their property, destroyed their shelters, or disrupted access to medical services.

17   The County has simply enforced neutral ordinances through notices and administrative citations,

18   not physical displacement or seizure.  (UMF Nos. 48, 63–76.)  And critically, Plaintiffs are not

19   without lawful options.  They could have—and still can—apply for well permits (UMF Nos. 26-

20   28), construct compliant residences (UMF Nos. 7-8, 27, 37), or purchase affordable potable water

21   from permitted vendors who deliver in the area.  (UMF Nos. 79-82.)

22        Moreover, Plaintiffs can also become volunteer firefighters, and utilize the existing water

23   tank for firefighting.  (UMF Nos. 85, 87-89.)  The availability of these alternatives underscores

24   the core distinction: this is not a case where the state has left individuals with no choice—rather it

25   is one where Plaintiffs have, through the exercise of free will, ignored legal avenues, and they

26   now seek to constitutionalize the consequences of those choices, and have asked this Court to

27   bless their disregard of state and local health and safety laws.

28        To prevail on a state-created danger claim, Plaintiffs must show **both** that the County

1    affirmatively placed them in danger through the enforcement of the now-amended Water

2    Nuisance Ordinance and the Zoning Ordinance, and did so with deliberate indifference.  They

3    cannot prove either element.  The record contains no evidence that any County action created or

4    exacerbated a danger specific to Plaintiffs, nor that any County official acted with deliberate

5    indifference to a known or obvious risk.  As is discussed, Plaintiffs have failed to meet the high

6    threshold of the state-created danger doctrine, and this motion should be granted.

7              1.      Plaintiffs Cannot Establish That Defendants Took Affirmative Actions
                       That Created or Exacerbated a Known Danger
8

9        Plaintiffs' state-created danger claims fail as a matter of law because, as the record shows,

10   the County did not create or increase any danger in enforcing the Zoning Ordinance.  The Ninth

11   Circuit has consistently held that the state-created danger doctrine applies only where the state

12   takes **affirmative actions** that leave a plaintiff in a worse position than if the state had taken no

13   action.  *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019); *Johnson v. City of*

14   *Seattle*, 474 F.3d 634, 641 (9th Cir. 2007).  The Constitution does not impose liability where the

15   state fails to protect an individual against private violence, nor does it transform every tort

16   committed by a state actor into a constitutional violation.  *DeShaney v. Winnebago Cnty. Dep't of*

17   *Soc. Servs.*, 489 U.S. 189, 201–02 (1989).  A plaintiff must show that the state itself created the

18   danger, or affirmatively increased his/her vulnerability to it, in order to prevail on this claim.

19   *Johnson*, 474 F.3d 634 at 641.

20       Here, the County did neither.  It did not create a danger, nor did it increase Plaintiffs'

21   vulnerability to it.  Mr. Mathis chose to acquire and occupy undeveloped land in the Shasta Vista

22   Subdivision; land with no public water service, on-site water supply, sewer system, or legal

23   entitlement to long-term occupancy.  (UMF Nos. 25-27, 37, 45-46.)  He acknowledges that he

24   bought this land because it is affordable, and it is affordable precisely because it lacks access to

25   basic public infrastructure.  (UMF Nos. 45-46.)  The County had no role in placing Mr. Mathis or

26   the class he purports to represent on these properties.  Plaintiffs chose to move to this remote

27   region lacking in basic infrastructure, and to live in an environment where their access to water

28   for day-to-day living is neither legally defined, nor certain to continue.  (UMF Nos. 49-53.)  They

BEST BEST & KRIEGER LLP

1    were aware, or at least reasonably should have been aware, of the longstanding zoning and

2    building and safety regulations that apply to all lands within the County, and that the third-party

3    unpermitted water distributors from whom they were obtaining water were not in compliance

4    with these regulations.  (UMF Nos. 63-76, 78.)

5         The County did not take any action that placed Plaintiffs in a greater danger than they

6    already faced by electing to live without infrastructure.  Plaintiffs were not deprived of access to

7    legal sources of potable water.  They are entirely able to purchase water from permitted vendors

8    such as Primo Water or Siskiyou Distributing, both of which sell potable bottled water in and

9    around the County, and they can likewise buy bottled water in stores and through online delivery

10   services.  (UMF Nos. 79-82.)  No County official has restricted access to these lawful water

11   vendors or otherwise prohibited Plaintiffs from purchasing safe drinking water from anywhere in

12   the County.

13        Nor did the County interfere with any existing or vested water rights.  The cited zoning

14   enforcement actions targeted unpermitted bulk groundwater distribution operations of third-party

15   landowners in R-R and AG-2 zone districts, not Mr. Mathis or any purported class member.

16   (UMF Nos. 63-76.)  These enforcement efforts were consistent with decades-old zoning laws that

17   prohibit water bottling and off-parcel bulk distribution enterprises in these zoning districts—laws

18   which Plaintiffs' water suppliers violated.  (UMF Nos. 13, 64.)  The properties from which

19   Plaintiffs obtained water were all located in zones where such activity is disallowed.  (UMF

20   Nos. 63-65, 73, 75.)  Moreover, none of these landowners who have been supplying water to Mr.

21   Mathis and the purported class have ever sought administrative relief through a use permit, zone

22   change, or a Planning Director determination, to continue their operations.  (UMF Nos. 71, 74,

23   76, 78.)

24        In short, the County's conduct neither created a danger nor intensified a known one.  At

25   most, Plaintiffs complain of an onerous regulatory framework, which they believe is

26   discriminatory.  But this framework has been in place long before their arrival (UMF Nos. 13-14,

27   77), and it applies uniformly across the County, and with respect to building codes, is applied

28   throughout the state.  (UMF Nos. 5-8, 35-36.)  Also, this framework is supported by legitimate

BEST BEST & KRIEGER LLP

2:22-CV-01378-KJM-AC
DEFENDANTS' MOTION FOR SUMMARY
ADJUDICATION

1  health and safety public policy concerns.  (UMF Nos. 6, 35-36.)  As the Ninth Circuit explained

2  in *Martinez*, the critical distinction is between state action that creates or exposes an individual to

3  danger which he or she would not have otherwise faced, and state actions that leave a person

4  exposed to a danger already present.  *Martinez*, 943 F.3d at 1271.  Plaintiffs fall into the latter

5  category.  They live in an area where access to water is challenging, and they have not done what

6  they are legally allowed to do in order to secure a more reliable source of potable water.  (UMF

7  Nos. 26-27, 32-33, 79-82.)

8              2.      Plaintiffs Cannot Show a Particularized Danger

9          Even if Plaintiffs could show that the County engaged in affirmative conduct, their state-

10  created danger claims still fail because they cannot demonstrate that the County placed them in a

11  particularized danger.  Here, Mr. Mathis and the class he purports to represent face a series of

12  generalized risks, such as living without basic infrastructure, or the incidental effects of land use

13  enforcement against others.  This is insufficient to support a state-created danger claim.

14          In *Sinclair*, the Ninth Circuit rejected claims arising from the City of Seattle's response to

15  the Capitol Hill Occupied Protest ("CHOP").  It found that while the City failed to address

16  lawlessness, the plaintiff had not shown a danger uniquely directed at her deceased son, but rather

17  had only shown a "generalized danger" in the CHOP zone that was experienced by all members

18  of the public who chose to visit it.  *Sinclair v. City of Seattle*, 61 F.4th 674, 681–82 (9th Cir.

19  2023).  Again, in *Johnson*, the Ninth Circuit held that the City of Seattle's actions during Mardi

20  Gras celebrations, even if chaotic, did not affirmatively place the plaintiffs in a position of

21  particularized danger.  *Johnson v. City of Seattle*, 474 F.3d 634, 641-42 (9th Cir. 2007).  In both

22  instances, the Ninth Circuit recognized that **a change in enforcement priority is not a**

23  **particularized risk faced by an individual**—it is a generalized risk, or a risk that impacts all

24  individuals the same.  *Sinclair*, 61 F.4th 674 at 683; *Johnson*, 474 F.3d 634 at 639.  The same is

25  true here.  Plaintiffs challenge the enforcement of regulations, but these regulations were enforced

26  broadly against landowners who were using their properties in ways that violate the Zoning

27  Ordinance—not against any identified individual or group.

28          The record confirms that the County's enforcement actions are applied uniformly across

BEST BEST & KRIEGER LLP

BEST BEST & KRIEGER LLP

1  the AG-1, AG-2, and R-R zoning districts, without regard to race, ethnicity, or customer identity.

2  (UMF Nos. 13-14, 77.)  The County has cited unauthorized water suppliers based solely on land

3  use violations, not based on their identity or the identity of their customers.  (UMF Nos. 63-76.)

4  There is no evidence that Plaintiff Mathis or any member of the water class was individually

5  targeted.

6      Plaintiffs' own pleadings confirm that enforcement activity occurred broadly and applied

7  to all similarly situated residents, not just Asian Americans.  (UMF Nos. 49-51, 77.)  In fact, the

8  County's enforcement history shows that it has cited a range of unpermitted commercial activities

9  for decades—including illegal contractor's yards, rock crushing, and dumping—well before

10  Asian American residents began settling in Shasta Vista.  (UMF No. 77.)  The County has never

11  permitted water bottling or distribution enterprises in the zones where Plaintiffs and their water

12  suppliers reside, and these uses are prohibited outside M-M and M-H zones.  (UMF Nos. 13, 64.)

13      This case is consistent with the emerging line of Ninth Circuit opinions emphasizing that

14  the state-created danger doctrine requires a particularized danger directed at a known plaintiff—

15  not a generalized risk experienced by the public at large.  In *Sacramento Homeless Union v. City*

16  *of Sacramento*, 115 F.4th 1149, 1154 (9th Cir. 2024), a concurring opinion by Judge R. Nelson,

17  joined by Judges Bumatay and VanDyke, criticized the expansion of state-created danger liability

18  and emphasized that clearing homeless encampments during extreme heat did not amount to

19  constitutional misconduct because the government neither created the heat nor directed any

20  danger toward a specific individual.  The concurrence echoed the unanimous opinion in *Sinclair*,

21  which reiterates that a generalized danger that affects all equally is not enough.  *Id.* at 1153-54

22  (citing *Sinclair*, 61 F.4th at 681–82).  The concurrence in *Sacramento Homeless Union* is

23  consistent with a growing recognition in the Ninth Circuit that due process does not transform

24  land use policy or public health enforcement into constitutional violations, absent coercive state

25  action or individual targeting.  See *id.* at 1153.

26      The County's position finds further support in *Yesue v. City of Sebastopol*, 2024 WL

27  4876953, at 7 (N.D. Cal. Nov. 22, 2024).  In *Yesue*, the court granted summary judgment for the

28  City on a state-created danger claim brought by unhoused individuals with disabilities who

1    alleged that an RV parking ordinance affirmatively endangered them. *Id*. at 8. Plaintiffs argued

2    that the ordinance forced them to leave the relative safety of their vehicles and exposed them to

3    medical hardship. *Id*. at 8. The court acknowledged these alleged hardships of difficulty in

4    storing medications, mobility limitations, and psychological safety, but nonetheless rejected the

5    claim. *Id*. The court held that these were generalized effects of the ordinance on a broad class of

6    people (vehicularly-housed individuals), not "dangers particularly directed at Plaintiffs." *Id*. The

7    RV ordinance applied uniformly to anyone parking RVs, and plaintiffs failed to show how the

8    law affirmatively targeted or endangered them individually. *Id*.

9        The reasoning in *Yesue* applies here. Like the RV parking ordinance in *Yesue*, the

10   County's groundwater, building, and land use regulations apply neutrally to all landowners and

11   residents, and do not target Plaintiffs individually. (UMF Nos. 13-14, 35-36, 63-76, 77.)

12   Plaintiffs' alleged harm, the loss of water deliveries that are unlawful in the first place, is a

13   generalized consequence of facially neutral and general law enforcement conduct, not state-

14   created dangers affirmatively imposed by the County. See *id*. at 8. As in *Yesue*, Plaintiffs'

15   grievances reflect the natural effects of building and land use compliance obligations, not

16   conscience-shocking conduct by government officials.

17       Plaintiffs' claims also fail the particularity test set forth in numerous Ninth Circuit

18   precedents. In *Hernandez v. City of San Jose*, 897 F.3d 1125, 1138 (9th Cir. 2018), officers

19   directed a known group of plaintiffs into a hostile crowd. In *Kennedy v. City of Ridgefield*, 439

20   F.3d 1055, 1057–58 (9th Cir. 2006), a police officer affirmatively alerted a known violent suspect

21   that the plaintiff had reported him, resulting in a fatal shooting. And in *Munger v. City of*

22   *Glasgow*, 227 F.3d 1082, 1086–87 (9th Cir. 2000), officers expelled an intoxicated man into

23   subfreezing weather, leading to his death. Each of these cases involved specific plaintiffs facing

24   individualized and particularized dangers created by specific state action. No such facts are

25   present here. And as the Ninth Circuit noted in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019

26   (9th Cir. 1998), class action claims are inherently generalized—they require numerosity—or that

27   a class be so large that it is impractical to bring them all into court individually. Yet state-created

28   danger liability demands that the danger be "directed to a known plaintiff." See also *Wood v.*

BEST BEST & KRIEGER LLP

2:22-CV-01378-KJM-AC
DEFENDANTS' MOTION FOR SUMMARY
ADJUDICATION

1    *Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989); *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992);

2    *Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013).

3          There is no precedent in the Ninth Circuit recognizing a state-created danger claim

4    premised on the uniform enforcement of building and land use laws against any and all violators,

5    or the indirect effects that development restrictions may have on persons.  The Ninth Circuit has

6    applied the state-created danger doctrine **only** in serious cases of assault, shootings, and death.

7    *Roe v. City and County of San Francisco*, 2024 WL 4505475 (N.D. Cal. Oct. 15, 2024) (citing

8    *Bracken v. Okura*, 869 F.3d 771 (9th Cir. 2017); *Hernandez v. City of San Jose*, 897 F.3d 1125

9    (9th Cir. 2018)*; Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) and others).

10   Plaintiffs' effort to convert the general enforcement of facially neutral regulations and public

11   health measures into individualized constitutional claims finds no support in the law.  As in

12   *Sinclair*, *DeShaney*, and *Hernandez*, the absence of a particularized danger is fatal.

13          3.    Plaintiffs Cannot Establish That Defendants Acted with Deliberate
14                Indifference

15          The Ninth Circuit has made clear that deliberate indifference is a "stringent standard of

16   fault," far exceeding negligence or poor policy judgment.  *Bryan Cnty. v. Brown*, 520 U.S. 397,

17   410 (1997).  To prevail, a plaintiff must show that the government actor was subjectively aware

18   of a known, particularized risk to the plaintiff, and made a conscious choice to disregard that risk.

19   *Herrera v. L.A. Unified Sch. Dist.*, 18 F.4th 1156, 1161 (9th Cir. 2021); *L.W. v. Grubbs*, 974 F.2d

20   119, 121 (9th Cir. 1992); *Pauluk v. Savage*, 836 F.3d 1117, 1131–32 (9th Cir. 2016) (concurring

21   opinion).  Mere awareness of general risk is not enough.  *Penilla v. City of Huntington Park*, 115

22   F.3d 707, 709 (9th Cir. 1997).

23          There is no evidence that any County official acted with deliberate indifference to a

24   known danger.  No County official forced Plaintiffs to reside on undeveloped land without a

25   reliable (and legal) water source.  Plaintiffs voluntarily chose to put themselves in that position.

26   (UMF Nos. 45-53.)  And there is no evidence to support that the County prevented Plaintiff

27   Mathis—or any member of the class he purports to represent—from applying for permits,

28   constructing legal infrastructure, or buying bottled water from legal sources.  (UMF Nos. 79-82.)

BEST BEST & KRIEGER LLP

1    Nor is there any evidence that County officials were aware of a specific and immediate

2  danger to Plaintiffs, and consciously chose to ignore it.  The Zoning Ordinance enforced here

3  predates Plaintiffs' arrival to the County and was applied consistently across AG-1, AG-2, and R-

4  R zones.  (UMF Nos. 9, 17.)  The cited enforcement actions were aimed at unpermitted large-

5  scale water hauling—predominantly tied to cannabis cultivation—**not residential water use**.

6  (UMF Nos. 61-66.)  Each citation was based on violations of land use regulations, and the County

7  provided affected property owners the opportunity to seek administrative relief, appeal citations,

8  or obtain zoning determinations.  (UMF Nos. 15-17, 20-21, 70, 74, 76.)  That is to say that the

9  County provided alternatives, but none of Plaintiffs' water vendors chose to pursue those

10  alternatives.

11    To the extent Plaintiffs assert that enforcement foreseeably deprived them of water, the

12  record contradicts that claim.  Water sources remain lawfully available throughout the County,

13  and the County has never obstructed Plaintiffs' ability to purchase or receive water deliveries

14  from licensed haulers like Primo Water.  (UMF Nos. 79-82.)  Additionally, the County has

15  provided a 10,000 gallon tank of water to be used for firefighting purposes, but Plaintiffs have not

16  volunteered for firefighting training to receive the water.  (UMF Nos. 85-89.)

17    This case is closely aligned with *Berkeley Homeless Union v. City of Berkeley*, 2025 WL

18  1755446, at 10 (N.D. Cal. June 25, 2025), where the court held that plaintiffs failed to

19  demonstrate deliberate indifference in the context of an encampment closure.  Plaintiffs alleged

20  that the City's enforcement actions would displace unhoused individuals and separate them from

21  vital resources, thereby exacerbating their vulnerability.  *Id*.  The court found that the City had not

22  ignored the risks alleged by plaintiffs, but had instead taken reasonable and documented steps to

23  mitigate those risks—such as providing notice, offering information about disability

24  accommodations, and delaying enforcement.  *Id*.  The court emphasized that even if plaintiffs

25  faced hardship, the City's actions did not reflect a culpable mental state or conscious disregard of

26  a known danger.  *Id*.  Further, the Northern District made clear that there is no deliberate

27  indifference where the government enforces laws to advance legitimate interests in public

28  welfare, such as protecting park access and preserving community safety.  *Id*.

BEST BEST & KRIEGER LLP

Here, the County similarly mitigated risks through lawful and proactive means.  The County provides and has provided multiple avenues for landowners to obtain zoning interpretations, pursue conditional use permits, or request rezoning.  (UMF Nos. 15-18.)  Moreover, the County has not enforced its Camping Ordinance against Mr. Mathis, and there is no allegation in the SAC that Camping Ordinance has been enforced against anyone, or that the County has otherwise taken action to displace any Plaintiffs.  (UMF Nos. 46-48.)  There are permitted water vendors who operate legally out of the industrial zone districts, and the County has never interfered with access to legal water sources.  (UMF Nos. 13, 79-82)  In addition, for fire suppression there is a 10,000-gallon water tank, and PPE and other equipment in the Shasta Vista Subdivision, which remains available for use by qualified volunteers.  The County has tried to recruit residents to serve as volunteer firefighters, but has been unsuccessful in convincing anyone to serve.  (UMF Nos. 85-89.)  These efforts demonstrate that the County has attempted to address community needs while maintaining its legitimate and longstanding interest in enforcing zoning and land use regulations.  As in *Berkeley*, these actions fall far short of the culpable, conscience-shocking conduct required to establish deliberate indifference.  This motion should be granted.

### B.    Plaintiffs' Claims Based on the Water Truck, Water Extraction, and Water Nuisance Ordinances Are Moot

Plaintiffs' counts eight and nine in the SAC, which arise out of enforcement of the Water Truck Ordinance, Water Extraction Ordinance, and Water Nuisance Ordinance are now moot.  These ordinances were either repealed outright or amended to add additional evidentiary burdens for enforcement, and the County has ceased all enforcement activity under the repealed ordinances since May 2024.  (UMF Nos. 90-93.)  Plaintiffs do not, and cannot, identify any ongoing or prospective enforcement of these ordinances, nor is there any evidence that the County intends to reenact or revive them.  There is no live controversy to adjudicate, and the mootness doctrine bars any claim for prospective relief.  See *Martinez v. Newsom*, 46 F.4th 965, 972 (9th Cir. 2022) (when the injunctive relief sought is no longer available due to end of enforcement—and the remaining requests for declaratory relief or attorneys' fees cannot

BEST BEST & KRIEGER LLP

1  independently sustain jurisdiction—the claims are moot.).

2      For these two counts, this case mirrors the Ninth Circuit's recent decision in *Brach v.*

3  *Newsom*, where plaintiffs challenged California's 2020 pandemic-era school closure orders.

4  *Brach v. Newsom*, 38 F.4th 6, 9 (9th Cir. 2022).  By the time the court issued its opinion, the

5  state's policy had expired by its own terms, schools had long since reopened, and the state had

6  affirmatively renounced future reliance on closure mandates.  *Id*. at 11.  The court found that

7  under those conditions no effective relief could be granted and no credible risk of recurrence

8  existed—rendering the challenge moot.  *Id*. at 14-15.

9      The same logic applies here.  The County repealed the Water Truck and Water Extraction

10  Ordinances and amended the Water Nuisance Ordinance to apply solely to violators who were

11  knowingly using groundwater for unlawful cannabis-related activities in August 2023.  (UMF

12  Nos. 90-93.)  Mr. Mathis does not allege that he uses water to grow cannabis, and in fact the

13  water class he purports to represent carves out any relief for using water for cannabis-related

14  activities. Dkt. 140.  These policy changes were not temporary adjustments but permanent

15  legislative actions, made as part of a settlement in prior litigation.  (UMF Nos. 90-93.)  The

16  County has since ceased all enforcement and there is no indication of reimplementation.  (UMF

17  Nos. 90-93.)  Because Plaintiffs challenge laws that no longer exist and enforcement practices

18  have ceased for over a year, the eighth and ninth counts are moot.

19  **VI.**  **CONCLUSION**

20      For the reasons stated herein, Defendants request that the Court grant its motion for

21  summary adjudication on the all state-created danger claims.

22  Dated: July 16, 2025        BEST BEST & KRIEGER LLP

23      By:/s/ Christopher M. Pisano

24      JEFFREY V. DUNN
    CHRISTOPHER M. PISANO
    MARCO ORNELAS-LOPEZ

25

26      Attorneys for Defendants
    County of Siskiyou and Jeremiah LaRue, in his official capacity as Sheriff

27

28