UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL MATHIS, JORDAN CHONG MOUA, YING SUSANNA VA, MAI NOU VANG, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SISKIYOU and JEREMIAH LARUE, in his official capacity as Sheriff,<br><br>Defendants. | No. 2:22-cv-01378 KJM AC<br><br>ORDER |

This case is before the court on three discovery motions: plaintiffs' motion to increase deposition limits (ECF No. 150; joint statement at ECF No. 171), plaintiffs' motion for remedy of violation of discovery substantial completion deadline (ECF No. 157; joint statement at ECF No. 172), and plaintiffs' motion to compel the deposition of Ray Haupt (ECF No. 167; joint statement at ECF No. 174). These discovery motions were referred to the magistrate judge pursuant to E.D. Cal. R. 302(c)(1). The motions are fully briefed and were taken under submission. ECF No. 175.

### I.    Relevant Case Background

The factual background of the case is well known to the parties and the court and need not be recited here in detail. Only a brief synopsis is necessary to provide context for the discovery rulings that follow.

1

Plaintiffs allege that Siskiyou County and its Sheriff Jeremiah LaRue (together "Defendants") are engaged in a sweeping campaign to harass and intimidate Hmong and other Asian Americans, often cloaked under the pretense of enforcing water- and cannabis-related laws. ECF No. 140 at 2. Siskiyou County is an expansive, rural county at the northernmost reach of California that is mostly undeveloped, with much of the County's land being forest or wilderness area. Id. at 5. The County is home to fewer than 45,000 people, 85% of whom are white and 1.6% of whom are Asian American according to the latest U.S. Census. Id. In Siskiyou County, many Asian Americans, especially Hmong residents, have settled in and around the "Shasta Vista" subdivision and in smaller communities in the north of the County (by the towns of Dorris and Macdoel). Id. Many residents live in multi-generational family units, and many live in unpermitted structures or recreational vehicles, as a water well is a prerequisite for a septic system and building permit, and their properties do not have wells. Id. at 6. Plaintiffs contend that defendants have engaged in unlawful racial targeting and profiling of Asian Americans through motor vehicle stops, improper lien practices, and unlawful water-related regulations. See generally, ECF No. 140.

## II.     Relevant Procedural Background

This case was filed on August 3, 2022. ECF No. 1. The operative Second Amended Complaint was filed on February 28, 2025. ECF No. 140. The parties have long been engaging in discovery. On May 20, 2025, Senior District Judge Kimberly J. Muller signed a stipulation continuing discovery deadlines. ECF No. 147. This order set a deadline for "substantial completion of document production" on July 7, 2025. Id. at 4. Fact discovery closed on September 30, 2025, and expert discovery is set to close on December 18, 2025. Id.

## III.    Motion to Exceed Deposition Limits

Plaintiffs have noticed 10 depositions: (1) a Rule 30(b)(6) witness from the County of Siskiyou, (2) Defendant Sheriff Jeremiah LaRue, (3) Undersheriff James Randall, (4) Lieutenant Gary Pannell, (5) Former Lieutenant Behr Tharsing, (6) Seargeant Scott Stock, (7) Deputy Marquise Williams, (8) Code Enforcement Officer John Ottenberg, (9) Former Assistant District Attorney Martha Aker, and (10) Supervisor Ray Haupt. ECF No. 171 at 4-6. Plaintiffs state they

have identified fourteen (14) additional fact witnesses whom they contend have discoverable information relevant to the claims and defenses in this case, though they only list 12 proposed additional deponents. Id. at 7-9. Plaintiffs seek leave to conduct any eight (8) additional depositions from the list. Id. This list contains three current and former County Supervisors (Brandon Criss, Michael Kobseff, and Ed Valenzuela), four traffic-related officers and managers (Deputy John Langford, Former Deputy Mouksavanh Phonepaseuth, Dispatch Manager Krysta Labbe, Lieutenant Cory Persing), and five water-ordinance related officials (Community Development Department ("CDD") Director Richard Dean, Code Enforcement Officer Andrea Fox, Agricultural Commissioner James Smith, Office of Emergency Services ("OES") Director Bryan Schenone, and Geographic Information Systems ("GIS") Coordinator Brandon Konicke. Id. at 7-10.

### A.    Applicable Legal Standards

The scope of discovery in federal cases is governed by Federal Rule of Civil Procedure 26(b)(1). The current Rule states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Relevancy to the subject matter of the litigation "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Relevance, however, does not establish discoverability; in 2015, a proportionality requirement was added to Rule 26. Under the amended Rule 26,

////

3

relevance alone will not justify discovery; discovery must also be proportional to the needs of the case.

With respect to depositions, Federal Rule of Civil Procedure 30 presumptively limits a party to ten depositions; a party may only exceed this number with leave of court or by stipulation of the parties. Fed. R. Civ. P. 30(a)(2)(A)(i). The presumptive limit is intended to "promote cost-effective discovery and promote the federal rules' policy of minimizing 'unreasonably cumulative or duplicative' discovery." Thykkuttathil v. Keese, 294 F.R.D. 597, 599 (W.D. Wash. 2013) (quoting Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 30 Advisory Committee's Note (1993)). "A party seeking to exceed the presumptive limit bears the burden of making a 'particularized showing' of the need for additional depositions." Thykkuttathil, 294 F.R.D. at 600. In making an evaluation, courts consider "whether (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive; (2) the party seeking discovery has ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the party's resources, and the importance of the proposed discovery in resolving the issues." Andamiro U.S.A. v. Konami Amusement of Am., Inc., No. CV00-8561, 2001 WL 535667, at *2, 2001 U.S. Dist. LEXIS 11168 (C.D. Cal. Apr. 26, 2001).

B. Depositions in Excess of the Presumptive Limit are Not Warranted

Here, plaintiffs' need for additional depositions is not sufficiently supported; plaintiffs have not shown good cause to exceed the presumptive limit. First, plaintiffs identify 12 individuals who are alleged to have information about different categories of topics but are seeking to depose any 8 of those individuals. This position may be intended to demonstrate a spirit of compromise, but it also indicates that there is no particular additional deposition which plaintiffs specifically need. This cuts against the notion that the burden of additional depositions outweighs the benefit. Second, the requested depositions are largely duplicative of those noticed in the original 10. For example, plaintiffs do not contend that any of the additional supervisors they seek to depose has *unique* knowledge; indeed, plaintiffs seek to depose Supervisor Michale

4

Kobseff so that he can testify to his encounters with noticed deponent Supervisor Haupt. ECF No. 171 at 7. Plaintiffs do not adequately explain why the additional supervisors (Criss, Kobseff, and Valenzuela) possess unique information such that they must be deposed in addition to noticed supervisor Haupt.

The additional requested depositions of traffic-stop deputies are likewise duplicative and disproportionate to the needs of the case. Plaintiffs have already noticed depositions for Sheriff LaRue, Undershiriff Randall, Former Lieutenant Tharsing, Seargent Stock, Deputy Williams and Lieutenant Pannell. Defendants confirm that plaintiffs already have the body-worn camera for each of the named-plaintiff stops. ECF No. 121 at 21. Plaintiffs again do not identify unique knowledge possessed by the proposed additional deponents (Phonepaseuth and Langford), and the court agrees with defendants that deposing multiple deputies per stop is cumulative.

Additional code enforcement and water ordinance depositions are likewise unwarranted. Defendants state they have produced Rick Dean, who is identified by plaintiffs as an additional proposed deponent, as a 30(b)(6) witness for a full-day deposition; there is no good cause to depose Dean again individually based on the same document set. ECF No. 171 at 22. Defendants have made clear that they will schedule the deposition of Ottenberg (a noticed deponent), and the additional requested deponent Fox is "like Ottenberg, directly responsible for enforcing the ordinances at issue in this litigation" and plaintiffs only seek her testimony to the extent they are "prevented form deposing Ottenberg." ECF No. 171 at 9. Plaintiffs may bring a motion to compel the deposition of Ottenberg if necessary, but this is not a reason to exceed the presumptive 10 deposition limit.

The need for the remaining additional deponents is not sufficiently well defined. Dispatch Manager Labbe's deposition, in excess of the presumptive 10, is excessive in light of the fact that defendants represent, and plaintiffs do not dispute, that plaintiffs already have extensive CAD exports and RIPA data, and questioned Undersheriff Randall on dispatch fields. Further, there is a discrete system field requiring clarification, a short 30(b)(6) on CAD schema is an option defendants indicate they will make available in lieu of a deposition, and the court agrees that this is a less burdensome option. Additional deponent Persing's cannabis enforcement work

5

is not at issue for the water class given plaintiffs' own framing that cannabis uses are excluded, and further, plaintiffs do not adequately give a particularized need for this deposition. The proposed additional depositions of Smith and Schenone are based on the fact that these individuals were referenced in document productions. ECF No. 171 at 9-10. Plaintiffs indicate they need these depositions to enhance and clarify information in the document productions, but the argument for these depositions is speculative and vague. Id. Finally, the additional deposition of Konicke, the GIS coordinator, to testify to the "underlying methodology for GIS mapping" is unsupported; such technical clarifications can be obtained in less burdensome ways.

### C. Conclusion

Plaintiffs do not adequately demonstrate their need to exceed the presumptive deposition limit, and the motion (ECF No. 150) is therefore DENIED.

### IV. Motion to Compel Deposition of Ray Haupt

On June 16, 2025, plaintiffs noticed the deposition of Ray Haupt, a Supervisor for Defendant County of Siskiyou, for July 23, 2025. ECF No. 174 at Ex. 1 (Haupt Notice). The County identified Haupt and the other four sitting supervisors as prospective witnesses in their initial disclosures. Id. at Ex. 2 (Initial Disclosure pp. 1-2). Defendants objected to Haupt's deposition, stating he was an "apex" deponent. Id. at Ex. 3. On July 1, defendants restated this position in a formal "Objection to Plaintiffs' Notice of Deposition of Ray Haupt." Ex. 4 (July 1 email from D. Forgeur to Plaintiffs' Counsel with attached Objection).

That same day, the parties met and conferred. Ex. 12 (Vees Decl.) at ¶ 5. Plaintiffs inquired as to the legal significance of the Objection, noting it was not a motion for protective order. Id. Defendants stated they did not need to file a motion "anytime soon" and suggested informal resolution through written discovery in lieu of a deposition; defendants then reiterated their interest in learning plaintiffs' purpose in deposing Haupt. Id. at ¶ 6. Plaintiffs summarized their intention as follows: the Board of Supervisors was integral to County policies that plaintiffs challenge under Equal Protection and State-created danger theories, both of which require proof of a culpable mental state; plaintiffs have circumstantial evidence on point, but the best direct evidence of what the Supervisors were thinking lies with the Supervisors themselves. Defendants

6

1   responded that they would confer with their client. Id. at ¶ 7.

2   On July 9, the parties met and conferred. Plaintiffs asked about the Haupt deposition, and defendants stated that they needed additional time to determine their course of action. Id. at ¶ 8. On July 18, the parties again conferred. Plaintiffs again inquired about Haupt, and defendants stated that they would not object to written discovery in lieu of a deposition. Plaintiffs refused. Defendants then stated they were unsure of whether they intended to file a motion for protective order and needed to speak to County Counsel. Plaintiffs noted that Haupt's deposition was then scheduled for the following week. Id. at ¶ 9.

On July 23, the date noticed, the parties met and conferred. At that time, defendants stated that they intended to file a motion for protective order regarding Haupt's deposition, relying on the apex doctrine. Defendants did not file such a motion. Id. at ¶ 10

On August 1, the parties met and conferred, and plaintiffs indicated they would move to compel. Id. at Ex. 12 (Vees Decl.) at ¶ 11. On August 4, defendants wrote that they objected to depositions of any supervisors "as an inappropriate invasion of deliberative process, and improper apex depositions," adding, "[w]e are also struggling to see any relevance to these depositions insofar as the Water Ordinances were either repealed or, in one case, substantially altered[.]" Id. at Ex. 5 (Aug. 4 email of M. Lopez).

On August 8, plaintiffs noticed the underlying motion to compel. ECF No. 167. The joint statement in support of this motion was due August 27. The parties agreed to exchange initial drafts on August 22, and proposed finals on the filing day. ECF No. 174 at Ex. 12, ¶ 12. On August 22, the parties exchanged drafts as agreed; at that time, defendants' section cited only the apex doctrine and deliberative process privilege as bases for objection. Id. at ¶ 13. On August 27, at 1:00 p.m., the parties exchanged proposed final drafts. At that time, for the first time, defendants included a two-page argument based on the legislative privilege. Id. at ¶ 14. Plaintiffs argue that the objections to Haupt's depositions were waived because defendants failed to file a timely motion for protective order, and accordingly failed to appear for his deposition, warranting sanctions.

In the joint statement, defendants assert Haupt's deposition is barred by (1) the apex

7

doctrine, (2) legislative process privilege, and (3) deliberative process privilege. Id. at 22-27. Defendants argue that their objections were not waived because Haupt did not "fail to appear," rather, the parties were in negotiations. ECF No. 174 at 21.

### A. Legal Standard

Federal Rule of Civil Procedure 30 governs depositions by oral examination. Rule 30(a)(1) provides that, subject to certain limitations, "[a] party may, by oral questions, depose any person, including a party, without leave of court[.]" When a party fails to comply with discovery obligations, an opposing party may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(1). The Ninth Circuit has recognized that "Rule 37(a) encompasses an order to attend a deposition." Sali v. Corona Reg'l Med. Ctr., 884 F.3d 1218, 1222 (9th Cir. 2018). If a party fails to attend their properly noticed deposition, "Rule 37 explicitly authorizes the court to sanction parties for failing to attend their own depositions." Id. "A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). Available sanctions are any listed in Rule 37(b)(2)(A)(i)-(vi), including directing "matters embraced in the order" be taken as established "for purposes of the action, as the prevailing party claims." "A finding of bad faith is not a prerequisite for awarding expenses under Rule 37(d), although a lack of bad faith may be considered in determining whether the imposition of sanctions would be unjust. The Court has 'great latitude' in imposing sanctions under Rule 37." ProDox, LLC v. Pro. Document Servs., Inc., 341 F.R.D. 679, 683 (D. Nev. 2022).

### B. The Deposition of Haupt is Compelled and Defendants' Objections are Waived

The court agrees with plaintiffs that Haupt failed to appear for his deposition, and that as an appropriate Rule 37 sanction, objections to the deposition are waived. "It long has been settled in the Ninth Circuit that a party may not unilaterally refuse to appear for properly noticed depositions but instead must obtain a protective order that postpones or dispenses with his duty to appear." Hendricks v. Aetna Life Ins. Co., 2024 WL 4720802, at *5, 2024 U.S. Dist. LEXIS 206260 (C.D. Cal. Sep. 3, 2024); Pioche Mines Consol., Inc. v. Dolman, 333 F.2d 257, 269 (9th Cir. 1964) ("unless [the party] has obtained a court order that postpones or dispenses with his

8

duty to appear, that duty remains"); ProDox, LLC v. Prof. Document Servs., Inc., 341 F.R.D. 679, 684 (D. Nev. 2022) ("The failure to seek a protective order in a timely manner will preclude later objection."). Simply objecting is not sufficient. Fed. R. Civ. P. 37(d)(2).

Here, Haupt's deposition was properly noticed over a month in advanced, and experienced defense counsel knew or should have known that they were under an obligation to move for a protective order if they wished to challenge the deposition. Indeed, they indicated several times that a motion for a protective order was forthcoming, but they never filed one. Defendants were not at liberty to simply let the appearance date for the Haupt deposition to pass, drag their feet, and hope that nothing would come of it.

The merits of defendants' objections are, under the circumstances, irrelevant. M.S. v. Angus, 2025 WL 1711403, at *3, 2025 U.S. Dist. LEXIS 102434 (C.D. Cal. May 8, 2025) ("policy considerations and the potential for discovery abuse" trump "potential merit" of objection absent protective order); accord Novitzky v. Transunion LLC, 2025 WL 819621, at *2, 2025 U.S. Dist. LEXIS 27428 (C.D. Cal. Feb. 14, 2025). It is also immaterial that defendants gave notice that Haupt would not appear. Paige v. Consumer Programs Inc., 248 F.R.D. 272, 275 (C.D. Cal. 2008) (party failed to appear despite "notice stating he would not appear at his deposition"); Reel v. City of El Centro, 2024 WL 3094628, at *3, 2024 U.S. Dist. LEXIS 108544 (S.D. Cal. June 18, 2024) (phone call to the court and letter to opposing counsel are "insufficient to absolve the [witnesses] of their duty to appear under the federal rules").

Further, it does not matter that plaintiffs were not "sitting in a conference room waiting" and continued to confer with defendants after Haupt failed to appear. Henry v. Gill Industries, Inc., 983 F.2d 943, 947 (9th Cir. 1993) ("We reject the suggestion that an unreasonable refusal to be deposed must be met with an unreasonable refusal to reschedule in order to warrant sanctions under Rule 37."); accord Khalaj v. City of Phoenix, 2021 WL 222408, at *10, 2021 U.S. Dist. LEXIS 12006 (D. Ariz. Jan. 22, 2021) ("sanctions . . . [are] appropriate, even when the opposing party's counsel was willing to work with the party to reschedule the deposition"); see also M.S., 2025 WL 1711403, at *2 (witness failed to appear though parties had "begun conferring regarding the instant motion for a protective order prior").

The court is unpersuaded by defendants' argument that the court should not find that Haupt "failed to appear" because the concept of "failure to appear" is "not a mechanical trigger but a legal conclusion." The court is not applying the concept mechanically. Rather, application of the law to the facts—here, circumstances of defendants' making—compels the conclusion that Haupt failed to appear at his deposition within the meaning of the Federal Rules, and that his conduct is sanctionable. Because Haupt's deposition was properly noticed and his appearance was not excused (no motion for a protective order was ever even *filed*, let alone granted[1]), Haupt did fail to appear, and plaintiffs may assert their right to depose Haupt by motion to compel under Rule 37(a)(3)(B)(i). Plaintiffs ask that the court finds the objections to Haupt's deposition waived, and the court agrees that is a fair and reasonable sanction permitted under the Rules.

C. Conclusion

The motion to compel the deposition of Ray Haupt (ECF No. 167) is GRANTED. Defendants are ORDERED to produce Haupt for a deposition within 30 days of this order.

**V.      Motion to Find Violation of Substantial Completion Deadline**

Pursuant to the scheduling order currently in place, issued by a court-approved stipulation, defendants were obligated to substantially complete document production by July 7, 2025. Defendants take the position that they have substantially completed production, having produced more than 307,000 documents since the start of discovery. ECF No. 172 at 16. Defendants assert that the production spans nine County departments, includes over 7,000 files of body-worn camera footage, and cost the County approximately $2 million in legal and vendor fees. Id. Plaintiffs contend that despite the County's production, several key categories of documents have not been produced. Id. at 3. Plaintiffs ask the court to order defendants to produce the following:

- Documents of defendant Siskiyou County located at the County District Attorney's Office ("DAO"), which the County previously stated that it would search for and produce;

---

[1] "Several courts have explained that a party has no basis to refuse to attend a properly noticed deposition unless they actually obtain a protective order, or at least a temporary stay of the deposition while a motion for protective order is pending, prior to the deposition." Novitzky, 2025 U.S. Dist. LEXIS 27428 at *4.

- Traffic incident reports, written warnings, and traffic citations defendants have agreed to produce but have not yet produced;
- Computer-Aided Dispatch ("CAD") logs defendants have agreed to produce but have not yet produced;
- Data collected pursuant to the Racial and Identity Profiling Act ("RIPA") that defendants agreed to produce but have not yet produced;
- Responsive body-worn camera ("BWC") footage dating earlier than 2022;
- Text messages and other documents collected from County-issued and/or personal mobile devices (to the extent the devices contain responsive documents) of certain current or former County employees; and
- Training documents and reports specific to interdiction, including but not limited to
- training documents associated with Department-funded training through Relentless, LLC, d/b/a Desert Snow.

Id. at 3-4.

Defendants do not dispute that these categories of documents have not yet been produced. Instead, they argue that (1) they have already produced a substantial volume of documents (ECF No. 172 at 15), (2) the burdens of compliance on a strict timeline are significant and therefore an order forcing compliance is unwarranted (id. at 16-17), (3) the County does not administer or control the databases of the DAO related to prosecutions and investigations, and therefore the County lacks custody and control over those records (id. at 18-19), (4) plaintiffs themselves failed to meet the July 7th deadline (id. at 19-21), and (5) the motion is premature (id. at 21-22).

First, the fact that defendants produced a significant number of documents does not negate the fact that a significant number of responsive documents remain admittedly unproduced. Second, concerns about the cost and burdens of compliance are not persuasive; defendants themselves stipulated to the July 7th deadline and have not requested any extension. ECF No. 147. Defendants can and should be expected to meet a deadline they agreed to and have not sought to move. Third, the court agrees with plaintiffs that defendants' arguments about possession of DAO investigative and prosecutorial records arguments are not on point; plaintiffs

11

seek documents pertaining to DAO's roles acting on the County's behalf, and plaintiffs could obtain such documents through PRA requests (the costs of responding to which would be borne by the County in any event). Fourth, plaintiffs' production conduct is not the subject of this motion and is not relevant to defendants' conduct. If the defendants wish to challenge plaintiffs' productions, they must file their own motion. Finally, this motion is plainly not premature because the deadline for substantial production has already passed.

The court concludes that defendants have not complied with the stipulated July 7, 2025 substantial production completion deadline, and plaintiffs' motion to compel (ECF No. 157) is GRANTED. Defendants are ORDERED to produce all remaining responsive documents described above within 30 days of this order.

### VI.   Conclusion

For the reasons set forth above, the court orders as follows:

1. Plaintiffs' motion to increase deposition limits (ECF No. 150) is DENIED;
2. Plaintiffs' motion to remedy defendants' violation of the substantial document completion deadline (ECF No. 157) is GRANTED and defendants are ORDERED to produce all remaining responsive documents within 30 days of this order, and
3. The motion to compel the deposition of Ray Haupt (ECF No. 167) is GRANTED and defendants are ORDERED to produce Haupt for a deposition within 30 days of this order.

IT IS SO ORDERED.

DATED: November 6, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE