**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA**
JOHN THOMAS H. DO (SBN 285075)
EMI YOUNG (SBN 311238)
39 Drumm Street
San Francisco, CA 94111
(415) 293-6333
jdo@aclunc.org
eyoung@aclunc.org

**ASIAN AMERICANS ADVANCING JUSTICE - ASIAN LAW CAUCUS**
MEGAN VEES (SBN 325184)
WINIFRED KAO (SBN 241472)
55 Columbus Avenue
San Francisco, CA 94111
(415) 896-1701
meganv@asianlawcaucus.org
winifredk@asianlawcaucus.org

**COVINGTON & BURLING LLP**
STANLEY YOUNG (SBN 121180)
3000 El Camino Real
5 Palo Alto Square,
10th Floor Palo Alto, CA 94306-2112
(650) 632-4704
syoung@cov.com

*Counsel for Chang, et al. Plaintiffs*

**SPINELLI, DONALD & NOTT, P.C.**
J. SCOTT DONALD (SBN: 158338)
601 University Avenue, Suite 225
Sacramento, CA 95825
(916) 448-7888
scottd@sdnlaw.com

JEFFREY V. DUNN (SBN 131926)
jeffrey.dunn@bbklaw.com
CHRISTOPHER M. PISANO (SBN 192831
christopher.pisano@bbklaw.com
**BEST BEST & KRIEGER LLP**
500 Capitol Mall, Ste. 2500
Sacramento, CA 95814
Telephone: (916) 325-4000
Facsimile: (916) 325-4010

*Counsel for County of Siskiyou and Jeremiah Larue, i his official capacity as Sheriff*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL MATHIS, ET AL., | Case No. 2:22-cv-01378-KJM-AC |
| Plaintiffs, | **PARTIAL SETTLEMENT AGREEMENT AND COURT ORDER REGARDING TRAFFIC STOP AND LIENS ORDINANCE CLAIMS** |
| v. | |
| COUNTY OF SISKIYOU, ET AL., | |
| Defendants. | |

This Partial Settlement Agreement is made and entered into by and between Mai Nou Vang, Russell Mathis, Jordan Chong Moua, and Ying Susanna Va ("Plaintiffs"), and Siskiyou County and Sheriff Jeremiah LaRue, ("Defendants" or "County") (together, "Parties") and is approved and entered as a Court Order ("Agreement and Order").

## RECITALS

A.     In 2020 and 2021, Siskiyou County passed three ordinances relating to water usage: a water nuisance ordinance (Urgency Ordinance 20-13 and later Ordinance 20-15, codified at Siskiyou Cnty. Code §§ 3-13.701-3.13.703), a water extraction ordinance (Urgency Ordinance 21-07 and later Ordinance 21-13, formerly codified at Siskiyou County Code § 3.5-13.101 et seq.), and a water truck ordinance (Urgency Ordinance 21-08 and later Ordinance 21-14, formerly codified at Siskiyou County Code § 3-4.1501 et seq.) (collectively, "Water Ordinances").

B.     In 2020, the Board of Supervisors also adopted Ordinance No. 20-11 amending the Siskiyou County Code section 10-14.100 to increase the fines associated with cannabis cultivation. Ordinance No. 20-11 also permitted the County to issue real property liens to recover fines or penalties issued for violations under the same section. This added to the County's existing code section 1-5.13 (collectively, the "Lien Ordinances"). The property liens issued under these sections required approval by the Board of Supervisors at a public hearing. The last time the Board of Supervisors authorized new liens under section 10-14.100 was November 2, 2021.

C.     On June 4, 2021, several Asian-American plaintiffs (the "**Lo Plaintiffs**") filed a lawsuit against the Defendants alleging, amongst other things, racial discrimination stemming from traffic stops and the Water Ordinances. *See Lo et al. v. County of Siskiyou et al.*, No 2:21-cv-00999- KJM-AC (E.D. Cal.). Defendants denied the factual and legal claims Lo Plaintiffs alleged in their complaint and contended that the three ordinances were enacted

1
PARTIAL SETTLEMENT AGREEMENT AND COURT ORDER
Case No. 2:22-cv-01378-KJM-AC

and enforced to address widespread illegal cannabis cultivation and its effects on the health, safety and welfare of Siskiyou County's citizenry.

D.    On June 4, 2021, the Lo Plaintiffs filed a Preliminary Injunction Motion.  Lo Dkt. No. 4. The American Civil Liberties Union of Northern California ("ACLU") and Asian Law Caucus, Plaintiffs' counsel here, filed an amicus brief in support of the Lo Plaintiffs' motion for a Preliminary Injunction.  Lo Dkt. No. 42.

E.    On September 3, 2021, the Court ordered a preliminary injunction against the Defendants, enjoining the water truck and water extraction ordinances and denied a preliminary injunction as to the water nuisance ordinance.  Lo Dkt. No. 47.

F.    On February 18, 2022, Siskiyou County moved to dissolve the preliminary injunction. Lo Dkt. No. 57.  The ACLU and Asian Law Caucus, as amici, opposed dissolution.  Lo Dkt. No. 60.  On May 5, 2022, the Court denied Defendants' motion to dissolve the preliminary injunction.  Lo Dkt. No. 78.

G.    On August 3, 2022, Plaintiffs filed their Complaint in the action entitled *Chang v. Siskiyou County, et. al*, Case No. 2:22-cv-01378-KJM-AC, in the United States District Court for the Eastern District of California ("Action"), Dkt. No. 1, alleging that Defendants, amongst other things, discriminated against Asian Americans by engaging in unlawful and racially targeted traffic stops, imposing unlawful property liens to collect unpaid cannabis-related fines, and targeting Asian-Americans in the passage of the Water Ordinances.  Defendants deny the factual and legal claims Plaintiffs allege in this Action.

H.    On September 16, 2022, the Court ordered that the *Lo* matter and this Action are related.

I.    Beginning in November 2022, all Parties, including the Lo Plaintiffs, began engaging in good faith attempts to explore the possibility of a global settlement.

J.    On May 11, 2023, the Lo Plaintiffs reached settlement with the Defendants.  Lo Dkt. No. 105.

38036.00005\44321997.1

K.    On August 1, 2023, Defendant Siskiyou County repealed the water truck and water extraction ordinances and amended the water nuisance ordinance to add a *mens rea* requirement consistent with the terms of the settlement with the Lo Plaintiffs.

L.    The *Lo* matter was dismissed on September 12, 2023. Lo Dkt. No. 108.

M.    On December 5, 2023, Defendant Siskiyou County repealed the Lien Ordinances.

N.    On January 16, 2024, Defendant Siskiyou County, acting through its Board of Supervisors, directed the Clerk of the Board and Community Development Director to file Notices of Rescission of Lien for properties subject to lien for unpaid administrative fines and to recover unpaid administrative fines through other mechanisms available at law.  Thereafter, the Notices of Recession were recorded with the County Assessor-Recorder.

O.    On January 30, 2024, Defendants filed a Motion to Dismiss the Complaint. Action, Dkt. No. 46.

P.    On February 20, 2024, Plaintiffs filed the First Amended Complaint. Action, Dkt. No. 47.

Q.    On March 5, 2024, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint. Action, Dkt. No. 52.

R.    On August 8, 2024, Plaintiffs filed a motion for leave to file a supplemental complaint (Supplemental Complaint). Action, Dkt. No. 82.  The Supplemental Complaint alleged the County employed zoning ordinances in a racially discriminatory manner and put Plaintiffs in danger by depriving them of water needed for cooking, drinking, bathing and other uses. Defendants deny the factual and legal claims Plaintiffs allege in the supplemental complaint.

S.    On August 8, 2024, Plaintiffs also filed a motion for preliminary injunction to enjoin enforcement of the County's zoning code as described in the Supplemental Complaint and a motion for provisional class certification. Action, Dkt. Nos. 83 & 84.

T.    On August 21, 2024, the Court issued an Order denying Defendant's Motion to Dismiss

38036.00005\44321997.1

Plaintiffs' First Amended Complaint. Action, Dkt. No. 85.

U.    On October 25, 2024, the Court issued an Order 1) granting Plaintiffs leave to file the supplemental complaint, 2) denying (without prejudice) Plaintiff's motion for provisional class certification, and 3) granting, in part, Plaintiffs' motion for a preliminary injunction. Action, Dkt. No. 100.

V.    On December 18, 2024, the Court issued an order defining the scope of the preliminary injunction and requiring Plaintiffs to post security under Federal Rule of Civil Procedure 65(c).  Action, Dkt. No. 116.  Pursuant to the Court's order, Defendants were enjoined from enforcing Title 10, Chapter 6 of the Siskiyou County Code and any other law or regulation to prevent the transfer of water for Court defined necessities to residents of parcels in the Mount Shasta Vista Subdivision that lack a residential well or a municipal water source.

W.    On December 26, 2024, Plaintiffs filed a motion to modify the Court's order regarding posting security in the amount of $56,300 by January 1, 2025. Action, Dkt. No. 118.

X.    On January 28, 2025, the Court issued an order denying Plaintiffs' motion to modify and ordered the parties to show cause why the scope of the preliminary injunction should not be reduced to the parcels of plaintiffs Russell Mathis and Mai Nou Vang only. Action, Dkt. No. 130.

Y.    On February 18, 2025, the Court discharged its order to show cause, denied the motion to modify, and ordered Plaintiffs to post security under Federal Rule of Civil Procedure 65(c) by way of bond or cash in the amount of $56,300. Action, Dkt. No. 136.  Plaintiffs thereafter posted security.

Z.    On February 27, 2025, Plaintiffs and Defendants stipulated for the voluntary dismissal of Plaintiff Ger Chong Ze Chang, and thereafter the claims of Chang were dismissed without prejudice, with each party bearing his/its own fees and costs as to the claims of Chang.  Action, Dkt. Nos. 138-139.

38036.00005\44321997.1

AA.    On February 28, 2025, Plaintiffs filed the Second Amended Complaint, which among other things added Plaintiff Moua as a Plaintiff to this Action, and on March 14, 2025, Defendants filed an Answer to the Second Amended Complaint. Action, Dkt. Nos. 140-141.  The Second Amended Complaint and the Answer to same are the operative pleadings in this Action.

BB.    The Parties, through their counsel, have conferred in good faith and have negotiated the terms of this Partial Settlement Agreement to avoid the expense of continued litigation and for the benefit of Asian Americans in Siskiyou County.

### TERMS OF PARTIAL SETTLEMENT AGREEMENT AND COURT ORDER

NOW, THEREFORE, in consideration for the mutual promises, covenants, and conditions contained herein, the Parties hereby agree and the Court SO ORDERS and APPROVES as follows:

**1.**    **Jurisdiction**

This Court has jurisdiction over the allegations and subject matter of the Second Amended Complaint and has jurisdiction to approve, adopt by Court Order, and enforce the terms of this Partial Settlement Agreement. This Partial Settlement Agreement and Order shall fully and finally adjudicate the second, third, fourth, fifth, tenth, and eleventh claims, as well as the first and twelfth claims only insofar as they pertain to Plaintiffs Moua, Vang, and Va.

This Partial Settlement Agreement and Order shall have no impact on the claims in the operative Second Amended Complaint related to the enactment and enforcement of the Water Ordinances, and the enforcement of the Zoning Ordinance.  Specifically, the Parties expressly agree that this Partial Settlement Agreement does not relate to, and shall not affect, Plaintiffs' prosecution of, or Defendants' defense of, the sixth, seventh, eighth, ninth, twelfth (water claims only), thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth claim for relief, as well as the first claim for relief as it relates to Plaintiff Mathis, in the Second Amended Complaint (hereafter "Remaining Claims").

38036.00005\44321997.1

**2.     Effective Date and Duration**

The Parties agree to abide by the Partial Settlement Agreement upon all Parties having signed it and the Court having approved the settlement ("Effective Date"). Unless otherwise ordered or provided, the obligations incurred under this Partial Settlement Agreement and Order will extend and the Court shall retain jurisdiction to ensure compliance with the terms of the Partial Settlement Agreement and Order for four years after the appointment of an external auditor pursuant to section 5(a). This is without prejudice for the Defendants to seek early termination of external auditing requirements or Plaintiffs to seek extension based on noncompliance in accordance with the procedures outlined in sections 5(a) and 8 of the Agreement and Order.

**3.     Traffic Stop Policy**

The Siskiyou County Sheriff shall adopt for his department, no more than 30 days following the Effective Date, the Traffic Stop Policy attached herein as Addendum 1 and incorporated into this Agreement and Order.  The Traffic Stop Policy shall be binding and followed by the Sheriff and his department, including all personnel, and shall remain in place for the duration of this Settlement Agreement.  The Sheriff's Department shall have three months from the Effective Date of this Partial Settlement Agreement to complete training for its officers on the Traffic Stop Policy.

**4.     Property Liens and Individual Relief**

Defendants have dissolved and rescinded all liens previously imposed under the Liens Ordinances and have sent Plaintiffs documentation of same. For the duration of this Agreement, Defendants agree not to unlawfully impose real property liens for unpaid administrative fines and penalties outside of the judicial process, unless state law is amended to authorize such action.

The debts incurred by Plaintiffs Mai Nou Vang and Ying Susanna Va, which formed the basis for the liens in this case, will be forgiven. Plaintiff Jordan Moua shall receive a payment of

38036.00005\44321997.1

two-thousand dollars ($2,000) to be paid to his legal counsel for disbursement within 30 days of the Effective Date.  Defendants shall send to Plaintiffs documentation of their compliance with this paragraph within 45 days of the Effective Date.

**5.**     **External Auditor / Monitoring**

An external auditor shall be appointed to ensure proper implementation and compliance with the Traffic Stop Policy adopted pursuant to section 3 of this Partial Settlement Agreement. The external auditor shall not be appointed until such time as all the Remaining Claims in the Second Amended Complaint are resolved via a subsequent settlement agreement between the Parties, or are adjudicated by a District Court judgment.

a.        **Duration and Enforcement**

Unless otherwise ordered or provided, external auditing will occur for a period of four (4) years from the date an auditor is appointed. However, if the County achieves and maintains substantial compliance with the Traffic Stop Policy for two (2) consecutive years following appointment of the external auditor, it may seek early termination of external auditing requirements of this section on these grounds.

If the external auditor concludes that the County has been in "substantial compliance" with the Traffic Stop Policy for two (2) consecutive years, the Parties may seek a stipulated order terminating the external auditing requirements. If the Parties disagree as to whether the County has been in substantial compliance for two years, the County may file a motion to terminate the external auditing requirements. Plaintiffs' counsel will have the right to file a written response within 60 days of receiving the motion for early termination. The Parties agree to jointly seek a hearing on the motion, and the burden will be on the moving party to demonstrate by a preponderance of the evidence that the County is in substantial compliance with the Traffic Stop Policy and has maintained such compliance for at least two years.  In the event that the external auditing program is terminated due to substantial compliance with the Traffic Stop Policy, the County may implement a similar auditing program at the local level.

38036.00005\44321997.1

"Substantial Compliance" shall mean: adherence to the requirements of the Traffic Stop Policy adopted pursuant to this Agreement and Order and any remedial orders entered by the Court in the event of future non-compliance, in all material respects, recognizing that 100% compliance of the Traffic Stop Policy is not required. Non-systemic deviations from the requirements of the Traffic Stop Policy shall not prevent a finding of substantial compliance, provided that the Defendants demonstrate that they have:

(i) implemented a system for tracking compliance, as recommended by the external auditor, where appropriate and practical, and for taking corrective measures in accordance with the Traffic Stop Policy in response to instances of non-compliance, and

(ii) implemented policies, procedures, and practices, as recommended by the external auditor, that are capable of achieving durable and sustained compliance. Substantial compliance shall be assessed by the auditor in the first instance and shall govern all requirements for the agreement.

If during the term of the monitoring period Plaintiffs' counsel determines that the Defendants are not in compliance with the Traffic Stop Policy, they may document such non-compliance by notifying each of the External Auditor, the Sheriff's Office, and County Counsel of the alleged non-compliance. Any notification of alleged non-compliance will be in writing and will identify the specific act(s) of alleged non-compliance and the factual basis for any alleged non-compliance. Such notification will occur at no more than a bimonthly (*i.e.,* every two month) frequency, unless Plaintiffs' counsel identifies in writing exceptional circumstances requiring earlier action to be taken.

If notified of alleged non-compliance with the Traffic Stop Policy, the auditor must examine and make an initial determination of whether there has been actionable non-compliance within 45 days of notification, unless the Parties agree to extend this timeline. "Actionable non-compliance" is defined as any non-compliance that that the auditor deems could prevent a finding of Substantial Compliance.

38036.00005\44321997.1

If the external auditor is in agreement that there has been actionable non-compliance, or finds that Defendants are not in Substantial Compliance in the bi-annual report discussed in section 5(c), the external auditor will propose any corrective action that must be taken in order to correct the non-compliance.

If the Parties agree with the external auditor's findings and proposed corrective action, they will seek a stipulated court order adopting the proposed corrective action. If either Party disagrees with the auditor's determination regarding Substantial Compliance, actionable non-compliance, or the proposed corrective action, the Parties will first attempt to resolve any dispute informally by notification and conferral. If the Parties are unable to agree on a resolution of the dispute within 90 days of notification of the alleged non-compliance, the Party alleging non-compliance may, without further notice to the other, file a motion seeking judicial review and enforcement of the Settlement Agreement and Court Order pursuant to section 8 of this Agreement and Order. The other Party will have the right to file a written response, and the Parties agree to jointly seek a hearing on the motion unless they stipulate that the matter may be submitted on the filings.

**b.    Identification of an Auditor and Costs**

(i) Initial selection:

The Parties will endeavor to jointly select an external and independent auditor. Potential auditors will be identified subject to cost restraints imposed by agreement of the Parties, and each Party shall provide curriculum vitae and cost estimates for any candidates they propose to the opposing Party. This exchange shall occur within 90 days of the settlement or adjudication of all Remaining Claims, absent an agreement between the Parties in writing extending this time period.

In the event that the Parties are unable to reach an agreement regarding selection of the auditor, each Party will submit the names of up to two candidates or candidate teams, along with

38036.00005\44321997.1

resumes and cost proposals, to the Court, and the Court will select and appoint the auditor from among the qualified candidates/candidate teams.

(ii) Replacement

In the event that the auditor is no longer able to perform its functions, is removed, or is not extended by agreement of the parties, within 60 days thereof, the Parties will select and advise the Court of the selection of a replacement auditor, acceptable to both. If the Parties are unable to agree on an auditor or an alternative method of selection within 90 days of the auditor's incapacitation, each Party will submit the names of up to two candidates, or two teams of candidates, along with resumes and cost proposals, to the Court, and the Court will select and appoint the auditor from among the qualified candidates/candidate teams. The presumptive four (4) year period of external auditing will be tolled for the period required to appoint a new auditor.

(iii) Costs

The Defendants shall bear the cost of the external auditor. Such costs are not to exceed one-hundred and fifty thousand dollars ($150,000) per year. Following appointment of the auditor, the Parties and auditor will confer and reach agreement regarding the method and frequency of billing and payment for services performed under this Agreement and Order. Any disputes regarding payment may be resolved by the Court.

**c.    Duties and Scope**

The auditor shall be responsible for monitoring the Defendants' compliance with terms of the Traffic Stop Policy and will prepare and file public reports with the Court on a semi-annual basis. The auditor will be an agent of the Court and shall not be retained by any current or future litigant or claimant in a claim or suit against the County or its officers. The auditor may testify in court regarding any matter relating to the implementation, enforcement, or dissolution of this Agreement and Order.

(i) Provision of Records:

10
PARTIAL SETTLEMENT AGREEMENT AND COURT ORDER
Case No. 2:22-cv-01378-KJM-AC

All policies, training materials, and records relevant to determining compliance with the terms of the Traffic Stop Policy will be made available and provided to the auditor no less frequently than every two months. In the case of extenuating circumstances, however, the County may request an extension of time of up to a maximum of 30 days to provide the documents required to be produced. Such requests will be made to the auditor, copying Plaintiffs' counsel. Although the expectation is that the required documents will be produced no less frequently than every two months, requests for extensions of up to two weeks will be routinely granted as needed unless there is cause for denial.  For purposes of this Partial Settlement Agreement, cause for denial would include intentional actions to hinder or obstruct the auditor or Plaintiffs from performing their auditing and review functions pursuant to this Partial Settlement Agreement.  Requests of between 14 days and 30 days will be accompanied with a statement of the reason for the request and will not be unreasonably withheld. Notwithstanding anything else in this paragraph, if Plaintiffs assert that extensions of time are hindering the auditor or Plaintiffs from performing their auditing and review functions pursuant to this Partial Settlement Agreement, the Parties and auditor, if applicable, will meet and confer to attempt to resolve the issue informally. If no agreement is reached within 21 days of the request, the Parties agree to jointly seek an informal telephonic conference with the Court. If no informal conference is available, a Party seeking to enforce the Agreement and Order may file a motion for enforcement pursuant to section 8. If the auditor deems it necessary due to delays in production of documents, the time for producing the bi-annual report will be tolled for a period commensurate with the delay in production.

The auditor may make a request of the Sheriff's Department for specific records if they believe that additional, relevant materials have not been provided, and these materials will be provided within 30 days unless there is a dispute as to whether the requested records are relevant and disclosable.  In the case of a dispute regarding whether records should be disclosed, the parties will meet and confer with the auditor to attempt to resolve the issue informally. If no

11
PARTIAL SETTLEMENT AGREEMENT AND COURT ORDER
Case No. 2:22-cv-01378-KJM-AC

agreement is reached within 21 days of the request, the Parties agree to jointly seek an informal telephonic conference with the Court. If no informal conference is available, a Party seeking to enforce the Agreement and Order may file a motion for enforcement pursuant to section 8.

Plaintiffs' counsel will be entitled to the same records as the auditor, which will be subject to the terms of the Parties' existing stipulation and protective order (Dkt. Nos. 106 and 107) ("Protective Order"). By this Agreement and Order the Parties expressly agree that the auditor, once hired, will be deemed an additional person authorized to review Protected Materials designated by the County as "Confidential" or "Outside Counsels' Eyes Only Information" pursuant to Paragraph 6 of the Protective Order, as will any other member of the auditing team. Protected Materials may be used to monitor and assess whether Defendants are complying with the terms of this Agreement and to seek enforcement of this Agreement, if needed. Records to be provided include:

1. All new policies, notices and guidance/training materials relating to traffic enforcement and policies implemented pursuant to the Agreement and Order;

2. All vehicle stop related CAD reports;

3. Full RIPA stop data reports;

4. Body camera footage for all vehicle stops;

5. Dash camera footage for vehicle stops, if the Department vehicle was equipped with a dash camera device at the time of the stop;

6. Consent search documentation;

7. Summaries, anonymized as to complainant and subject identities, that are sufficient to document the Sheriff's Office's decision about whether to investigate and/or impose discipline for a public complaint related to traffic stops or alleged non-compliance with the Traffic Stop Policy adopted pursuant to this Agreement and Order, and the type of action taken. For the avoidance of doubt, this provision

38036.00005\44321997.1

1    applies to any internal findings or corrective action taken by the Department with

2    respect to the Traffic Stop Policy

3    (ii) Duties and Responsibilities

4    Within 90 days of assuming the duty of auditor, the auditor will develop a plan for

5    conducting reviews of the Sheriff's Office's implementation of the terms of the Traffic Stop

6    Policy. The auditor will submit this plan to the Parties for review and comment. The plan will

7    include proposed methodologies for conducting reviews for compliance with the Traffic Stop

8    Policy.

9    The auditor may maintain regular contact with the Parties between reporting periods to

10   ensure effective and timely communication regarding the status of the Sheriff's Office's

11   implementation of and compliance with this Traffic Stop Policy. The auditor may also make

12   recommendations to the Parties regarding measures necessary to ensure timely, full, and

13   effective implementation of this Traffic Stop Policy and its underlying objectives.

14   Once per reporting period, the auditor will conduct a community engagement or listening

15   session intended to permit community feedback regarding implementation of the Traffic Stop

16   Policy and community members' experiences of interactions during traffic stops. If the auditor

17   receives specific complaints from members of the public regarding compliance with the Traffic

18   Stop Policy during these sessions, the auditor may: 1. forward such information or complaints to

19   the Sheriff's Office for follow up, if the complainant consents to such disclosure; 2. forward such

20   information or complaints to Plaintiffs' counsel, if the complainant consents to such disclosure;

21   or 3. investigate matters raised by the complaint, if the complainant alleges credible allegations

22   relevant to determining substantial compliance with the Traffic Stop Policy.  If a complaint is

23   forwarded to the Sheriff's Office, the Sheriff's Office shall inform the auditor of any resulting

24   findings made public pursuant to Penal Code section 832.7(b). Otherwise, any resulting findings

25   and actions taken will be incorporated into the summaries described in section 5(c)(i)(7).

26

27   13

28   PARTIAL SETTLEMENT AGREEMENT AND COURT ORDER
     Case No. 2:22-cv-01378-KJM-AC

On a bi-annual basis (the "Reporting Period"), the auditor will prepare a written report detailing the level of compliance achieved and include an assessment of whether the Sheriff's Office is in Substantial Compliance with the Agreement and Order. The report shall be made available to the Parties in draft form at least 30 days prior to finalization of the report, to allow the Parties to comment on the report. The report should include:

1. A description of the work performed by the auditor during the reporting period;

2. Methodology and findings for each compliance review conducted. This will include, at minimum, review of written stop records and **a randomized sample** of body camera and/or dash camera footage, for the purpose of assessing the Sheriff's Office's compliance with the policies adopted pursuant to this Agreement and Order. The external auditor will determine the appropriate methodology to be used, including determining the appropriate randomized sample to be reviewed. Nothing in this section will be construed as preventing the auditor from making use of machine learning and/or digital tools for semi-automated review.

3. Summary and findings for any public complaints received regarding specific traffic stops or officers' conduct during such stops.

4. The report shall include a demographic breakdown of traffic stops by race and ethnicity.

5. The auditor's overall assessment of Sheriff's Office's progress in implementing the Agreement and Order, as well as specific findings regarding whether the Sheriff's Office is in Substantial Compliance with the Agreement and Order.

6. The auditor's recommendations regarding necessary steps to achieve or maintain Substantial Compliance.

The auditor's report may be filed on the public docket as necessary for any enforcement motions, and may also be provided to members of the public. If the report cites materials

38036.00005\44321997.1

provided pursuant to a protective order, it may be released to the public provided that it has been

redacted to preserve the anonymity of third-parties and to remove the information subject to

redaction under Local Rule 140.

If the auditor finds evidence of non-compliance with the policies that did not result in any

internal Sheriff's Office investigation, the auditor shall provide the Sheriff's Office and Parties

with notice of all such violations identified during the auditing process.

**6.    Retention and Access to Records**

For the duration of this Settlement Agreement and Order, Defendants shall retain, and

shall instruct their employees, contractors, and other agents, including members of the Sheriff's

Office, to preserve, all non-identical copies of records and other communications (including

electronically stored information) in their possession or control, that relate to Defendants'

performance of obligations under this Settlement Agreement. This includes records required to

be produced or made available under section 5(c) of this Agreement and Order.

Until such time as an external auditor is appointed pursuant to section 5 of this

Agreement and Court Order, Plaintiffs' counsel will receive the documents enumerated in

section 5(c) every two months. Once an external auditor is appointed, such records will be

provided to Plaintiffs' counsel at the same frequency as the auditor, pursuant to section 5(c).

With respect to records not specifically enumerated in section 5(c), Plaintiffs may request

documents or records required to be maintained under this Paragraph, provided that such

requests do not occur at a greater frequency than every two months absent extraordinary

circumstances.  Defendants shall provide copies of any documents or records required to be

maintained under this Paragraph within a reasonable time not to exceed 30 days from the request,

although such records may be provided pursuant to a protective order to the extent necessary to

comply with other legal obligations.  The Parties agree that the provision of records pursuant to

this section shall not be considered to be a request pursuant to the California Public Records Act

(Govt. Code section 7920.000, et seq.) for purposes including but not limited to the time limits

for responding and the independent basis for requesting attorneys' fees for failing to comply with the California Public Records Act. Plaintiffs agree that records covered by this Partial Settlement Agreement and intended for purposes of monitoring or compliance of the Partial Settlement Agreement will be requested solely pursuant to the terms and conditions of this Partial Settlement Agreement.  To the extent that records are withheld on a claim of attorney-client privilege or on another state law basis, such objection will be identified in writing to all Parties.

The pending Public Records Act requests submitted by the ACLU of Northern California and Asian Law Caucus on October 11, 2021, May 31, 2022, August 12, 2022, December 7, 2022, May 10, 2023, May 16, 2023, and July 19, 2023, are hereby withdrawn.

**7.    Dispute Resolution**

It is the intent of the Parties that any disputes concerning the interpretation or implementation of this Partial Settlement Agreement and Court Order be solved as swiftly and inexpensively as possible, initially through communication among counsel for the Parties, and, in the event such communication does not result in resolution, submission of the dispute for prompt adjudication by the Court.  Aside from disputes arising from compliance with the Traffic Stop Policy following the appointment of the external auditor, which has specific protocols as outlined in section 5, this dispute resolution controls. For the avoidance of doubt, this section controls any dispute regarding compliance with the Traffic Stop Policy before an external auditor is appointed pursuant to section 5, and during any period where the auditor is incapacitated pending appointment of a replacement.

If any Party believes that another Party is in violation of this Partial Settlement Agreement and Order (a "Dispute"), counsel of record for that Party shall promptly provide a written Notice of Dispute to counsel of record for the other Party, setting forth the Dispute in reasonable detail.  Counsel for the other Party shall be required to respond to the Notice of Dispute within ten business days.  If the Parties are unable to resolve the Dispute through informal meet and confer efforts within ten business days following the response to the Notice of

38036.00005\44321997.1

Dispute, the Party that served the Notice of Dispute may petition the Court for resolution of the Dispute, according to such procedures as the Court may direct.

**8.**    **Continued Jurisdiction, Referral, and Enforcement**

The Court will retain jurisdiction over all disputes between and among the Parties arising out of this Partial Settlement Agreement and Court Order.

The Court shall have the power to enforce the terms of this Partial Settlement Agreement through any remedy permitted by law or equity, including contempt or extension of the term of the Partial Settlement Agreement and Court's jurisdiction. Other sanctions short of contempt may include, but are not limited to, additional oversight, further restrictions on agency activities, or additional training or reporting requirements. Attorneys' fees are covered by separate provisions of this Partial Settlement Agreement, labeled "Monitoring Fees and Costs" (section 16), and "Attorneys' Fees and Costs for Completed Litigation of Traffic and Lien Claims" (section 17).

Any motion or action to enforce this Partial Settlement Agreement and Court Order will be brought within one year of the occurrence of any alleged non-compliance, and it shall be the movant's burden to prove a violation of the Partial Settlement Agreement and Order by a preponderance of the evidence.

With agreement of the Parties, the matter is referred to Magistrate Judge Allison Claire, including for all disputes arising out of this Partial Settlement Agreement and Order.

**9.**    **Authorization**

Each individual or entity that executes this Partial Settlement Agreement represents and warrants, in their personal capacity, that they are duly authorized and empowered to enter into this Agreement on behalf of themselves or the Party they purport to represent.

**10.**    **Integration**

This Partial Settlement Agreement embodies the entire understanding and agreement between the Parties with respect to the matters referred to herein. It supersedes any and all other

38036.00005\44321997.1

agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the parties to the same. No other representations, covenants, undertakings or other prior or contemporaneous agreements, oral or written, respecting such matters, which are not specifically incorporated herein, shall be deemed in any way to exist or to bind any of the Parties. Each of the Parties acknowledges that they have not executed this Agreement in reliance on any such promise, representation, or warranty.

**11.    Modification**

This Partial Settlement Agreement may not be modified except by a writing executed by each Party and the Court.

**12.    Counterparts**

This Partial Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures and signatures in PDF format transmitted by email shall be deemed originals.

**13.    Notices**

Unless otherwise specified, any notices provided by this Agreement shall be sent to the following addresses by certified mail, return receipt requested unless otherwise designated in writing by the party to receive the notice or request.

(a)    If to Plaintiffs:

ACLU of Northern California

ATTN: Emi Young and Avram Frey

39 Drumm Street

San Francisco, CA 94111

(b)    If to Defendants:

Best Best & Krieger LLP

Attn: Christopher Pisano and Elise Rice

18
PARTIAL SETTLEMENT AGREEMENT AND COURT ORDER
Case No. 2:22-cv-01378-KJM-AC

38036.00005\44321997.1

500 Capitol Mall, Ste. 2500

Sacramento, CA 95814

As of the Effective Date of this Partial Settlement Agreement, the Parties stipulate that notice may be provided via email to the following individuals at the following email addresses:

(a)    If to Plaintiffs:

Emi Young <Emi.Young@aclunc.org>

Avram Frey <AFrey@aclunc.org>

Megan Vees <meganv@asianlawcaucus.org>

Stanley Young <syoung@cov.com>

(b)    If to Defendants:

Natalie Reed, Siskiyou County Counsel <nreed@co.siskiyou.ca.us>

Christopher Pisano <Christopher.Pisano@bbklaw.com>

Elise Rice <Elise.Rice@bbklaw.com>

James Ross <jross@publiclawgroup.com>

Plaintiffs or Defendants may withdraw their consent to notice via email at any time.  Further, Plaintiffs or Defendants may modify the location, individuals, or email addresses of the individuals identified in this section by providing notice to the other Party and without a modification of this Partial Settlement Agreement.

**14.    Attachments**

The Traffic Stop Policy is attached and part of this Partial Settlement Agreement and Order.

**15.    Compliance with Law**

The Parties acknowledge that the subjects covered by this Partial Settlement Agreement and Court Order may be impacted by legislative or regulatory changes or judicial decisions. Nothing in this Partial Settlement Agreement and Court Order shall be construed to require Defendants to violate an applicable law or to take action that contravenes any such change in the

19
PARTIAL SETTLEMENT AGREEMENT AND COURT ORDER
Case No. 2:22-cv-01378-KJM-AC

38036.00005\44321997.1

law. Moreover, nothing in this Partial Settlement Agreement and Court Order shall be construed to restrict Defendants from changing any of their policies as required by any such legislative or regulatory changes or judicial decisions. Defendants may change any of their policies as permitted by any future binding judicial decisions, or any legislative or regulatory change, provided such change does not conflict with or violate any other terms of this Partial Settlement Agreement, including the Traffic Stop Policy adopted pursuant to Section 3.

16.    **Monitoring Fees and Costs**

The Parties acknowledge that Plaintiffs' counsel will incur attorneys' fees and costs for monitoring this agreement during the term of this Partial Settlement Agreement and Court Order, including prior to appointment of an independent external auditor, and may incur fees and costs for bringing any necessary enforcement actions pursuant to section 8.

The parties agree that at any point during the term of this Partial Settlement Agreement and Court Order, if Plaintiffs' counsel brings and prevails on a motion to enforce brought pursuant to section 8, Plaintiffs' counsel may file a motion for attorneys' fees and costs and the District Court shall award all reasonable and necessary attorneys' fees and costs in accordance with applicable law, provided that such award does not exceed $40,000, for any individual motion to enforce.

The parties further agree that prior to appointment of the External Auditor, but after the Court's entry of this Partial Settlement Agreement as a Court Order, Plaintiffs' counsel shall submit on an annual basis an application for attorneys' fees and costs to Defendants to cover their reasonable fees and costs spent monitoring the Partial Settlement Agreement and Court Order, provided, however, that Plaintiffs' counsel will not bill for more than two attorneys and one investigator on any matter and that their blended hourly rate shall not exceed $400 per hour. The Parties further agree that Plaintiffs' recovery for reasonable attorneys' fees and costs for monitoring shall be capped at $50,000 per year. Payment will be made within 120 days from receipt of the application, unless there is a dispute requiring Court intervention as discussed later

38036.00005\44321997.1

in this section. Monitoring fees and costs are distinct from any fees and costs incurred for a motion to enforce, and each is subject to a separate and independent cap under this Agreement.

The parties further agree that upon the commencement of External Auditing, Plaintiffs' counsel shall submit, on a semi-annual basis, applications for attorneys' fees and costs to Defendants to cover their reasonable fees and costs spent monitoring the Partial Settlement Agreement and Court Order during the term of external auditing, provided, however, that Plaintiffs' counsel will not bill for more than two attorneys and one investigator on any matter and that their blended hourly rate shall not exceed $400 per hour.  The Parties further agree that Defendants' total financial liability for External Auditing and monitoring by Plaintiffs' counsel shall not exceed $150,000 per year. Plaintiffs' counsel's recovery of reasonable attorneys' fees and costs for monitoring is accordingly limited to the difference between $150,000 and the auditor's costs and fees for that year.  Defendants may defer any payment until 90 days after the total auditor's costs and fees have been calculated for that year.

In the event there is a dispute regarding the applications for attorneys' fees, the Parties will negotiate in good faith to attempt to resolve the issue. Time spent on these applications will also be recoverable. In the event that the parties are unable to agree on the issue, Plaintiffs' counsel may bring an action before the District Court through a motion for attorneys' fees and costs and the District Court shall award all reasonable and necessary attorneys' fees and costs incurred by Class Counsel in accordance with applicable law.

**17.**    **Attorneys' Fees and Costs for Completed Litigation of Traffic and Lien Claims**

The Parties agree that Defendants shall pay Plaintiffs' counsel the total sum of $ 350,000 in attorneys' fees and costs associated with Plaintiffs' counsel's prosecution of this Action, except for the Remaining Claims.  The payment of attorneys' fees and costs pursuant this section is intended to cover all recoverable attorneys' fees and costs pursuant to 42 U.S.C. section 1988, California Code of Civil Procedure section 1021.5, or any other applicable provision of law, except for attorneys' fees and costs incurred in prosecuting the Remaining Claims.  Defendants

38036.00005\44321997.1

1   shall provide Plaintiffs' counsel this amount within 120 days of the Effective Date.

2

3   **IN WITNESS WHEREOF,** the Parties hereby enter into this Partial Settlement Agreement.

4                                                          **Plaintiffs**

5

6   Date: _____        _____

7                                                          Mai Nou Vang

8

9

10  Date: _____        _____

11                                                         Ying Susanna Va

12

13  Date: _____        _____

14                                                         Jordan Moua

15

16  Date: _____        _____

17                                                         Russell Mathis

18

19

20

21

22

23

24

25

26

27                                          22
                           PARTIAL SETTLEMENT AGREEMENT AND COURT ORDER
28                            Case No. 2:22-cv-01378-KJM-AC

38036.00005\44321997.1

1

2

3     **Defendants**

4

5     Date: _____          Siskiyou County

6

7

8                                            _____
                                             Angela Davis (CAO) on behalf of the County
9                                            of Siskiyou pursuant to authorization by the
                                             Siskiyou County Board of Supervisors
10

11

12                                           _____
                                             Sheriff Jeremiah LaRue, in his official
13                                           capacity

14                                           _____

15

16

17

18    **IT IS SO ORDERED.**

19    DATED:  December 23, 2025.

20

21                                           _____
                                             UNITED STATES DISTRICT JUDGE
22

23

24

25

26

27                                    23
                      PARTIAL SETTLEMENT AGREEMENT AND COURT ORDER
28                            Case No. 2:22-cv-01378-KJM-AC

38036.00005\44321997.1