**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA**
JOHN THOMAS H. DO (SBN 285075)
jdo@aclunc.org
EMI YOUNG (SBN 311238)
eyoung@aclunc.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
Facsimile: (415) 255-8437

**ASIAN LAW CAUCUS**
MEGAN VEES (SBN 325184)
meganv@asianlawcaucus.org
55 Columbus Avenue
San Francisco, CA 94111
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

**COVINGTON & BURLING LLP**
STANLEY YOUNG (SBN 121180)
syoung@cov.com
3000 El Camino Real, 5 Palo Alto Square, 10th Flr.
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

*Counsel for Plaintiffs Mathis, et al.*
*(additional counsel for Plaintiffs Mathis, et al.*
*listed on next page)*

**SPINELLI, DONALD & NOTT, P.C.**
J. SCOTT DONALD (SBN 158338)
scottd@sdnlaw.com
300 University Avenue, Suite 100
Sacramento, CA 95825
Telephone: (916) 448-7888

**BEST BEST & KRIEGER LLP**
JEFFREY V. DUNN (SBN 131926)
jeffrey.dunn@bbklaw.com
CHRISTOPHER M. PISANO (SBN 192831
christopher.pisano@bbklaw.com
500 Capitol Mall, Ste. 2500
Sacramento, CA 95814
Telephone: (916) 325-4000
Facsimile: (916) 235-4010

*Counsel for Defendants County of Siskiyou*
*and Jeremiah Larue, in his official capacity*
*as Sheriff*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUSSELL MATHIS, JORDAN CHONG MOUA, YING SUSANNA VA, MAI NOU VANG,** and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>**COUNTY OF SISKIYOU** and **JEREMIAH LARUE**, in his official capacity as Sheriff,<br><br>    Defendants. | CASE NO.: 2:22-cv-01378-TLN-AC<br><br>JOINT MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT AND ISSUING STIPULATED JUDGMENT AND INJUNCTION; ORDER |

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA**
AVRAM FREY (SBN 347885)
39 Drumm Street
GRAYCE ZELPHIN (SBN 279112)
gzelphin@aclunc.org
San Francisco, CA 94111
(415) 293-6333

**ASIAN LAW CAUCUS**
WINIFRED KAO (SBN 241473)
winifredk@asianlawcaucus.org
55 Columbus Avenue
San Francisco, CA 94111
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

**COVINGTON & BURLING LLP**
CONNOR KENNEDY (SBN 354542)
ckennedy@cov.com
3000 El Camino Real
5 Palo Alto Square, 10th Flr.
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

HAKEEM S. RIZK (SBN 326438)
hrizk@cov.com
DANIEL ESSES (SBN 340193)
desses@cov.com
ELLEN CHOI (SBN 326291)
echoi@cov.com
Salesforce Tower, 415 Mission St., Suite 5400
San Francisco, CA 94104-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

*Counsel for Plaintiffs Mathis, et al.*

I.    Introduction

Plaintiff Russell Mathis ("Plaintiff") and Defendants Siskiyou County and Sheriff Jeremiah LaRue ("Defendants," and collectively with "Plaintiff," the "Parties") hereby file this joint stipulated motion to: (1) approve their Settlement Agreement ("Agreement"), (2) enter it as a Stipulated Judgment and Injunction, with jurisdiction retained by this Court to enforce its terms, and (3) dismiss all remaining claims pursuant to the terms of the Agreement. A [Proposed] Order addressing these actions is enclosed herewith. As discussed in section II, *infra*, this Agreement is intended to resolve the remaining claims in this case and reaffirm the Court's continued jurisdiction, but it does not affect or modify the Partial Settlement Agreement and Court Order previously entered as to the other named plaintiffs' distinct claims. Dkt. No. 197.

II.    Relevant Procedural History and Background

On August 3, 2022, Plaintiffs filed a class action Complaint in this Matter, Dkt. No. 1, alleging *inter alia* that Defendants discriminated against Asian Americans by engaging in unlawful and racially targeted traffic stops ("Traffic Claims"), imposing unlawful property liens to collect unpaid fines ("Liens Claims"), and targeting Asian-Americans in the passage of three water ordinances between 2020 and 2021 ("Water Ordinance Claims"). The three water ordinances underlying the Water Ordinance Claims were: a "Water Nuisance Ordinance," originally adopted by Ord. 20-15, which made it a strict liability violation for well owners to provide any water that was ultimately shown to be used for cannabis cultivation; a "Water Truck Ordinance," Ord. 21-13, which regulated the hauling of water on certain County roads identified by resolution; and a "Water Extraction Ordinance," Ord. 21-14, which regulated all extraction of groundwater for off-parcel use (collectively, "Water Ordinances"). Plaintiffs alleged that Defendants' Water Ordinances were racially motivated and had the effect of depriving Asian Americans of trucked water for all purposes, notwithstanding their existing reliance on such water to meet their domestic needs. They sought injunctive and declaratory relief, as well as attorneys' fees and costs. Defendants deny the factual and legal claims Plaintiffs allege in this Matter.

On September 16, 2022, the Court ordered that this case and another earlier lawsuit filed by a group of individual plaintiffs, *Lo et al. v. County of Siskiyou et al.*, No 2:21-cv-00999- KJM-AC (E.D.

Cal.) ("Lo"), were related. Dkt. No. 9. In November of 2022, all Parties (including Lo plaintiffs) began engaging in settlement discussions; all Parties agreed to a series of stays to facilitate these discussions. Dkt. Nos. 16, 19, 24, 29, 32, 35, 38, 43. Those negotiations resulted in a settlement of the Lo case, pursuant to which the County repealed the Water Trucking and Extraction Ordinances and amended the Water Nuisance Ordinance to add a *mens rea* requirement.

In December of 2023, shortly before resuming litigation, the County repealed an ordinance and rescinded the liens underlying Plaintiffs' Liens Claims. Plaintiffs filed a First Amended Complaint (FAC) and Defendants filed a Motion to Dismiss the FAC. Dkt. No. 47, 52. The Court later denied this Motion in its entirety. Dkt. No. 85.

On August 8, 2024, Plaintiffs filed a motion for leave to file a Supplemental Complaint. Dkt. No. 82. The Supplemental Complaint alleged that the County had adopted a new and arbitrary interpretation of its Zoning Ordinances to restrict the off-parcel distribution of water, that it had adopted this interpretation with racially discriminatory intent and effect, and that enforcement of this interpretation put Plaintiff Mathis and others similarly situated in danger by depriving them of water needed for health, hygiene, bathing, cooking, caring for livestock and other uses ("Zoning Claims"). Defendants deny the factual and legal claims alleged by Plaintiffs in the Supplemental Complaint. Plaintiffs later filed a Second Amended Complaint ("SAC") consolidating the FAC and the Supplemental Complaint. The SAC and Defendants' answer to the same are the operative pleadings in this matter. Dkt. No. 140-141.

Also on August 8, 2024, Plaintiffs filed a motion for preliminary injunction to enjoin enforcement of the County's Zoning Ordinances as described in the Supplemental Complaint as well as use of any other law or regulation to restrict the transfer of water for domestic use. Plaintiffs concurrently moved for provisional class certification. Dkt. Nos. 83 & 84. On October 25, 2024, the Court issued an Order 1) granting Plaintiffs leave to file the Supplemental Complaint, 2) denying (without prejudice) Plaintiffs' motion for provisional class certification, and 3) granting, in part, Plaintiffs' motion for a preliminary injunction. Dkt. No. 100. Thereafter, the Court issued an order defining the scope of the preliminary injunction and requiring Plaintiffs to post security under Federal Rule of Civil Procedure 65(c). Dkt. No. 116. Pursuant to the Court's order, Defendants were "enjoined

from enforcing Title 10, Chapter 6 of the Siskiyou County Code and any other law or regulation to prevent the transfer of water, for the purposes [specified in the following paragraph] to residents of parcels in the Mount Shasta Vista Subdivision that lack a residential well or a municipal water source..." *Id*.

On July 15, 2025, while fact discovery was ongoing, Defendants filed a motion for summary judgement ("MSJ") on some of Plaintiffs' Water Ordinance and Zoning Claims. Dkt. No. 156. The Court denied the MSJ on November 4, 2025. Dkt. No. 188.

On August 21, 2025, while litigation of the MSJ was ongoing, the Parties held a Settlement Conference with Magistrate Judge Claire. The case did not settle at the Settlement Conference, although the Parties agreed to continue settlement discussions while litigation continued. Dkt. No. 173.

On November 11, 2025, the Parties filed a joint stipulation for entry of a proposed Partial Settlement Agreement and Court Order. Dkt. Nos. 190, 190-1. The Partial Settlement Agreement proposed to finally resolve Plaintiffs' Traffic and Liens Claims, including all claims as to Plaintiffs Moua, Vang, and Va.  On December 29, 2025, the Court entered the Partial Settlement Agreement as a Court Order, with jurisdiction retained to oversee and enforce its terms. Dkt. No. 197.

Following entry of the order denying Defendants' MSJ, the Parties continued to engage in aszdiscovery practice and resumed settlement discussions as to the remaining Water Ordinance and Zoning Claims, ultimately executing the present Agreement on June 29, 2026. The Agreement is attached as Exhibit A hereto.

This Agreement, and the dismissal of all remaining claims to Plaintiffs' SAC, is contingent upon this Court (1) approving and entering the Agreement as a Stipulated Judgment and Injunction, and (2) retaining jurisdiction over the Parties and the action to resolve any motions to enforce or extend the duration of the Injunction.

In general terms, the Agreement retains the core protections of the preliminary injunction for residents of Mount Shasta Vista subdivision who lack a residential well or municipal water system for a prescribed period of time with the possibility of extensions. However, it creates an exception to allow the County to use its Zoning Ordinances to regulate certain high-intensity activity within rural-

residential and agricultural zoning districts.  Similar to the preliminary injunction, the Agreement limits the protection of the injunction for only enumerated "Protected Purposes" as defined in the Agreement. The Stipulated Judgment and Injunction would remain in place for a base period of five years, with possibilities for extension based on enumerated conditions. The Parties' intent is to provide protection for existing water hauling that supports necessary domestic water uses (other than human ingestion) while the residents of this community attempt to form a permanent public water system. Consistent with this end, the Agreement also contains language requiring Defendants to not disparage community efforts to establish long-term water solutions, including for potable drinking water. The Agreement contains a modest payment to Plaintiff Mathis, intended as a "service award," and protections to prevent retaliatory action based on information obtained about him throughout the course of this litigation. Finally, the Agreement provides for payment of Plaintiff's attorney fees and costs in an amount of $650,000. This amount primarily compensates *pro bono* counsel for litigation expenses advanced on behalf of plaintiffs in this matter, and represents only a small fraction of recoverable fees incurred over four years of litigation.

The Parties jointly submit that the Agreement and Proposed Stipulated Injunction constitute an appropriate resolution of the remaining Water Ordinance and Zoning Claims that is in the best interest of the public and the Parties, and that the Agreement was negotiated in good faith and with full adversarial vigor on both sides.

III.     Argument

The Court should approve an injunction stipulated to by the parties as part of a settlement agreement so long as the proposed injunction is fundamentally fair, adequate, reasonable, and lawful. *Fed. Trade Comm'n v. Enforma Nat. Prod., Inc.*, 362 F.3d 1204, 1218 (9th Cir. 2004) (noting that standard for review of proposed stipulated injunctions pursuant to settlement is the same as that for review of consent decrees); *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (describing standard for review of consent decrees). The Court's review is informed by the public policy favoring settlement. *See Dep't of Toxic Substance Control v. Technichem, Inc.*, No. C 12-5485 CRB, 2013 WL

3856386, at *2 (N.D. Cal. July 24, 2013) (citing *United States v. Communidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000)).

In applying this standard, "a court examines both procedural and substantive fairness." *Id.* (citing *United States v. Cannons Eng'g Corp.,* 899 F.2d 79, 86 (1st Cir. 1990)). "A court typically first examines procedural fairness, and makes a determination as to whether the negotiation process was 'fair and full of adversarial vigor.'" *Id.* (citing *United States v. Telluride Co.,* 849 F.Supp. 1400, 1402 (D.Colo.1994).) As for substantive fairness, the relevant question is not whether the "settlement is one which the court itself might have fashioned, or considers ideal." *Cannons,* 899 F.2d at 84. Instead, "[t]he court need only be satisfied that the decree represents a reasonable factual and legal determination." *Oregon*, 913 F.2d at 581.

Here, the Parties have reached the Agreement through a process that was conducted at arms-length and with adversarial vigor; as the procedural history of this case illustrates, there have been repeated unsuccessful settlement negotiations over the course of years, interspersed with significant motion and discovery practice. Furthermore, the Agreement includes a Stipulated Injunction that largely mirrors the protections this Court granted in issuing a preliminary injunction, which itself was the subject of extensive litigation. The modest changes to allow the County to use its zoning ordinance to regulate certain high-intensity activity are intended to address what Plaintiff recognizes might properly be regulated by the zoning code and the public interest factors that might be considered in issuing any permanent injunction.

Finally, whether the Court should conduct any specific analysis to approve settlement of a putative class action before certification is unsettled. *Cf. Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) (discussing test for approval of settlement of putative class action); *Dougan v. Centerplate, Inc.,* 706 F. Supp. 3d 1025, 1030 (S.D. Cal. 2023) (finding subsequent amendments to Rule 23 rendered *Diaz* analysis unnecessary while noting some courts continue to apply test). If the Court decides to conduct a *Diaz* analysis, it is clear that "the court does not need to perform the kind of substantive oversight required when reviewing a settlement binding upon the class." *Diaz,* 876 F.2d at 1408. The relevant factors for consideration are:

possible prejudice from (1) class members' possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances, (2) lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations, (3) any settlement or concession of class interests made by the class representative or counsel in order to further their own interests.

*Id.* "The central purpose of this inquiry is to determine whether the proposed settlement and dismissal are tainted by collusion or will prejudice absent putative members." *Lyons v. Bank of Am., NA*, 2012 WL 5940846, at *1 (N.D. Cal. Nov. 27, 2012) (internal citation omitted).

For the reasons stated above, there is no concern regarding collusion or concession of class interests under the Agreement. There is a significant record of adversarial litigation preceding this Agreement, and it retains protections for necessary water supply that extend beyond Plaintiff Mathis. Moreover, this case did not allege damages claims on behalf of the putative water class and therefore does not trigger any related concerns regarding prejudice to class members from reliance on this litigation. Accordingly, under the *Diaz* factors, the Agreement should be approved.

IV.    Conclusion

For the foregoing reasons, the Court should approve the Agreement and enter it as a Stipulated Judgment and Injunction.

DATE: June 29, 2026

By:    /s/ Emi Young
EMI YOUNG
JOHN THOMAS H. DO
GRAYCE ZELPHIN
AVRAM FREY
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA**

/s/ Megan Vees (authorized on 6/25/26)
MEGAN VEES
WINIFRED KAO
**ASIAN LAW CAUCUS**

/s/ Stanley Young (authorized on 6/25/26)
STANLEY YOUNG
HAKEEM RIZK
ELLEN CHOI
DANIEL ESSES
CONNOR KENNEDY
**COVINGTON & BURLING LLP**

*Counsel for Plaintiff Mathis*


/s/ Christopher M. Pisano (authorized on 6/29/26)
JEFFREY V. DUNN
CHRISTOPHER M. PISANO
**BEST BEST & KRIEGER LLP**


/s/ J. Scott Donald (authorized on 6/29/26)
J. SCOTT DONALD
**SPINELLI, DONALD & NOTT, P.C.**

*Counsel for Defendants County of Siskiyou and
Jeremiah LaRue, in his official capacity*

# ORDER

Whereas all Parties remaining in this case, namely Plaintiff Russell Mathis and Defendants Siskiyou County and Sheriff Jeremiah LaRue in his official capacity, have entered into a proposed Settlement Agreement ("Agreement") which is attached hereto as Exhibit A;

Whereas it appears to this Court that the Agreement is fundamentally fair, adequate, reasonable, and lawful, and does not prejudice the interests of putative class members; and

Whereas the Agreement provides, *inter alia*, that upon final approval of the Agreement, the Parties will dismiss all pending claims in this Court, the Agreement will be entered as a Stipulated Judgment of this Court, and that this Court will retain jurisdiction to enforce the Judgment;

Now therefore, it is hereby ORDERED, JUDGED, and DECREED as follows:

1. The Agreement is approved and entered as the Judgment of this Court.

2. In light of the Stipulated Judgment and Injunction issued herein, the preliminary injunction, Dkt. No. 116, is dissolved and the bond previously posted pursuant to Dkt. No. 136 in the amount of $56,300 is exonerated. The Clerk is directed to return the bond in its entirety to Covington Burling LLP, with attention to Stanley Young, at 3000 El Camino Real, 5 Palo Alto Square, Suite 1000, Palo Alto, CA 94306.

3. The Court shall retain jurisdiction to enforce the Agreement and Stipulated Judgment.

4. Judgment is hereby entered dismissing all individual claims with prejudice. Class claims are also dismissed, but without prejudice.

5. This Order shall not affect or modify the Partial Settlement Agreement and Court Order previously entered at Dkt. No. 197, for which the Court retained jurisdiction.

IT IS SO ORDERED.

Dated: June 30, 2026

_____
Troy L. Nunley
Chief United States District Judge

Exhibit A

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA**
JOHN THOMAS H. DO (SBN 285075)
jdo@aclunc.org
EMI YOUNG (SBN 311238)
eyoung@aclunc.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
Facsimile: (415) 255-8437

**ASIAN LAW CAUCUS**
MEGAN VEES (SBN 325184)
meganv@asianlawcaucus.org
55 Columbus Avenue
San Francisco, CA 94111
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

**COVINGTON & BURLING LLP**
STANLEY YOUNG (SBN 121180)
syoung@cov.com
3000 El Camino Real, 5 Palo Alto Square, 10th Flr.
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

*Counsel for Plaintiffs Mathis, et al.*
*(additional counsel for Plaintiffs Mathis, et al.*
*listed on next page)*

**SPINELLI, DONALD & NOTT, P.C.**
J. SCOTT DONALD (SBN 158338)
scottd@sdnlaw.com
300 University Avenue, Suite 100
Sacramento, CA 95825
Telephone: (916) 448-7888

**BEST BEST & KRIEGER LLP**
JEFFREY V. DUNN (SBN 131926)
jeffrey.dunn@bbklaw.com
CHRISTOPHER M. PISANO (SBN 192831
christopher.pisano@bbklaw.com
500 Capitol Mall, Ste. 2500
Sacramento, CA 95814
Telephone: (916) 325-4000
Facsimile: (916) 235-4010

*Counsel for Defendants County of Siskiyou*
*and Jeremiah Larue, in his official capacity*
*as Sheriff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUSSELL MATHIS, JORDAN CHONG MOUA, YING SUSANNA VA, MAI NOU VANG,** and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>**COUNTY OF SISKIYOU** and **JEREMIAH LARUE**, in his official capacity as Sheriff,<br><br>    Defendants. | CASE NO.: 2:22-cv-01378-TLN-AC<br><br><br>SETTLEMENT AGREEMENT OF REMAINING CLAIMS |

38036.00005\44915419.4

**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION OF NORTHERN**
**CALIFORNIA**
AVRAM FREY (SBN 347885)
39 Drumm Street
GRAYCE ZELPHIN (SBN 279112)
gzelphin@aclunc.org
San Francisco, CA 94111
(415) 293-6333

**ASIAN LAW CAUCUS**
WINIFRED KAO (SBN 241473)
winifredk@asianlawcaucus.org
55 Columbus Avenue
San Francisco, CA 94111
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

**COVINGTON & BURLING LLP**
CONNOR KENNEDY (SBN 354542)
ckennedy@cov.com
3000 El Camino Real
5 Palo Alto Square, 10th Flr.
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

HAKEEM S. RIZK (SBN 326438)
hrizk@cov.com
DANIEL ESSES (SBN 340193)
desses@cov.com
ELLEN CHOI (SBN 326291)
echoi@cov.com
Salesforce Tower, 415 Mission St., Suite 5400
San Francisco, CA 94104-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

*Counsel for Plaintiffs Mathis, et al.*

This Settlement Agreement ("Agreement") is made and entered into by and between Plaintiff Russell Mathis ("Plaintiff") and Siskiyou County and Sheriff Jeremiah LaRue ("Defendants") (collectively "Parties") to resolve the Remaining Claims in *Russell Mathis, et al. v. County of Siskiyou, et al.*, 2:22-cv-01378-TLN-AC ("the Matter"). It is the Parties' intent and understanding that this Agreement will be adopted and entered by the District Court as a Stipulated Judgment and Injunction with jurisdiction retained to enforce its terms.

### DEFINITIONS

1.      As used herein, "County" shall mean the County of Siskiyou, as well as its officers, employees, representatives, assigns, and agents, and "Sheriff" shall mean the Sheriff of Siskiyou County in his official capacity as well as the Siskiyou County Sheriff's Department, its officers, employees, representatives, assigns, and agents. These entities are referred to collectively as "Defendants."

2.      "Zoning Ordinances" shall mean the County's zoning codes, as codified at Title 10, Chapter 6 of the County Code.

3.      "Water Nuisance Ordinance" shall mean Siskiyou County Ord. 20-15 as later amended by Ord. 23-08, codified at Siskiyou County Code sections 3-13.701-3.13.703.

4.      "Water Truck Ordinance" shall mean Siskiyou County Ord. 21-13, formerly codified at Siskiyou County Code sections 3.5-13.101-3.5-13.109, or any substantively equivalent measure that may be adopted in the future.

5.      "Water Extraction Ordinance" shall mean Siskiyou County Ord. 21-14, formerly codified at Siskiyou County Code sections 3-4.1501-3-4.1506, or any other substantively equivalent measure that may be adopted in the future.

6.      "Injunction Parcels" shall mean parcels in the Mount Shasta Vista Subdivision that lack a residential well or a municipal water source, and on which there is at least one Resident, as defined herein, as of the Effective Date of this Agreement.

7.      "Resident(s)" shall mean persons who are living on a parcel, whether or not they are believed to be residing in permitted dwellings, as of the Effective Date of this Agreement.

8.    "Protected Purposes" shall mean the following uses for water: sanitation (*e.g.*, cleaning), health (*e.g,* bathing), caring for pets, raising domestic animals or livestock, firefighting, and other similar day-to-day personal necessities. For the avoidance of doubt, this term excludes water used for human ingestion (*e.g.*, drinking or using in cooking), as well for the growing of illicit cannabis plants.

9.    "Water Truck" shall mean a vehicle hauling a high-volume water tank, ranging from 2,000-6,000 gallons in capacity.

10.    "Remaining Claims" shall mean the first, sixth, seventh, eighth, ninth, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth claims for relief in Plaintiffs' Second Amended Complaint, Dkt. No. 140, as they pertain to Plaintiff Mathis.

11.    "Public Water System" shall have the same meaning as defined in California Health and Safety Code section 116275.

**RECITALS**

12.    In 2020 and 2021, Siskiyou County passed three ordinances relating to water usage: the Water Nuisance Ordinance, the Water Extraction Ordinance, and the Water Truck Ordinance (collectively, "Water Ordinances").

13.    In 2020, the Board of Supervisors also adopted Ordinance No. 20-11 amending Siskiyou County Code section 10-14.100 to increase the fines associated with cannabis cultivation. Ordinance No. 20-11 also permitted the County to issue real property liens to recover fines or penalties issued for violations under the same section. This added to the County's existing code section 1-5.13 (collectively, the "Lien Ordinances"). The property liens issued under these sections required approval by the Board of Supervisors at a public hearing. The last time the Board of Supervisors authorized new liens under section 10-14.100 was November 2, 2021.

14.    On June 4, 2021, several Asian-American plaintiffs (the "Lo Plaintiffs") filed a lawsuit against the Defendants alleging, amongst other things, racial discrimination stemming from traffic stops and the Water Ordinances. *See Lo et al. v. County of Siskiyou et al.*, No 2:21-

cv-00999- KJM-AC (E.D. Cal.). Defendants denied the factual and legal claims alleged by the Lo Plaintiffs and contended that the three ordinances were enacted and enforced to address widespread illegal cannabis cultivation and its effects on the health, safety and welfare of Siskiyou County's citizenry.

15.    On June 4, 2021, the Lo Plaintiffs filed a Preliminary Injunction Motion. Lo Dkt. No. 4. The American Civil Liberties Union of Northern California ("ACLU") and Asian Law Caucus, Plaintiff's counsel here, filed an amicus brief in support of the Lo Plaintiffs' motion for a Preliminary Injunction. Lo Dkt. No. 42.

16.    On September 3, 2021, the Court ordered a preliminary injunction against the Defendants, enjoining the Water Truck and Water Extraction Ordinances; the Court denied a preliminary injunction as to the Water Nuisance Ordinance. Lo Dkt. No. 47.

17.    On August 3, 2022, Plaintiff and three other named plaintiffs (together "Plaintiffs") filed their Complaint in this Matter, Dkt. No. 1, alleging that Defendants, amongst other things, discriminated against Asian Americans by engaging in unlawful and racially targeted traffic stops, imposing unlawful property liens to collect unpaid fines, and targeting Asian-Americans in the passage of the Water Ordinances. Plaintiffs additionally alleged that Defendants' Water Ordinances had the effect of depriving Asian Americans of trucked water, the only source of water reasonably available to Asian Americans to meet their domestic needs. Defendants deny the factual and legal claims alleged by Plaintiffs in this Matter.

18.    On September 16, 2022, the Court found this Matter related to the Lo matter. Dkt. No. 9.

19.    In November 2022, all Parties, including the Lo Plaintiffs, began engaging in settlement discussions. On May 11, 2023, the Lo Plaintiffs reached settlement with the Defendants. Lo Dkt. No. 105. Plaintiffs in this Matter did not reach settlement with Defendants at that time.

20. On August 1, 2023, pursuant to the Lo settlement, the County repealed the Water Truck and Water Extraction Ordinances and amended the Water Nuisance Ordinance to add a *mens rea* requirement. The Lo matter was dismissed on September 12, 2023. Lo Dkt. No. 108.

21. On December 5, 2023, the County repealed the Liens Ordinances. In January of 2024, the County directed its personnel to file Notices of Rescission of Lien for properties subject to liens issued under the repealed Liens Ordinances.

22. On February 20, 2024, Plaintiffs filed the First Amended Complaint ("FAC"). Dkt. No. 47. Defendants filed a Motion to Dismiss the FAC on March 5, 2024. Dkt. No. 52.

23. On August 8, 2024, Plaintiffs filed a motion for leave to file a Supplemental Complaint. Dkt. No. 82. The Supplemental Complaint alleged that the County had adopted a new and arbitrary interpretation of its Zoning Ordinances to restrict the off-parcel distribution of water, that it had adopted and employed this interpretation with racially discriminatory intent and effect, and that enforcement of this interpretation put Plaintiff Mathis and others similarly situated in danger by depriving them of water needed for health, hygiene, bathing, cooking, caring for livestock and other uses. Defendants deny the factual and legal claims alleged by Plaintiffs in the Supplemental Complaint.

24. On August 8, 2024, Plaintiffs filed a motion for preliminary injunction to enjoin enforcement of the County's Zoning Ordinances as described in the Supplemental Complaint. That motion additionally sought to enjoin use of "any other law" to restrict trucking of water for domestic use, based on evidence of continued enforcement of the Water Ordinances after they were enjoined and repealed. Plaintiffs concurrently filed a motion for provisional class certification. Dkt. Nos. 83 & 84.

25. On August 21, 2024, the Court issued an Order denying Defendant's Motion to Dismiss Plaintiffs' FAC. Dkt. No. 85.

26. On October 25, 2024, the Court issued an Order 1) granting Plaintiffs leave to file the Supplemental Complaint, 2) denying (without prejudice) Plaintiffs' motion for provisional

class certification, and 3) granting, in part, Plaintiffs' motion for a preliminary injunction. Dkt. No. 100.

27.     On December 18, 2024, the Court issued an order defining the scope of the preliminary injunction and requiring Plaintiffs to post security under Federal Rule of Civil Procedure 65(c). Dkt. No. 116. Pursuant to the Court's order, Defendants were "enjoined from enforcing Title 10, Chapter 6 of the Siskiyou County Code and any other law or regulation to prevent the transfer of water, for the purposes [specified in the following paragraph] to residents of parcels in the Mount Shasta Vista Subdivision that lack a residential well or a municipal water source..." *Id*.

28.     On December 26, 2024, Plaintiffs filed a motion to modify the Court's order regarding posting security in the amount of $56,300 by January 1, 2025. Dkt. No. 118. On January 28, 2025, the Court issued an order denying Plaintiffs' motion to modify and ordered the parties to show cause why the scope of the preliminary injunction should not be reduced to the parcels of Plaintiffs Russell Mathis and Mai Nou Vang only. Dkt. No. 130.

29.     On February 18, 2025, the Court discharged its order to show cause, denied the motion to modify, and ordered Plaintiffs to post security under Federal Rule of Civil Procedure 65(c) by way of bond or cash in the amount of $56,300. Dkt. No. 136. Plaintiffs' counsel thereafter posted security on Plaintiffs' behalf.

30.     On February 27, 2025, Plaintiffs and Defendants stipulated for the voluntary dismissal of Plaintiff Ger Chong Ze Chang, and thereafter the claims of Chang were dismissed without prejudice, with each party bearing his/its own fees and costs as to the claims of Chang. Dkt. Nos. 138-139.

31.     On February 28, 2025, Plaintiffs filed the Second Amended Complaint ("SAC"), which among other things added Plaintiff Jordan Moua as a Plaintiff to this Matter, and on March 14, 2025, Defendants filed an Answer to the SAC. Dkt. Nos. 140-141. The SAC and the Answer to the same are the operative pleadings in this Matter.

32.     On July 16, 2025, during the fact discovery period, Defendants filed a Motion for Summary Adjudication as to Counts Eight, Nine, Fifteen, and Sixteen of the SAC. Dkt. No. 156. The motion sought judgment as a matter of law on Plaintiffs' "state-created danger" claims as to Defendants' Water Ordinances and enforcement of the Zoning Ordinances.

33.     On August 21, 2025, the Parties held a Settlement Conference with Magistrate Judge Claire. The case did not settle, although the Parties agreed to continue settlement discussions while litigation continued. Dkt. No. 173.

34.     On November 4, 2025, the Court issued an Order denying Defendants' Motion for Summary Adjudication of the state-created danger claims. Dkt. No. 188.

35.     On November 11, 2025, the Parties filed a joint stipulation for entry of a proposed Partial Settlement Agreement and Court Order. Dkt. Nos. 190, 190-1. The Partial Settlement Agreement finally resolved Plaintiffs' traffic stops and liens claims, including all claims as to Plaintiffs Moua, Vang, and Va.

36.     On December 29, 2025, the Court adopted the Partial Settlement Agreement as a Court Order. Dkt. No. 197. Pursuant to this Order, the Court retains jurisdiction to enforce its terms and resolve disputes, including for the appointment of an external auditor. The Partial Settlement was referred to Magistrate Judge Claire for any motion or action to enforce.

37.     Following entry of the Partial Settlement Agreement and Court Order, the Parties continued to engage in fact discovery relating to the Remaining Claims while also re-opening settlement discussions.

38.     The Parties, by and through their counsel, have conferred in good faith and negotiated the terms of this Settlement Agreement and proposed Stipulated Judgment to resolve the Remaining Claims in this Matter. This Agreement is intended to avoid the expense of continued litigation and for the benefit of Plaintiff Mathis and other Residents of the Injunction Parcels, whose access to water is currently safeguarded by the Preliminary Injunction. It is the intent of the Parties to preserve existing access to trucked water for Protected Purposes pending

implementation of a different, permanent water solution for the Injunction Parcels, for which assessment efforts are currently ongoing.

## TERMS OF STIPULATED JUDGMENT

### a. Jurisdiction

39.    This Court has jurisdiction over the allegations and subject matter of the Second Amended Complaint and has jurisdiction to approve and enter this Agreement as a Stipulated Judgment.  This Court shall also have jurisdiction to enforce this Agreement and Stipulated Judgment and Injunction.

### b. Effective Date and Claims Resolved

40.    This Agreement will become effective once it has been signed by all Parties, and the Court has approved and entered it as the Stipulated Judgment of the District Court ("Effective Date").

41.    Once this Agreement becomes effective, all pending claims will be dismissed with prejudice, except for class allegations, which are dismissed without prejudice. Following the Effective Date, or at any other time as directed by order of this Court, Plaintiff's counsel will conduct community outreach and education to Residents of the Injunction Parcels regarding the terms of this Agreement.

### c. Stipulated Injunction

42.    The County and Sheriff, as well as anyone or entity that acts on their behalf, shall not use the Zoning Ordinances, the Water Truck Ordinance, or the Water Extraction Ordinance to prevent the transfer of water for any Protected Purpose to Residents of the Injunction Parcels. In any motion to enforce or extend the Injunction based on actions that may be undertaken by the District Attorney, Defendants may raise an affirmative defense that the District Attorney was not acting on their behalf.

43.    Notwithstanding paragraph 42, Defendants may use the Zoning Ordinances to regulate the transfer of water only in the following circumstances: 1. If the number of water trucks filling at a well exceeds 30 trucks per day; or 2. If water trucks are transporting water

from the parcel during the hours of 8:00 p.m. to 7:00 a.m. Furthermore, nothing in this Agreement and Stipulated Injunction is intended to prevent Defendants from enforcing traffic laws to address obstructions on public roadways.

44.     For enforcement actions undertaken pursuant to paragraph 43, Defendants shall clearly document the basis for enforcement, including the facts permitting enforcement under this section. The County must in all cases issue at least one warning to a parcel owner prior to issuance of a citation to that parcel owner under this section.  The enforcement authority described in paragraph 43 shall not apply during emergencies requiring immediate water resources (*e.g.*, an active fire in the area). Additionally, racially discriminatory enforcement is prohibited in all circumstances.

45.     While this Agreement and Stipulated Injunction is operative, Residents of the Injunction Parcels may seek state approval and funding for creation of a Public Water System, to provide a permanent water source to the Injunction Parcels. Once this Agreement becomes effective, the Parties agree to issue a joint public statement, attached hereto as Addendum A, indicating their support for the goal of creating a Public Water System serving the Injunction Parcels.

46.     For the term of the Injunction, the County and Sheriff, acting in their official capacity, shall not communicate negative opinions or characterizations regarding the goal of or plans for creating a proposed Public Water System serving the Injunction Parcels. For the avoidance of doubt, "official capacity" as used here excludes speech by candidates for elected office in conjunction with political campaigns, and excludes the speech by any employee or officer of either Defendant who at the time is not acting in the performance of official duties and who is not authorized to make statements on behalf of said Defendant. Additionally, Defendants shall not distribute non-public information for the purpose of supporting third-party advocacy against the formation of a Public Water System by Residents of the Injunction Parcels, unless disclosure is required by law. This paragraph does not prevent the County from responding to outside agencies' requests for factual information regarding a proposed Public Water System to

serve the Injunction Parcels, provided that such responses reflect a good faith attempt to comply with the remainder of this paragraph.

47.    If, during the term of this Agreement, either or both Defendants learn(s) new information not known or reasonably foreseeable at the time of settlement regarding the goal of or plans for creating a proposed Public Water System that Defendants can establish will harm the health, safety and welfare of the County, including the environment and natural resources of the County, then either or both Defendants may move the Court for relief from the enforcement of paragraph 46.  For the avoidance of doubt, neither modest population fluctuation nor cannabis cultivation and the effects thereof are grounds for relief under this paragraph. In any such motion, which shall be filed pursuant to the requirements of Eastern District Local Rule 230, Defendants shall have the burden of establishing, on the basis of information not known or reasonably foreseeable at the time of this Agreement, that the goal of or plans for creating a proposed Public Water System will harm the health, safety and welfare of the County, or that relief from Paragraph 46 is necessary for Defendants' compliance with state or federal law, and that the relief is not based on personal or racial animosity.

48.    Paragraphs 46 and 47 shall not apply where: (1) the County is required to fulfill its obligations under the California Environmental Quality Act; or (2) the County is required by law to make determinations in a quasi-judicial proceeding. A quasi-judicial proceeding is defined as a proceeding where: (1) a hearing is required by law, (2) evidence is required to be taken, and (3) discretion in the determination of facts is vested in the County.

49.    To mitigate the appearance of retaliation and potential litigation regarding the same, and to give Mr. Mathis the opportunity to bring his property into compliance, Defendants will not issue code citations against Plaintiff Mathis for his subject property for a five-year period following entry of this Order for any potential violation identified as existent as of the time of entry into this Agreement, the exhaustive list of which is included as Addendum B to this Agreement. This provision does not prevent the County from taking regulatory action for a violation listed in Addendum B on the basis of new information suggesting an immediate and

articulable threat to public health and safety, or based on information suggesting the existence of code violations on the property that are not set forth in Addendum B.

### d. Duration of Injunction and Bases for Extension

50.    The Stipulated Injunction shall remain in effect for a period of five years from the Effective Date. At that time, absent an extension or ongoing proceedings as described in paragraph 53, the Injunction will lapse.

51.    The term of the Injunction shall be extended beyond the initial five-year period by stipulation or Court order, based on any of the following conditions:

i) if efforts to create a new Public Water System serving the Injunction Parcels are ongoing;

ii) if the State denies a permit for a new Public Water System serving the Injunction Parcels, and additional time will facilitate pursuit of alternative arrangements for Residents of the Injunction Parcels to meet their needs for water for Protected Purposes;

iii) if the County or Sheriff substantially violate the Stipulated Injunction as defined in paragraphs 42-49. As used here, a "substantial" violation may be established by a violation that Defendants did not timely and effectively remedy, or repeated violations of the Injunction;

iv) if the County or Sheriff materially prevents the creation of a Public Water System serving the Injunction Parcels; or

v) to avoid any other manifest injustice.

52.    Upon stipulation of the Parties or motion by Plaintiff, the term of the Injunction may be extended by three years, and may be extended two times, for a total cumulative term of extensions of six years. Notwithstanding the foregoing, in the event that Plaintiff believes that the County or Sheriff has materially prevented the creation of a Public Water System serving the Injunction Parcels, including by the denial of any necessary permit, Plaintiff may move the Court to extend the Stipulated Injunction any number of times, for any term, as good cause may

require. If Plaintiff moves to extend the Injunction on this basis, it shall be an affirmative defense that the County's denial of the permit was necessary to protect health and safety, and was not motivated by personal or racial animosity.

53.     A motion to extend the Injunction may be made by or on behalf of any Resident of the Injunction Parcels. Any such motion shall be made in accordance with Eastern District Local Rule 230, and shall only be made following a good faith effort to meet and confer. The movant shall demonstrate the basis for an extension by a preponderance of the evidence. In the event that a motion to extend is pending before the Court when the Injunction would otherwise lapse, the Injunction shall be automatically extended until the Court issues its order granting or denying the motion.

54.     If a Public Water System serving all Injunction Parcels is approved and becomes operational while this Injunction remains in place, Defendants may move for early termination of the Injunction. In such an event, the Court may order the Injunction terminated or, if the Public Water System relies on water trucking, narrowed to protect only water transfers within that system.

### e.  Monitoring

55.     While the Injunction is in place, Plaintiff's counsel are entitled to receive documents that relate to Defendants' compliance with the Injunction. Such documents include, but are not limited to, all records concerning enforcement undertaken pursuant to paragraph 43, and communications made to state agencies regarding any potential water system serving the Injunction Parcels. Additionally, Plaintiff's counsel will be given notice of and shall automatically receive documentation from any code enforcement action concerning Plaintiff Mathis within 5 days of when the action occurs. Defendants shall retain the categories of documents specifically enumerated in this section for a minimum of five years from the date of the document's creation.

56.     All requests for documents pursuant to this Order shall be made in writing to Defendants' designated representative(s). Defendants shall provide the responsive documents

within 15 business days of any request. If a dispute arises regarding the production of documents, the Parties will meet and confer to attempt to resolve the issue informally. Improper withholding of documents necessary to determine compliance shall be grounds for a motion to enforce the Injunction.

### f. Retention of Jurisdiction and Enforcement

57. The Court will retain jurisdiction for the duration of this Injunction to enforce and resolve any motion to modify or extend the Injunction.

58. A motion to enforce the Injunction may be brought by or on behalf of any Resident of the Injunction Parcels. Before filing of a motion to enforce, Defendants will be given 10 business days written notice and a reasonable opportunity to meet and confer regarding the alleged violation.

59. The Court shall have the power to enforce the terms of this Injunction through any remedy permitted by law or equity, including contempt, oversight, training and reporting requirements, or extension of the term of the Injunction pursuant to paragraphs 51-52. If the Court grants a motion to enforce, the Court shall award all reasonable and necessary attorneys' fees and costs in accordance with applicable law.

### g. Exoneration of Preliminary Injunction Bond

60. Upon entry of this Order, the preliminary injunction bond in the amount of $56,300, posted pursuant to the Court's February 18, 2025, order, Dkt. 136, shall be exonerated. The Parties request that the Court direct the Clerk to return the bond in its entirety to Covington Burling LLP, Attention Stanley Young, at 3000 El Camino Real, 5 Palo Alto Square, Suite 1000, Palo Alto, CA 94306.

### h. Service Award

61. Plaintiff Mathis shall receive a payment of five-thousand dollars ($5,000) to be paid to his legal counsel for disbursement within 30 days of the Effective Date.

### i. Authorization

62.     Each individual or entity that executes this Agreement represents and warrants, in their personal capacity, that they are duly authorized and empowered to enter into this Agreement on behalf of themselves or the Party they purport to represent.

## j.  Integration

63.     This Agreement embodies the entire understanding and agreement between the Parties with respect to the Remaining Claims. It supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the parties regarding the Remaining Claims. No other representations, covenants, undertakings or other prior or contemporaneous agreements, oral or written, respecting the Remaining Claims, which are not specifically incorporated herein, shall be deemed to bind any Party in any manner. This Agreement does not supersede the Partial Settlement Agreement and Court Order, Dkt. No. 197, and nothing in this Agreement is intended or shall be deemed to amend, alter, or modify the Partial Settlement Agreement.

## k.  Modification

64.     Except as provided in paragraphs 66 and 69, this Agreement may not be modified except by a writing executed by each Party and approved by the Court.

## l.  Severability and Third-Party Litigation

65.     If any provision of this Agreement is held or made invalid by a court of competent jurisdiction, statute or rule, or is otherwise rendered invalid, the remainder of this Agreement shall not be affected thereby and shall continue to be in force.

66.     In the event that a third-party files a lawsuit challenging this Agreement or any part of it in which the County or Sheriff are named as defendants, Defendants shall provide notice of the lawsuit to Plaintiff's counsel within five (5) days of service of the summons and complaint. The Parties may agree in writing to modify the notice obligation set forth in this paragraph with regard to a particular lawsuit without approval of the Court.

67.     While the Stipulated Injunction remains in place, if any Resident or owner of any of the Injunction Parcels files a lawsuit against either or both Defendants seeking injunctive

relief for claims overlapping the Remaining Claims, and arising out of the same nucleus of facts predating this Agreement, Defendants may notify and request that Plaintiff's non-profit counsel provide a factual declaration explaining the nature of this Matter, this Agreement, and the status of the County's compliance with the same. Plaintiff's non-profit counsel agree to provide such a written declaration upon request, provided that there is no conflict of interest or other ethical bar to doing so.

**m. Counterparts**

68.     This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures and signatures in PDF format transmitted by email shall be deemed originals.

**n. Notices**

69.     Except as otherwise specified, any notices provided by this Agreement shall be sent to the following addresses by certified mail, return receipt requested unless otherwise designated in writing by the party to receive the notice or request. In the event notices are sent by mail, confirmatory emails will be sent to the email addresses listed in this section.

(a) If to Plaintiffs:

> ACLU of Northern California
>
> ATTN: Emi Young and Avram Frey
>
> 39 Drumm Street
>
> San Francisco, CA 94111

(b) If to Defendants:

> Best Best & Krieger LLP
>
> Attn: Christopher Pisano and Elise Rice
>
> 500 Capitol Mall, Ste. 2500
>
> Sacramento, CA 95814

As of the Effective Date of this Agreement, the Parties stipulate that notice may be provided via email to the following individuals at the following email addresses:

    (a) If to Plaintiffs:

        Emi Young <Emi.Young@aclunc.org>

        Avram Frey <AFrey@aclunc.org>

        John Do <JDo@aclunc.org>

        Megan Vees <meganv@asianlawcaucus.org>

        Stanley Young <syoung@cov.com>

    (b) If to Defendants:

        F. Dean Morgan <fdmorgan@co.siskiyou.ca.us>

        Christopher Pisano <Christopher.Pisano@bbklaw.com>

        Elise Rice <Elise.Rice@bbklaw.com>

        James Ross <jross@publiclawgroup.com>

Plaintiff or Defendants may withdraw their consent to notice via email at any time. Further, Plaintiff or Defendants may modify the location, individuals, or email addresses of the individuals identified in this section by providing notice to the other Party and without a modification of this Agreement.

### o.  Attachments

70.     Addenda A and B are attached to and part of this Agreement and proposed Stipulated Injunction.

### p.  Attorney's Fees and Costs

71.     The Parties agree that Defendants shall pay Plaintiff's counsel the total sum of $650,000 in attorneys' fees and costs associated with Plaintiff's counsel's prosecution of the Remaining Claims. The payment of attorneys' fees and costs pursuant this section is intended to cover all remaining recoverable attorneys' fees and costs pursuant to 42 U.S.C. section 1988, California Code of Civil Procedure section 1021.5, or any other applicable provision of laws. This amount is separate from and in addition to the attorneys' fees and costs sum already

provided for in the Partial Settlement Agreement. Defendants shall provide this amount in two payments. An initial payment of $450,000 will be made to Plaintiffs counsel within 90 days of the Effective Date. A subsequent payment of $200,000 will be made to Plaintiffs counsel on or before August 1, 2027.

IN WITNESS WHEREOF, the Parties hereby enter into this Settlement Agreement.

**Plaintiff**

Date: 6-20-2026

Russell Mathis

**Defendants**

Angela Davis

Digitally signed by Angela Davis
DN: CN=Angela Davis, O=County of Siskiyou,
OU=County Administration, E=adavis@
co.siskiyou.ca.us, C=US
Reason: I am approving this document with my
legally binding signature
Location:
Date: 2026.06.25 18:20:30-07'00'
Foxit PDF Editor Version: 13.2.2

Date: 06/25/2026

Angela Davis, County Administrative Officer, on behalf of the County of Siskiyou pursuant to authorization by the Siskiyou County Board of Supervisors

Date:

Sheriff Jeremiah LaRue, in his official capacity

provided for in the Partial Settlement Agreement. Defendants shall provide this amount in two payments. An initial payment of $450,000 will be made to Plaintiff's counsel within 90 days of the Effective Date. A subsequent payment of $200,000 will be made to Plaintiff's counsel on or before August 1, 2027.

IN WITNESS WHEREOF, the Parties hereby enter into this Settlement Agreement.

**Plaintiff**

Date: 6-20-2026

Russell Mathis

**Defendants**

Date:

Angela Davis, County Administrative Officer, on behalf of the County of Siskiyou pursuant to authorization by the Siskiyou County Board of Supervisors

Date: 06/24/26

Sheriff Jeremiah LaRue, in his official capacity

Approved as to form and, for ACLU Foundation of Northern California and Asian Law Caucus only, Paragraph 67:

ACLU of Northern California

Date: _____6/29/2026_____

Emi Young

Asian Law Caucus

Date: _____6/29/2026_____

Megan Vees

Covington & Burling LLP

Date: _____6/29/2026_____

Stanley Young
Counsel for Plaintiff Mathis

Renne Public Law Group

Date: _____6/29/2026_____

James R. Ross
Counsel for Defendants

Best Best & Krieger

Date: _____6/29/2026_____

Christopher Pisano
Counsel for Defendants

Spinelli, Donald & Nott

Date: _____6/29/2026_____

J. Scott Donald
Counsel for Defendants

# ADDENDUM A

**Siskiyou County Settles Dispute Over Water Access in Asian American Community**

On [date], the Siskiyou County Board of Supervisors agreed to a settlement that will resolve the remaining claims in *Mathis et al. v. County of Siskiyou et al.*, a case brought by Siskiyou residents who challenged water access restrictions in a community that is home to more than 1,000 residents, most of whom are Asian American.

Under the settlement, the County will refrain from enforcing local laws that had the effect of curtailing water deliveries to Shasta Vista, a rural, largely undeveloped subdivision, whose residents have long had to obtain their water from sources outside of their community. This agreement will cover water deliveries for domestic use only, not cannabis cultivation, and will remain in place while residents of the Shasta Vista community look for a more permanent source of domestic water.  Efforts to create sustainable, permanent water solutions for domestic use in Shasta Vista will be an ongoing, multi-year process.

Everyone deserves the opportunity to have good, safe, and potable water in their homes, and this agreement will give the Shasta Vista community an opportunity to achieve this, County leaders said.  While Representatives of the County acknowledge that finding a solution to the provision of water in the area will be an involved and detailed process, the settlement agreement makes clear that the County supports the efforts of the community to find long term solutions for domestic water access.

"Like most of my neighbors, I can't afford to drill a well on my property and for years have struggled to have a reliable supply of clean water," said Russell Mathis, a longtime Shasta Vista resident, who is the lead plaintiff in the case. "This agreement means that residents in my community will get the water we desperately need for bathing, caring for animals, and protecting ourselves against wildfires."

Plaintiffs were represented by the ACLU Foundation of Northern California, the Asian Law Caucus, and Covington & Burling LLP.

# ADDENDUM B

<u>Potential Code Violations</u>

Code violations associated with

1. Unpermitted camping

2. Lack of sewage disposal system

3. Lack of permitted electrical system

4. Unpermitted structure

5. Water storage

6. Vehicle stored on the property